James L. Wraith, State Bar No. 112234
David A. Evans, State Bar No. 181854
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone: (510) 874-1811
Facsimile: (510) 465-8976
E-mail: jwraith@selvinwraith.com
devans@selvinwraith.com

Attorneys for Plaintiff
Western World Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

WESTERN WORLD INSURANCE COMPANY,

Plaintiff,

v.

NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA, a California corporation; and DOES 1 through 10,

Defendants.

CASE NO.:

**WESTERN WORLD INSURANCE COMPANY'S COMPLAINT FOR (1,2) EQUITABLE CONTRIBUTION AND (3,4) DECLARATORY RELIEF**

COMES NOW, Plaintiff Western World Insurance Company, a New Hampshire corporation, by and through its counsel, Selvin Wraith Halman LLP, and hereby alleges and asserts the following complaint for equitable contribution and declaratory relief against Defendants Nonprofits Insurance Alliance of California, and Does 1 through 10, and hereby alleges as follows:

**I. THE PARTIES**

1. Plaintiff Western World Insurance Company ("Western World") is a corporation incorporated under the laws of the State of New Hampshire with its principal place of business in Franklin Lakes, New Jersey, and is now, and was at all relevant times herein mentioned, authorized to transact insurance business as an insurer in the State of California. It is a citizen of the States of New Hampshire and New Jersey for purposes of determining diversity of citizenship in this action.

2. Defendant Nonprofits Insurance Alliance of California ("NIAC") is a corporation

incorporated under the laws of the state of California having its principal place of business in Santa Cruz, California. It is a citizen of the State of California for purposes of determining diversity of citizenship in this action.

3. Western World is informed and believes that Defendants Does 1 through 10, at all times herein mentioned, were natural persons or corporations, partnerships, associations, sole proprietorships or municipalities organized and existing and authorized to do business in California, in residence and/or doing business in the state of California.

4. The true names and capacities, whether individual, governmental, corporate, associate or otherwise, and the factual basis for liability of Defendants Does 1 through 10, inclusive, are presently unknown to Western World, which therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a Doe Defendant is legally responsible in some manner for the events herein alleged, and is, therefore, liable to Western World for equitable contribution and/or declaratory relief. Western World will seek leave of Court to amend its complaint to show the true names and capacities of such Defendants when the same have been ascertained.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as the amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy Five Thousand Dollars ($75,000) and the parties are citizens of different states; and 28 U.S.C. § 2201, declaratory judgment.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Jurisdiction is founded on diversity of citizenship, a substantial part of the events or omissions giving rise to the claims occurred in this district, and defendants are subject to personal jurisdiction in this district.

7. Intradistrict Assignment (L.R. 3-5(b)): The principal place of business of Defendant Nonprofits Insurance Alliance of California, which issued the insurance policy that is the subject of this action, is in Santa Cruz County. Pursuant to Local Rule 3-2(e), this matter shall be assigned to the San Jose Division.

## III. THE INSURANCE POLICIES

8. Narconon International ("NNI") is a nonprofit corporation headquarted in California providing drug and alcohol rehabilitation treatment services in 26 countries based upon Scientology philosophy and theories. NNI licenses local Narconon entities, including Narconon of Oklahoma and Narconon of Georgia, Inc., to provide drug rehabilitation treatment using Narconon trademarks.

### A. Western World Policies

9. Western World issued a commercial general liability policy bearing policy no. NPP0958680, effective June 25, 2007 to June 25, 2008, to Narconon of Oklahoma dba Narconon Arrowhead ("the NNO Policy"). A true and correct copy of Western World Policy No. NPP0958680 is attached hereto as Exhibit A.

10. Western World issued a commercial general liability policy bearing policy no. NPP1123556, effective August 19, 2007 to August 19, 2008, to Narconon of Georgia, Inc. ("the NNG Policy"). A true and correct copy of Western World Policy No. NPP1123556 is attached hereto as Exhibit B.

11. The NNO Policy and NNG Policy (collectively, "the Western World Policies") each provide policy limits of $1 million per occurrence and $2 million in the aggregate to the named insured (NNO and NNG, respectively) subject to standard-form commercial general liability coverage under form CG 0001 (ed. 7/98), which provides in pertinent part as follows:

> ***Section I – Coverages***
> ***Coverage A Bodily Injury and Property Damage***
>
> ***1. Insuring Agreement***
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

12. The Western World Policies contain an "other insurance" provision, which provides that if other valid and collectible insurance is available, the Western World insurance is primary unless any other insurance is also primary. In that event, Western World will share with the other insurance as follows:

> ***c. Method of Sharing***

If all of the other insurance permits contribution for equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

13. The Western World Policies contain a "Liquor Liability" exclusion that excludes coverage for "bodily injury" or "property damage" for which any insured may be held liable by reason of:

***(1)*** Causing or contributing to the intoxication of any person;

***(2)*** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

***(3)*** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

14. The Western World Policies contain a "Professional Liability Insurance" coverage part under form WW 220 (ed. 10/04), which adds Coverage D – Professional Liability to Section I – Coverages, providing in pertinent part:

***1. Insuring Agreement.***

***a.*** We will pay those sums the insured becomes legally obligated to pay as damages because of any "bodily injury", "property damage" or "personal injury" to which this coverage part applies caused by a "professional incident".

15. The "Professional Liability Insurance" coverage part defines "professional incident" to mean any negligent act or omission:

***a.*** In the furnishing of healthcare services, including the furnishing of food, beverages, medications or appliances in connection with such services, and the postmortem handling of human bodies.

***b.*** In the rendering of any other professional services, but only of the type described in the "Schedule" of this coverage part.

Any such act or omission, together with all subsequent or related acts or omissions in providing the above services to anyone person shall be considered one "professional incident".

16. The "Professional Liability Insurance" coverage part of the NNO Policy is subject to limits of insurance of $1 million for each claim and $3 million in the aggregate, and identifies the "description of professional services" as "drug and alcohol rehabilitation center."

17. The "Professional Liability Insurance" coverage part of the NNG Policy is subject to limits of insurance of $1 million for each claim and $2 million in the aggregate, and identifies the "description of professional services" as "drug & alcohol abuse counseling – outpatient – not for profit."

18. The "Professional Liability Insurance" coverage part provides that Section IV – Commercial General Liability Conditions of the Western World Policies, which includes the "other insurance" provisions, applies to Coverage D – Professional Liability Insurance.

19. The NNO Policy contains a "Sexual Molestation Insurance" coverage part under form WW100A (ed. 4/94), which adds Coverage E – Sexual Molestation Liability to Section I – Coverages, providing in pertinent part:

> ***1. Insuring Agreement***
>
> ***a.*** We will pay those sums the insured becomes legally obligated to pay as damages because of any "molestation", to which this insurance applies …

20. The "Sexual Molestation Insurance" coverage part defines "molestation" to mean "any action with sexual connotation or purpose, resulting in bodily or mental injury."

21. The "Sexual Molestation Insurance" coverage part is subject to limits of insurance of $300,000 for each claim and $300,000 in the aggregate.

22. The "Sexual Molestation Insurance" coverage part provides that Section IV – Commercial General Liability Conditions of the policies of the NNO Policy, which includes the "other insurance" provisions, applies to Coverage E – Sexual Molestation Liability.

23. The NNO Policy contains an Additional Insured Endorsement under form WW180 (ed. 4/01) that provides in pertinent part as follows:

> The insurance afforded by this policy for "bodily injury," "property damage" and/or "personal injury" shall also apply to the "additional insured" listed below for claims, suits, and/or damages made against the "additional insured," but only to the extent the "additional insured" as being held responsible for the acts, omissions and/or negligence of the "named insured."

> This insurance afforded shall not apply to claims, suits and/or damages arising out of the acts, omissions and/or negligence of the "additional insured(s)."
>
> The inclusion of the "additional insured(s)" shall not operate to increase the Company's Limit of Liability.
>
> To the extent, if any, that this policy affords coverage to an "additional insured," the "additional insured" is subject to all of the terms of the policy.
>
> The obligation of the Company to provide coverage to an "additional insured" is further limited by the interest of the "additional insured" as defined below.
>
> Interest of the Additional Insured(s) Defined: Holds copyright, trademark and licensing agreements for Narconon
>
> For the purpose of this endorsement, the "named insured" is the person(s) and or party(ies) designated on the Declarations Page of the policy or on any endorsement. The "additional insured" is the person(s) and/or party(ies) identified below.
>
> Identity of Additional Insured(s): Narconon Intl, Director of Legal Affairs

24. The NNG Policy contains an Additional Insured Endorsement under form WW180 (ed. 4/01) that provides in pertinent part as follows:

> The insurance afforded by this policy for "bodily injury," "property damage" and/or "personal injury" shall also apply to the "additional insured" listed below for claims, suits, and/or damages made against the "additional insured," but only to the extent the "additional insured" as being held responsible for the acts, omissions and/or negligence of the "named insured."
>
> This insurance afforded shall not apply to claims, suits and/or damages arising out of the acts, omissions and/or negligence of the "additional insured(s)."
>
> The inclusion of the "additional insured(s)" shall not operate to increase the Company's Limit of Liability.
>
> To the extent, if any, that this policy affords coverage to an "additional insured," the "additional insured" is subject to all of the terms of the policy.
>
> The obligation of the Company to provide coverage to an "additional insured" is further limited by the interest of the "additional insured" as defined below.
>
> Interest of the Additional Insured(s) Defined: Refer to endorsement no. 1
>
> For the purpose of this endorsement, the "named insured" is the person(s) and or party(ies) designated on the Declarations Page of the policy or on

> any endorsement. The "additional insured" is the person(s) and/or party(ies) identified below.
>
> Identity of Additional Insured(s): Refer to endorsement no.1

25. Endorsement No. 1 of the NNG policy provides that Narconon International is an additional insured under the NNG policy "per the Narconon Trademark License Agreement."

**B. NIAC Policy**

26. Western World is informed and believes and thereon alleges that NIAC issued a commercial general liability policy to Narconon International under policy number 2007-17800-NPO, effective from July 6, 2007 to July 6, 2008. The NIAC policy provided general liability insurance to NNI with limits of $1 million per occurrence and $2 million in the aggregate.

27. Western World is informed and believes and thereon alleges that the NIAC policy provides coverage under form CG 0001 (ed. 7/98), which provides in pertinent part as follows:

> ***Section I – Coverages***
> ***Coverage A Bodily Injury and Property Damage***
>
> ***1. Insuring Agreement***
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

28. Western World is informed and believes and thereon alleges that the NIAC policy contains an exclusion for "designated professional services" under form CG 2116 (ed. 9/98), under which the NIAC policy "does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' due to the rendering of or failure to render any professional service." The Schedule of the "designated professional services" exclusion defines professional services subject to the exclusion as "any and all professional services."

29. Western World is informed and believes and thereon alleges that the NIAC policy contains an exclusion for "improper sexual conduct" under form NIAC X1 0802, under which the NIAC policy excludes coverage for sexual misconduct. The "improper sexual conduct" exclusion provides, however, that coverage for sexual misconduct may be purchased as an optional coverage under the "Improper Sexual Conduct Liability Coverage Form."

30. Western World is informed and believes and thereon alleges that the NIAC policy contains the "Improper Sexual Conduct Liability Coverage" under form N IAC ISCET 0706, which provides, in pertinent part as follows:

> ***Section I – Coverages***
> ***Bodily Injury Arising from "Improper Sexual Conduct"***
>
> ***1. Insuring Agreement***
>
> We will pay those sums that the insured becomes legally obligated to pay as monetary damages because of "bodily injury" arising from "improper sexual conduct." … We will have the right and duty to defend the insured against any "suit" seeking such monetary damages.
>
> ***Section VI – Improper Sexual Conduct Liability Conditions***
>
> ***4. Other Insurance***
>
> ***a. Primary insurance.*** This insurance is primary, except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
>
> ***b.*** This insurance is excess over any other applicable insurance, whether primary, excess, contingent or on any other basis, that is written on a claims-made basis…
>
> ***c. Method of Sharing***
>
> If all of the other insurance permits contribution for equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

31. Western World is informed and believes and thereon alleges that the "Improper Sexual Conduct Liability Coverage" in the NIAC policy defines "improper sexual conduct" to mean "actual, attempted, or alleged unlawful sexual conduct by one person or two or more persons acting in concert as prohibited by federal or state law."

32. Western World is informed and believes and thereon alleges that the NIAC policy provides Liquor Liability Coverage under form CG033 (ed. 1/96), which provides in pertinent part as follows:

***Section I – Liquor Liability Coverage***

***1. Insuring Agreement***

We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages.

33. Western World is informed and believes and thereon alleges that the Liquor Liability Coverage under the NIAC policy is excluded for any "injury" "with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance." This exclusion does not apply, however, "if the other insurance responds to liability for 'injury' imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage."

34. Western World is informed and believes and thereon alleges that the NIAC policy's Liquor Liability Coverage defines "injury" to mean "all damages, including damages because of 'bodily injury,' and 'property damage', and including damages for care, loss of services or loss of support."

## IV. UNDERLYING LAWSUITS

### A. Oklahoma Landmeier Action

35. On March 2, 2010, Valerie Landmeier, individually and as guardian for Heather Landmeier, filed a lawsuit in the District Court of Pittsburg County, Oklahoma, Case No. CJ-2010-57, against Narconon of Oklahoma dba Narconon Arrowhead and Narconon International ("the Landmeier Action").

36. The Landmeier Action alleges that Heather Landmeier was a resident at the Narconon of Oklahoma facility on several occasions between June 2005 in March 2008 for detoxification and drug rehabilitation treatment.

37. The Landmeier Action alleges that from August 26, 2007 through March 4, 2008, NNO employees provided drugs and alcohol to Landmeier, and staff members entered into sexual relationships with Landmeier.

38. The Landmeier Action alleges that on March 4, 2008, Landmeier was expelled from the NNO facility after she relapsed and became addicted to heroin and oxycontin which were

provided to her by NNO employees.

39. The Landmeier Action alleges that on March 5, 2008, Landmeier overdosed on heroin and oxycontin, leaving her in a permanent vegetative state, paralyzed from the neck down.

40. The Landmeier Action sought recovery from NNI and NNO for Heather Landmeier's injuries, alleging causes of action for negligence and negligence per se, breach of contract, violation of the Oklahoma consumer protection act, intentional infliction of emotional distress, and punitive damages.

41. Western World agreed to defend both NNO and NNI as an additional insured under policy number NPP0958680 under a reservation of rights on March 31, 2010, with a supplemental reservation of rights letter issued on September 22, 2010.

42. Western World provided a defense to NNI through the law firm of Noland, Pettigrew & Bruce.

43. Western World incurred and paid fees and costs in excess of $55,000 in the defense of NNI and NNO in the Landmeier Action through the Noland law firm and vendors retained by that firm.

44. As of April 21, 2014, Western World provided a defense to NNI separately through the law firm of Best & Sharp of Tulsa, Oklahoma.

45. Western World has incurred and paid in excess of $12,800 to the Best & Sharp firm in the defense of NNI in the Landmeier Action.

46. NIAC agreed to defend NNI on March 16, 2010.

47. NIAC agreed to join in the defense provided by Western World to NNI through the Noland law firm on July 21, 2010.

48. On January 29, 2013 and April 23, 2013, NIAC advised Western World that it would not share in the defense of NNI on the basis that it provided coverage to NNI only through the "Improper Sexual Conduct Coverage" which NIAC asserted was excess to coverage provided under Western World policy number NPP0958680.

49. NIAC has not paid any sums to defend NNI in the Landmeier Action.

**B.     Georgia Desmond Action**

50.     On May 18, 2010, Patrick C. Desmond and Mary C. Desmond, individually, and Mary C. Desmond as administratrix of the estate of Patrick W. Desmond filed a lawsuit in the state court of Dekalb County, Georgia, Case No. 10A28641-2, against Narconon of Georgia, Inc., Delgado, Development, Inc., Sovereign Place, LLC, Sovereign Place Apartment Management, Inc., Lisa Carolina Robbins, M.D., the Robbins group, Inc. and Narconon International ("the Desmond Action").

51.     The Desmond Action that on 2008, Patrick W. Desmond was enrolled in a drug and alcohol rehabilitation program operated by NNG under a license agreement with NNI.

52.     The Desmond Action that on June 10, 2008, Desmond was drinking beer and vodka with NNG employees and staff members in a staff member's apartment unit.

53.     The Desmond Action that after becoming intoxicated, Desmond left NNG's apartment premises with two former patients to purchase heroin.

54.     The Desmond Action that NNG employees and staff members were aware Desmond intended to purchase heroin, and did not intervene or report to superiors or law enforcement that Desmond left the premises.

55.     The Desmond Action that on June 11, 2008, emergency personnel responded to a 911 call placed by two former patients from a vehicle where Desmond was discovered in cardiopulmonary arrest due to a heroin overdose, and was pronounced dead later that day.

56.     On February 8, 2013, the Desmond Action settled.

57.     Western World agreed to defend NNG under Policy No. NPP1123556 under a reservation of rights on June 22, 2010, providing a defense through the law firm of Drew, Eckl & Farnham of Atlanta, Georgia.

58.     Western World agreed to defend NNI under Policy No. NPP1123556 under a reservation of rights on July 7, 2010, providing a defense through the law firm of Drew, Eckl & Farnham.

59.     Western World incurred and paid fees and costs in excess of $387,000 in the defense of NNI and NNO in the Desmond Action through the Drew, Eckl law firm and vendors retained by

that firm.

60. Western World subsequently provided a defense to NNI separately through the law firm of Carlock, Copeland & Stair of Atlanta, Georgia.

61. Western World incurred and paid in excess of $535,000 in fees and costs incurred by the Carlock, Copeland firm and vendors retained by that firm in the defense of NNI in the Desmond Action.

62. NIAC declined to defend NNI on June 21, 2010, and again on May 11, 2012.

63. NIAC did not pay any sums to defend NNI in the Desmond Action.

**FIRST CAUSE OF ACTION:**
**DECLARATORY RELIEF (LANDMEIER ACTION)**

64. Western World incorporates the allegations within paragraphs 1 through 63 of this complaint as though they were fully set forth herein.

65. An actual controversy exists between Western World, on the one hand, and NIAC, on the other hand, regarding their respective legal rights and obligations under the Western World and NIAC policies, based upon the terms, provisions and conditions of those policies. Western World maintains that NIAC was obligated to defend NNI in the Landmeier Action and share equitably with Western World in the costs of providing that defense.

66. NNI was a defendant in the Landmeier Action NNI licensed its drug and alcohol rehabilitation program to NNO and NNG. The Landmeier Action alleges that NNI licensed its drug rehabilitation services to NNO, and also provided managerial expertise and monitored NNO's licensed activities.

67. The Landmeier Action alleges that Heather Landmeier entered into sexual relationships with staff members at the NNO facility. Under its "Improper Sexual Conduct Liability Coverage," NIAC is obligated to defend any suit seeking monetary damages because of "bodily injury" arising from "improper sexual conduct." NIAC admits the allegations of the Landmeier Action trigger coverage under its "Improper Sexual Conduct Liability Coverage," but has nevertheless refused to participate in the defense of NNI. The "Improper Sexual Conduct Liability Coverage" of the NIAC policy contains its own "other insurance" provisions, which require NIAC to

contribute in equal shares with other insurers. The NNO policy issued by Western World contains an identical "other insurance" provision. The NIAC policy's "Improper Sexual Conduct Liability Coverage" also provides that the coverage is excess over other applicable insurance that is written on a "claims-made basis." This "excess other insurance" condition does not apply because Western World's coverage is provided on an occurrence basis, not claims-made basis.

68. The "designated professional liability" exclusion of the NIAC policy does not apply to preclude coverage for NNI in the Landmeier Action, and therefore does not provide a basis for NIAC to avoid sharing in the defense of NNI. Employees of NNI's licensees, NNO and NNG, allegedly participated with the plaintiffs in procuring and consuming alcohol and drugs while plaintiffs were in their care for drug and alcohol rehabilitation. NNO's employees also allegedly entered into sexual relationships with Landmeier. This conduct is directly antithetical to the services NNO and NNG provide, and the treatment practices and philosophies NNI licensed, monitored and enforced. The alleged behavior of NNI's licensees does not constitute "professional services" subject to NIAC's "designated professional services" exclusion.

69. Western World is entitled to equitable contribution from NIAC for Western World's payments of defense fees and costs in the Landmeier Action referred to herein. A declaratory judgment is necessary in that Western World is informed and believes and on that basis alleges that NIAC disputes Western World's contentions and instead contends that NIAC has no obligation to contribute to the defense fees and costs incurred by NNI in the Landmeier Action. This Court has the authority to issue a declaration concerning the respective rights and obligations of the parties.

70. A judicial declaration is necessary and appropriate at this time and under the circumstances in order that the parties may ascertain their respective rights and duties as to the payment of defense fees and costs incurred by Western World on behalf of NNI in the Landmeier Action. Western World has no other existing speedy, accurate or proper remedy, other than that prayed for, by which the rights of the parties hereto may be determined.

**SECOND CAUSE OF ACTION:**
**DECLARATORY RELIEF (DESMOND ACTION)**

71. Western World incorporates the allegations within paragraphs 1 through 70 of this

complaint as though they were fully set forth herein.

72. An actual controversy exists between Western World, on the one hand, and NIAC, on the other hand, regarding their respective legal rights and obligations under the Western World and NIAC policies, based upon the terms, provisions and conditions of those policies. Western World maintains that NIAC was obligated to defend NNI in the Desmond Action, and share equitably with Western World in the costs of providing that defense.

73. NNI was a defendant in the Desmond Action. NNI licensed its drug and alcohol rehabilitation program to NNO and NNG. The Desmond Action alleged that NNI enforced strict compliance by NNG with the licensed program.

74. The Desmond Action alleged Desmond was drinking beer and vodka with Narconon on of Georgia employees and staff members on day before he died. While still intoxicated, Desmond left the NNG employees and staff members to obtain the heroin that became the cause of his death hours later. The NIAC policy provides coverage under its "Liquor Liability Coverage" for liability for injuries suffered by reason of "furnishing of any alcoholic beverage." The NIAC general liability coverage form also provides coverage for liability for injuries arising from the furnishing of alcoholic beverages because the liquor liability exclusion of the NIAC general liability form applies only to insureds "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." The "other insurance" exclusion in the NIAC Liquor Liability Coverage form does not apply where other insurance responds to liability for injury arising by reason of furnishing alcoholic beverages. Because the Western World NNG Policy, like the NIAC policy, does not exclude liability for injuries arising from furnishing alcoholic beverages where the insured is not in the business of providing or distributing alcohol, both policies provide coverage. The NIAC Liquor Liability Coverage" form and the Western World NNG Policy contain identical "other insurance" provisions, requiring NIAC to share the defense of NNI with Western World on an equal shares basis.

75. The "designated professional liability" exclusion of the NIAC policy does not apply to preclude coverage for NNI in the Desmond Action, and therefore does not provide a basis for NIAC to avoid sharing in the defense of NNI. Employees of NNI's licensees, NNO and NNG, allegedly participated with the plaintiffs in procuring and consuming alcohol and drugs while plaintiffs were in

their care for drug and alcohol rehabilitation. This conduct is directly antithetical to the services NNO and NNG provide, and the treatment practices and philosophies NNI licensed, monitored and enforced. The alleged behavior of NNI's licensees does not constitute "professional services" subject to NIAC's "designated professional services" exclusion.

76. Western World is entitled to equitable contribution from NIAC for Western World's payments of defense fees and costs in the Desmond Action referred to herein. A declaratory judgment is necessary in that Western World is informed and believes and on that basis alleges that NIAC disputes Western World's contentions and instead contends that NIAC has no obligation to contribute to the defense fees and costs incurred by NNI in the Desmond Action. This Court has the authority to issue a declaration concerning the respective rights and obligations of the parties.

77. A judicial declaration is necessary and appropriate at this time and under the circumstances in order that the parties may ascertain their respective rights and duties as to the payment of defense fees and costs incurred by Western World on behalf of NNI in the Desmond Action. Western World has no other existing speedy, accurate or proper remedy, other than that prayed for, by which the rights of the parties hereto may be determined.

**THIRD CAUSE OF ACTION:**
**EQUITABLE CONTRIBUTION (LANDMEIER ACTION)**

78. Western World incorporates the allegations within paragraphs 1 through 77 of this complaint as though they were fully set forth herein.

79. Based on the payments made by Western World on behalf of NNI for defense fees and costs in the Landmeier Action, and the terms and conditions of the Western World and NIAC policies, the sums paid by Western World in defense fees and costs on behalf of NNI in the Landmeier Action should be allocated between Western World and NIAC. Based upon NIAC's refusal to pay any portion of the defense fees and costs incurred by NNI in the Landmeier Action, Western World was compelled to pay more than its fair share of those defense fees and costs.

80. Pursuant to the doctrine of equitable contribution, Western World is entitled to recover from NIAC those amounts which Western World paid in excess of its equitable share of the defense fees and costs incurred on behalf of NNI in the Landmeier Action.

**FOURTH CAUSE OF ACTION:**
**EQUITABLE CONTRIBUTION (DESMOND ACTION)**

81. Western World incorporates the allegations within paragraphs 1 through 80 of this complaint as though they were fully set forth herein.

82. Based on the payments made by Western World on behalf of NNI for defense fees and costs in the Desmond Action, and the terms and conditions of the Western World and NIAC policies, the sums paid by Western World in defense fees and costs on behalf of NNI in the Desmond Action should be allocated between Western World and NIAC. Based upon NIAC's refusal to pay any portion of the defense fees and costs incurred by NNI in the Desmond Action, Western World was compelled to pay more than its fair share of those defense fees and costs.

83. Pursuant to the doctrine of equitable contribution, Western World is entitled to recover from NIAC those amounts which Western World paid in excess of its equitable share of the defense fees and costs incurred on behalf of NNI in the Desmond Action.

WHEREFORE, Plaintiff Western World Insurance Company prays that this Court enter judgment in its favor and against NIAC, as follows:

**V. PRAYER**

1. For a declaration of the parties' rights and duties with respect to the obligation to pay defense fees and costs incurred on behalf of NNI in the Landmeier Action;

2. For a declaration of the parties' rights and duties with respect to the obligation to pay defense fees and costs incurred on behalf of NNI in the Desmond Action;

3. For judgment against defendant NIAC and/or Does 1 through 10 pursuant to the doctrine of equitable contribution for an apportionment of the amount of the defense fees and costs incurred on behalf of NNI in the Landmeier Action that was in excess of amounts fairly and equitably owed by Western World;

4. For judgment against defendant NIAC and/or Does 1 through 10 pursuant to the doctrine of equitable contribution for an apportionment of the amount of the defense fees and costs incurred on behalf of NNI in the Desmond Action that was in excess of amounts fairly and equitably owed by Western World;

Case5:14-cv-04466 Document1 Filed10/06/14 Page17 of 17

5. For costs of suit incurred herein; and

6. For such other relief as this Court may deem just and proper.

Dated: October 6, 2014

SELVIN WRAITH HALMAN LLP

By: /s/ David A. Evans
James L. Wraith
David A. Evans
Attorneys for Plaintiff
WESTERN WORLD INSURANCE COMPANY

151809

17

WESTERN WORLD INSURANCE COMPANY'S COMPLAINT CASE NO.: