James L. Wraith, State Bar No. 112234
David A. Evans, State Bar No. 181854
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone: (510) 874-1811
Facsimile: (510) 465-8976
E-mail: jwraith@selvinwraith.com
devans@selvinwraith.com

Attorneys for Plaintiff/Counter-Defendant
Western World Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

WESTERN WORLD INSURANCE COMPANY,

Plaintiff,

v.

NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA, a California corporation; and DOES 1 through 10,

Defendants.

---

NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,

Counterclaimant,

v.

WESTERN WORLD INSURANCE COMPANY,

Counter-Defendant

CASE NO.: 5:14-cv-04466-EJD

**WESTERN WORLD INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: February 25, 2016
Time: 9:00 a.m.
Ctrm.: 4
Judge: Judge Edward J. Davila

Trial Date: April 25, 2016
Complaint Filed: October 6, 2014

## TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. STATEMENT OF RELEVANT FACTS ........ 3

A. The Parties ........ 3

B. Desmond Lawsuit ........ 3

C. Landmeier Lawsuit ........ 4

D. The Western World Policies ........ 5

E. The NIAC Policy ........ 5

F. NIAC's Denial of Coverage: Desmond Lawsuit And Landmeier Lawsuit ........ 6

III. LEGAL ARGUMENT ........ 7

A. Standard for Summary Judgment ........ 7

B. Burdens of Proof on a Motion for Summary Judgment Seeking Equitable Contribution of Defense Fees and Costs Among Coinsurers ........ 7

C. Choice of Law ........ 10

D. Interpretation of Insurance Contracts ........ 10

E. NIAC Policy Contains Three (3) Separate Stand-Alone Coverage Parts: (i) CGL Coverage Part, (ii) Liquor Liability Coverage Part, and (iii) Improper Sexual Conduct Coverage Part, With Each Coverage Part Providing Separate Stand-Alone Coverage ........ 11

1. NIAC Owes a Duty to Defend the Desmond and Landmeier Lawsuits Under Its Policy's Stand-Alone Liquor Liability Coverage ........ 11

2. NIAC Owes a Duty to Defend the Landmeier Lawsuit Under Its Policy's Improper Sexual Conduct Part Coverage ........ 14

3. NIAC Owes a Duty to Defend the Desmond Lawsuit Under Its Policy's Commercial General Liability Coverage (CGL) Part ........ 15

F. The NIAC Policy's "Professional Services" Exclusion Does Not Apply To The Liquor Liability Coverage Part Or Improper Sexual Conduct Coverage Part ........ 16

1. The "Professional Services" Exclusion Applies Only To The CGL Coverage Part According To Its Express Terms ........ 16

**Page(s)**

2. The Injuries NNI Caused As Alleged In The Desmond and Landmeier Lawsuits Were Not Caused By "Professional Services" ....18

G. The Narconon License Agreements Do Not Prevent Coverage Under The NIAC Policy ....21

H. Western World Is Entitled to Equitable Contribution From NIAC For Reimbursement of Defense Fees and Costs (Past And Future) For Defending NNI in Desmond And Landmeier Lawsuits ....22

IV. CONCLUSION....24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Ins. Co. v. Superior Court*,
51 Cal.3d 807, 822 (1990) (*en banc*; citing Cal. Civ. Code § 1636) ....10

*Ambrosio v. Brit UW Limited*,
606 Fed.Appx. 885 (2015) ....19

*American Star Ins. Co. v. Insurance Co. of the West*,
232 Cal.App.3d 1320, 1325 (1991) ....10

*Amex Assurance Co. v. Allstate Ins. Co.*,
112 Cal.App.4th 1246 (2003) ....20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 256 (1986) ....7

*Atain Specialty Ins. Co. v. 20 Parkridge, LLC*,
Northern District Case No. 15-cv-00212-MEJ, Docket No. 13 (May 11, 2015) ....20

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017, 1038-1039 (2002) ....8, 9

*Bank of California, N.A. v. Opie*,
663 F.2d 977, 980 (9th Cir. 1981) ....7, 18

*Barnett v. Fireman's Fund Ins. Co.*,
90 Cal.App.4th 500, 510 (2001) ....15

*Beeman v. Anthem Prescription Mgmt., LLC*,
689 F.3d 1002, 1008 (9th Cir. 2012)(en banc) ....7

*Braxton-Secret v. A.H. Robins Co.*,
769 F.2d 528 (9th Cir. 1985) ....7

*Buss v. Superior Court*,
16 Cal 4th 35 (1997) ....8

*Celotex Corp. v. Caltrett*,
477 U.S. 317, 323 (1986) ....7

*Chase v. National Indem. Co.*,
129 Cal.App.2d 853 (1954) ....23

*CNA Cas. v. Seaboard Sur. Co.*,
176 Cal. App. 3d 598, 609 (1986) ....9

*Colony Ins. Co. v. Fladseth*,
U.S.D.C. Case No. C 12-1157 CW (N.D. Cal. 6/21/2013) ....19

*Dart Industries, Inc. v. Commercial Union Ins. Co.*,
28 Cal.4th 1059, 1080 (2002) ....22, 23

**Page(s)**


*Delgado v. Interinsurance Exchange of Auto. Club of So. Cal.*, 47 Cal 4th 302 (2009) ....................14

*Edegerly v. City and County of San Francisco*, 713 F.3d 976, 982 (9th Cir. 2013) ....................7

*EMMI Inc. v. Zurich American Ins. Co.*, 32 Cal. App. 4th for 65, 471 (2004) ....................18

*Fireman's Fund Ins. Co. v. Maryland Cas Co.*, 65 Cal. App. 4th 1279, 1293 (1998) ....................22

*Food Pro Int'l, Inc. v. Farmers Ins. Exch*, 169 Cal.App.4th 976, 992 (2008) ....................8, 18

*Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 869 (1998) ....................8

*Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.*, 53 Cal.App.4th 250 (1997) ....................10

*Gray v. Zurich Ins. Co.*, 65 Cal 2d 263, 276 (1965) ....................9, 15

*Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440 (Idaho App. 1984) ....................19

*Hollingsworth v. Commercial Union Ins. Co.*, 208 Cal.App.3d 800 (1989) ....................20

*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) ....................8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ....................9

*Marie Y. v. General Star Indem. Co.*, 110 Cal.Appl.4th 928 (2003) ....................19

*Maryland Casualty Co. v. Nationwide Mutual Ins. Co.*, 81 Cal. App. 4th 1082, 1092 (2000) ....................22

*Maxon v. Security Ins. Co.*, 214 Cal.App.2d 603 (1963) ....................15, 16

*McKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 648 (2003) ....................18

*Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th to 87, 295 (1993) ....................2, 8

*North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 642 ....................18

*North Counties Engineering, Inc. v. State Farm General Ins. Co.*, 224 Cal.App.4th 902, 927 (2014) ....................19

**Page(s)**

*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App. 4th 183 (2009) ....8

*Pension Trust Fund for Operating Engrs' v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002) ....9

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 916-917 (1986) ....11

*Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 808 (1982) ....19

*Robert McMullen & Son, Inc. v. United States Fid. & Guar. Co.*, 103 Cal. App. 3d 198 (1980) ....10

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622 (1975) ....22

*Ruder & Finn v. Seaboard Sur.*, 52 N.Y.2dd 663 (1981) ....9

*Safeco Ins. Co. of America v. Superior Court*, 140 Cal. App. 4th 874, 879 (2006) ....8

*Scottsdale Ins. Co. v. Century Surety Co.*, 182 Cal. App. 4th 1023, 1032 (2010) ....23

*Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d (Minn. 1984) ....19

*Standard Fire Ins. Co. v. Blakeslee*, 771 P.2d 1172 (Wash. App. 1989) ....19

*State Farm Fire & Cas. Co. v. Superior Court*, 164 Cal. App. 4th 317 (2008) ....14

*Tradewinds Escrow, Inc. v. Truck Ins. Exchange*, 97 Cal.App.4th 704 (2002) ....20

*Travelers Casualty & Surety Co. v. American Equity Ins. Co.*, 93 Cal. App. 4th 1142, 1157 (2001) ....22

*Vann v. Travelers Companies*, 39 Cal.App.4th 1610, 1614-1615 (1995) ....8

*Westoil Terminals Co., Inc. v. Industrial Indemnity Co.*, 110 Cal.App.4th 139, 146 (2003) ....10

**Statutes**

Cal. Civ. Code § 1636 ....10

Cal. Civ. Code § 1638 ....10

Cal. Civ. Code § 1639 ....10

**Page(s)**

Cal. Civ. Code § 1644 .......... 10

Civil Code § 3287 .......... 23

Civil Code § 3289(b) .......... 23

TO DEFENDANT AND ITS RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 25, 2016, at 9:00 a.m. or as soon thereafter as possible, in Courtroom 4 of the above-captioned Court located at 280 South 1st Street, San Jose, California, Plaintiff Western World Insurance Company ("Western World") will and hereby does move for summary judgment in its favor and against Defendant Nonprofits Insurance Alliance of California ("NIAC"), pursuant to Federal Rules of Civil Procedure, Rule 56.

Western World is entitled to judgment as a matter of law because there are no triable issues of material fact and NIAC has produced no evidence to support its defenses. Western World is also entitled to judgment because there are complete affirmative defenses to NIAC's counterclaims. Western World hereby moves for summary judgment on the basis that NIAC owed a duty to defend its insured (Narconon International) in two underlying lawsuits and refused to defend thereby causing Western World to bear the entire burden of defense. Western World also moves for summary judgment on the basis it is entitled to obtain from NIAC reimbursement of an equitable share of the costs to defend Narconon International in the two underlying lawsuits.

The motion is supported by this Notice of Motion, the accompanying Memorandum of Points and Authorities, Declaration of David A. Evans, Moving Separate Statement, Stipulation re Amount of Defense Fees and Costs Incurred, and Request for Judicial Notice, the pleadings and papers on file in this action, and upon such other matters that may be presented to the Court at the time of hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is an insurance declaratory judgment and equitable contribution action between co-insurers. Western World seeks recovery of an equitable allocated share of defense fees/costs arising out of two (2) underlying lawsuits (Desmond and Landmeier Lawsuits). Western World and NIAC provide liability insurance to Narconon International ("NNI") which as a parent organization formulates, oversees, and directs Scientology-based drug rehabilitation treatment across the country through local state affiliates including Narconon of Georgia ("NNG") and Narconon of Oklahoma ("NNO"). The local entities are also insured by Western World, but not by NIAC.

The Desmond and Landmeier Lawsuits are "mixed" actions asserting covered and uncovered

claims for drug-overdose related wrongful death and bodily injury to Narconon patients. California law controls the interpretation of the NIAC policy and provides that NIAC must defend "mixed" actions that include a potentially covered claim or allege facts within the pleadings or extrinsic facts available to NIAC from diligent inquiry that present the possibility of a covered claim. NIAC must defend unless there is no conceivable theory that could raise a single issue under any factual allegation in the pleadings or under extrinsic facts available through diligent inquiry that might be covered by the NIAC policy. *Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th to 87, 295 (1993).

The plaintiffs in the two (2) underlying lawsuits are Patrick Desmond and Heather Landmeier. Desmond was undergoing treatment at the Georgia facility (NNG) and Landmeier at the Oklahoma facility (NNO). NNG and NNO are affiliated and controlled by their parent Scientology entity of Narconon International (NNI).

Desmond suffered a fatal heroin overdose after consuming alcohol provided by NNG staff at their residential quarters during after-hour socializing. Landmeier suffered egregious bodily injury (quadriplegia and permanent brain vegetative state) after consuming alcohol and engaging in illicit sexual relations with NNO staff either during treatment or after treatment or both.

The Desmond Lawsuit (Georgia) was filed against NNG and NNI, and the Landmeier Lawsuit (Oklahoma) was filed against NNO and NNI. The Desmond and Landmeier Lawsuits assert potentially covered claims under the NIAC policy triggering NIAC's duty to defend for liquor liability and sexual misconduct liability, and also for commercial general liability ("CGL").

Western World agreed to defend NNI, but NIAC refused. Western World seeks a judicial declaration that NIAC owes a defense of their mutual insured (NNI), payment of an equitable percentage of the past, present and future NNI defense in the Desmond and Landmeier Lawsuits.

NIAC's liability policy provides three stand-alone coverage parts that operate independently of each other consisting of a (i) CGL coverage part, (ii) liquor liability coverage part, and (iii) sexual misconduct coverage part. The Western World and NIAC policies are similar except the NIAC policy contains a "professional services" exclusion not found in the Western World policy. However, NIAC's "professional services" exclusion is narrowly drafted and does not exclude liquor liability or sexual misconduct liability coverage, and does not exclude CGL coverage for NNI's liability for

ordinary negligence (i.e., not professional services).

For the Desmond Lawsuit, NIAC erroneously and prematurely denied coverage from the outset. For the Landmeier Lawsuit, NIAC accepted the defense, but never made a defense payment and withdrew 2.5 years later (30 months) arguing it was "excess" to Western World. Unbelievably, NIAC explained its "excess" position is based solely the "other insurance" provision of its sexual misconduct coverage part stating NIAC's sexual misconduct coverage is "excess" to sexual misconduct coverage provided by "claims-made" policies. However, Western World's policy is an "occurrence" policy, not a "claims-made" policy, and NIAC's withdrawal was unfounded.

NIAC made an early and erroneous denial of the Desmond Lawsuit that mostly relies on an overreaching application of its policy's "professional services" exclusion.

NIAC made an erroneous denial of the Landmeier Lawsuit that mostly relies on an overreaching application of its policy's "professional services" exclusion for the CGL coverage part and liquor liability coverage part, and upon the unfounded "excess to claims made policy" position discussed above (for the sexual misconduct coverage part).

Western World previously filed declaratory judgment and equitable contribution actions against NIAC in Georgia and Oklahoma, but NIAC objected that jurisdiction rests in California. Western World timely re-filed this action in California.

## II. STATEMENT OF RELEVANT FACTS

### A. The Parties

Western World and NIAC issued the following general liability policies:

| Insurance Co. | Policy # | Policy Term | Named Insured | Additional Insured |
|---|---|---|---|---|
| Western World | NPP1123556 | 8/19/2007-2008 | NNG | NNI |
| Western World | NPP0958680 | 6/25/2007-2008 | NNO | NNI |
| NIAC | 2007-17800-NPO | 7/6/2007-2008 | NNI | N/A |

Moving Separate Statement ("MSS") 1, 50, 52.

### B. Desmond Lawsuit

NNG was a drug rehabilitation facility in Georgia operating under license from NNI where

Patrick Desmond was a patient. MSS 22, 25. Desmond spent the evening of June 10, 2008 consuming alcohol provided by staff during an after-hours social gathering at the staff member's off-site apartment residents. MSS 26. After consuming beer and vodka, Desmond was invited to purchase heroin and informed the staff he was leaving the apartment to purchase heroin. MSS 27. Desmond died later that evening from a heroin overdose. MSS 28. On May 18, 2010, Desmond's family filed a lawsuit against NNG and NNI, with an amended complaint filed on March 22, 2012. MSS 20, 21.

The trial court issued an order on motion for summary judgment by NNI holding that a jury could conclude that NNI (acting through NNG) undertook the duty of providing services to Desmond and negligently failed to perform those duties, made the situation worse, or increased the danger to Desmond making NNI liable in negligence. The trial court made a series of rulings that a jury could find the Desmond Lawsuit asserted multiple claims of negligence against NNI. A jury could find NNI had legal duties established by State regulations governing drug treatment programs, had a duty to exercise ordinary care in hiring and retaining employees, and had a duty to Desmond when NNG admitted him for treatment. A jury could find NNI misrepresented itself as a provider of supervised inpatient drug addiction treatment and, instead of providing that treatment, contributed to Desmond's injury by facilitating access to alcohol or drugs. A jury could find NNI retained the right to exercise control over the time, method and manner of NNG's actions and, therefore, NNI might be liable for NNG's actions. MSS 43, 44.

The trial court's ruling followed from the Desmond pleadings, and the trial court concluded it was possible NNI had broad-reaching general negligence exposure for the activities outlined above. The trial court's conclusions flowed from the Desmond pleadings' factual allegations creating these potentially covered general negligence NNI liability exposures.

**C. Landmeier Lawsuit**

NNO is a drug rehabilitation facility in Oklahoma operating under license from NNI where Heather Landmeier was a patient. MSS 30, 33. Landmeier engaged in sexual relations with NNO staff, and consumed alcohol and drugs provided by NNO staff. MSS 34. NNO expelled Landmeier from NNO on March 4, 2008, and she overdosed the next day on heroin and OxyContin, suffering

severe brain damage and quadriplegia. MSS 35, 36. Landmeier and her family filed a lawsuit against NNO and NNI on March 2, 2010. MSS 29. The Landmeier Lawsuit is in litigation without a scheduled trial date.

**D. The Western World Policies**

Western World issued liability policy no. NPP1123556, effective August 19, 2007-2008, to NNG, and liability policy no. NPP0958680, effective June 25, 2007-2008, to NNO. MSS 50, 52.

NNI is added as an "additional insured" under both policies, but only for liability for the acts, omissions and/or negligence of the "named insured" (either NNG or NNO) and specifically excluding liability arising out of the "additional insured's" acts (i.e., NNI's acts are uninsured). MSS 54.

Each policy provides $1 million per occurrence coverage ($2 million general aggregate for the NNG Policy, $3 million general aggregate for the NNO Policy) to the named insured ("NNG" or "NNO") under a standard commercial general liability form (Form CG0001, ed. 07/98). MSS 51, 53. Each policy adds sexual molestation insurance ($300,000 limit of liability) for bodily injury caused by sexual molestation. MSS 58.

All coverages are subject to an anti-stacking provision ("maximum limit of liability" endorsement) limiting coverage to the highest applicable limit ($1 million) from one coverage. MSS 61. The policies eliminate contractual liability coverage. MSS 56.

**E. The NIAC Policy**

NIAC issued liability policy no. 2007-17800-NPO, effective July 6, 2007-2008, to NNI. MSS 1. The policy provides insurance protection through three separate coverage parts. The CGL Coverage Part provides $1 million per occurrence ($2 million general aggregate) coverage under Commercial General Liability Form CG0001. MSS 4. The separate Liquor Liability Coverage Part provides $1 million each occurrence Liquor Liability coverage for furnishing of alcoholic beverages under Liquor Liability Coverage Form CG0033. MSS 15. The separate Improper Sexual Conduct Coverage Part provides $250,000 per occurrence coverage for sexual misconduct under Improper Sexual Liability Coverage Form NIAC-ISCET. MSS 10.

The policy's professional services exclusion excludes bodily injury under the CGL Coverage Part due to the rendering or failure to render any professional service. MSS 8. However, the

"professional services" exclusion does not apply to the separate Liquor Liability Coverage Part or Improper Sexual Conduct Liability Coverage Part. Further, liquor liability coverage provided by the liquor liability coverage form, and improper sexual conduct coverage provided by the improper sexual conduct form do not have an "occurrence" trigger of coverage. MSS 7.

**F. NIAC's Denial of Coverage: Desmond Lawsuit And Landmeier Lawsuit**

NNI tendered the Desmond Lawsuit to NIAC. NIAC denied coverage on June 7, 2010, asserting the "professional services" exclusion applied and the absence of an "occurrence" (i.e., an accident). MSS 37, 38. NNI requested reconsideration, and NIAC reasserted the same declination on October 27, 2010. MSS 39. Western World tendered to NIAC and NIAC declined for the same reasons on May 11, 2012. MSS 40. NNI requested a second reconsideration, and NIAC reasserted the same declination on November 8, 2012. MSS 41. NIAC reasserted the same declination to NNG yet again on January 30, 2013. MSS 42.

NNI tendered the Landmeier Lawsuit to NIAC. NIAC accepted the defense on March 16, 2010, under the Improper Sexual Conduct Coverage Part. MSS 45. NIAC denied coverage under the CGL Coverage Part[1] asserting the "professional services" exclusion applied. MSS 45. NIAC reaffirmed its acceptance of the defense of the Landmeier Lawsuit on July 13, 2010, and on July 21, 2010, NIAC agreed to share NNI's defense with Western World. MSS 46, 47. However, NIAC never made a defense payment and, on January 29, 2013, NIAC withdrew its defense stating its improper sexual misconduct was "excess" to the Western World NNO Policy under an "other insurance" clause making sexual misconduct coverage "excess" to coverage written on "claims made" basis. MSS 48. However, the Western World policy provides "occurrence" based coverage, not "claims made" coverage. MSS 14. NIAC affirmed its declination a second time on the same grounds on July 23, 2013. MSS 49.

Prior to the settlement of the Desmond Lawsuit, Western World paid more than $882,000 to defend NNI in the Desmond Lawsuit. MSS 64-69.

Litigation in the Landmeier Lawsuit is ongoing and trial has not been scheduled. Western

[1] NIAC's coverage position letter did not address the Liquor Liability Coverage Part. MSS 35.

World is defending NNI and has paid more than $116,000 through the present. MSS 71-74. Additional, substantial defense costs are anticipated.

## III. LEGAL ARGUMENT

### A. Standard for Summary Judgment

Summary judgment standards in federal court are well-established and the purpose of Federal Rules of Civil Procedure 56(d) is to isolate and terminate claims and defenses that are factually unsupported. *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986). Summary judgment is "designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Caltrett, supra,* at p. 327. When only one inference can be drawn from undisputed facts, there is no "genuine" dispute on summary judgment. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985).

In diversity actions, California state law must be considered in determining the elements of the action, measure of damages, and applicable defenses. *Bank of California, N.A. v. Opie*, 663 F.2d 977, 980 (9th Cir. 1981). A District Court sitting in diversity applies the law as it believes the California Supreme Court will apply it. *Edegerly v. City and County of San Francisco*, 713 F.3d 976, 982 (9th Cir. 2013). Where there is no convincing evidence the California Supreme Court would decide differently, a federal court is obligated to follow decisions of the state's intermediate appellate courts. *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1008 (9th Cir. 2012)(en banc).

When the moving party shows only one inference can be drawn from undisputed facts, that party meets its initial burden of showing no genuine issue of fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. Cal. 1985). The burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not rest on the pleadings to meet this burden. *Id.*

### B. Burdens of Proof on a Motion for Summary Judgment Seeking Equitable Contribution of Defense Fees and Costs Among Coinsurers

In an equitable contribution action between co-insurers regarding the duty to defend, plaintiff need only show a mere potential for coverage under the recalcitrant defendant's policy in order to obtain contribution for the costs of defense. *See Safeco Ins. Co. of America v. Superior Court*, 140

Cal. App. 4th 874, 879 (2006).

To meet this burden, Western World need only make a *prima facie* showing the Desmond and Landmeier Lawsuits assert a single potentially covered claim under the NIAC policy, because NIAC has a duty to defend those Lawsuits in their entirety if only a single claim or small percentage of alleged damages potentially fall within NIAC's coverage. *Buss v. Superior Court*, 16 Cal 4th 35 (1997); *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993). To prevail on a claim arising from the breach of the duty to defend, Western World only needs to show the possibility of coverage exists for NIAC. *Food Pro Int'l, Inc. v. Farmers Ins. Exch*, 169 Cal.App.4th 976, 992 (2008). Any doubts as to whether the facts give rise to a duty to defend is resolved in favor of finding the duty applies. *Vann v. Travelers Companies*, 39 Cal.App.4th 1610, 1614-1615 (1995).

NIAC's obligation of equitable contribution for defense costs arises when a "diligent inquiry" would reveal a potential of coverage. *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App. 4th 183 (2009). NIAC's duty to defend continues until the Lawsuits are concluded. *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 869 (1998).

NIAC's duty to defend is triggered by allegations in the Lawsuits' complaints or by facts extrinsic to the complaints that "reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). NIAC's immediate duty to defend arises if the Lawsuits' complaints allege covered and non-covered acts even if the uncovered claim "is the 'dominant factor' in the case." *Id.* As *Horace Mann* explained, the question is not whether non-covered acts predominate, but "whether there is any potential for liability under the policy." Nothing "beyond a bare 'potential' or 'possibility' for liability of coverage" is required to trigger NIAC's defense obligation. *Montrose*, 6 Cal. 4th at 300.

As stated in *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-1039 (2002), NIAC can only defeated existing potential for coverage by undisputed facts that conclusively negate such coverage, and this standard is particularly true where NIAC seeks to defeat coverage by reliance upon an exclusion. An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating the exclusion applies and the insurer has the burden of proving through conclusive evidence that the exclusion applies in all possible worlds. *Id.*

Once Western World makes a prima facie showing, the burden shifts to NIAC to conclusively negate any possibility of coverage through undisputed evidence. An insurer may only avoid the duty to defend if there is "no conceivable theory" based on "conclusive evidence" under which the third-party complaint could fall within the scope of policy coverage. *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, *supra*, 100 Cal.App.4th at 1038-1040. However, courts construe the allegations liberally so that a duty to defend does not depend on inartful drafting in the Lawsuits' complaints. As explained in *Gray v. Zurich Ins. Co.*, 65 Cal 2d 263, 276 (1965), NIAC "cannot construct a formal fortress of the third-party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable … courts do not examine only the pleaded word but the potential liability created by the suit." California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke NIAC's duty to defend. *Pension Trust Fund for Operating Engrs' v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002). Similarly, coverage is not governed by any label attached to allegations. *CNA Cas. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 609 (1986).

The Ninth Circuit has explained that even single words buried within a completely unrelated cause of action are sufficient to trigger a duty to defend because any doubt as to whether the facts establish the existence of the defense duty must be resolved in favor of accepting the defense. In *Pension Trust*, 307 F.3d at 951, n. 4, the Ninth Circuit observed that *CNA Cas. v. Seaboard Sur. Co.*, 176 Cal. App. 3d at 609, approvingly cited a New York decision (*Ruder & Finn v. Seaboard Sur.*, 52 N.Y.2dd 663 (1981)) finding a duty to defend is triggered by "two solitary, unsubstantiated words" buried within a "completely unrelated federal antitrust cause of action, which was, itself, undisputedly not covered".

The Ninth Circuit also explained in *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), that a complaint's silence on the existence of the undisputed facts conclusively negating coverage are sufficient to create coverage. In *Manzarek*, the pleadings were silent as to the type of products and merchandise produced and marketed by the policyholder (founding members of "The Doors" rock music band) and this "silence" was sufficient to trigger a duty to defend a lawsuit by "The Doors" alleging trademark infringement. The policy's "field of

entertainment" exclusion excluded coverage for infringement from media products, but the complaint's "silence" about what types of products and merchandise were produced and marketed by the policyholder meant there was a possibility of coverage because there might be non-excluded infringement from "non-media" products or merchandise (such as salad dressing).

**C. Choice of Law**

The rights between the parties are governed by California law. *Robert McMullen & Son, Inc. v. United States Fid. & Guar. Co.*, 103 Cal. App. 3d 198 (1980). NIAC is a California nonprofit organization that only issues policies to insureds incorporated in California or qualified to do business in California. MSS 2. Since the contract was made between California residents (NIAC and NNI), California has an interest in seeing the contract enforced according to California law. *Robert McMullen & Son*, *supra*, 103 Cal. App. 3d at 206.[2]

**D. Interpretation of Insurance Contracts**

"Analysis of a written contract starts with an examination of its language . . . . In insurance coverage cases, 'the proper initial focus must be the language of the policy itself . . .'" *Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.*, 53 Cal.App.4th 250 (1997) *citing* Cal. Civ. Code § 1639, *quoting American Star Ins. Co. v. Insurance Co. of the West*, 232 Cal.App.3d 1320, 1325 (1991). The intent of the parties at the time the contract is formed governs the interpretation. See *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990) (*en banc*; citing Cal. Civ. Code § 1636). Courts are to infer such intent, if possible, "solely from the written provisions of the contract." *Id.* (*citing* Cal. Civ. Code § 1639). "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' controls judicial interpretation." *Id.* (*citing* Cal. Civ. Code §§ 1638, 1644). Courts are to interpret contract provisions in light of the purposes and meaning of the entire instrument. *See Westoil Terminals Co., Inc. v. Industrial Indemnity Co.*, 110 Cal.App.4th 139, 146 (2003). "An insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other." *Producers Dairy Delivery Co. v. Sentry Ins.*

[2] Federal courts in both Oklahoma and Georgia in Western World's prior declaratory judgment actions against NIAC held the NIAC contract was formed in California and its interpretation governed by California law.

*Co.*, 41 Cal.3d 903, 916-917 (1986) (quotation omitted).

**E. NIAC Policy Contains Three (3) Separate Stand-Alone Coverage Parts: (i) CGL Coverage Part, (ii) Liquor Liability Coverage Part, and (iii) Improper Sexual Conduct Coverage Part, With Each Coverage Part Providing Separate Stand-Alone Coverage**

The NIAC policy is comprised of three coverage parts. Each coverage part has its own declarations page identifying the limits of that coverage "part" and the specific forms that comprise the coverage "part." The policy's first page (NIAC-Policy 000001) states the declaration pages, schedules, forms, endorsements, and policy changes, "comprise a true and correct copy" of the NIAC policy. MSS 3. Note 1 on the first page states Policy 2007-17800-NPO is "a combined Commercial General Liability, Improper Sexual Conduct and Commercial Liquor Liability policy." MSS 3.

The "Common Policy Declarations" page (NIAC-Policy 000008) identifies three "coverage parts": commercial general liability (CGL), improper sexual conduct (ISC) and commercial liquor liability (LL). MSS 3. Each of these separate coverage "parts" has its own declarations page.

The CGL Coverage Part Declarations page (NIAC-policy 000009) identifies a per occurrence limit of $1 million. MSS 4.

The ISC Liability Coverage Part Declarations page (NIAC-Policy 000012) identifies a per-claim limit of $250,000 and identifies the improper sexual conduct form NIAC-ISCET as the "form" applicable to the ISC coverage part. MSS 10.

The Liquor Liability Coverage Part Declarations page (NIAC-Policy 000013) identifies common cause limit of $1 million and identifies the liquor liability form CG 0033 as the "form" applicable to this coverage part. MSS 15.[3]

**1. NIAC Owes a Duty to Defend the <u>Desmond</u> and <u>Landmeier</u> Lawsuits Under Its Policy's Stand-Alone Liquor Liability Coverage**

The <u>Desmond</u> Lawsuit's complaint alleges that on June 10, 2008, Desmond was "drinking beer and vodka with Narconon employees and staff members in a staff member's apartment" and "after becoming highly intoxicated with Narconon's employees and staff members, Patrick left the

---

[3] The policy limit for each coverage part applies to the <u>Desmond</u> and <u>Landmeier</u> Lawsuits because the NIAC policy does not have an anti-stacking provision. In contrast, Western World policies contain an anti-stacking endorsement limiting coverage to the single highest limit of any single invoke coverage. (MSS 61; Form No. WW218 (10/97); WW000031.) NIAC coverage stacks limits for CGL, liquor liability, and improper sexual conduct coverage parts.

illegal housing program's premises with two former patients of Defendant Narconon for the purpose of buying heroin." MSS 26, 27. The Narconon staff member (Bradley Taylor) testified the night Desmond died he watched a basketball game with Taylor at Taylor's apartment and Desmond drank Taylor's beer and a bottle of vodka (brought by Desmond) in Taylor's presence before Desmond announced he was leaving to purchase heroin. MSS 26.

The Landmeier complaint alleges Narconon staff "provided drugs and alcohol" to Landmeier and allowed staff to engage in sexual relationships with Landmeier before expelling Landmeier with knowledge she was addicted to heroin and OxyContin provided by staff and that her heroin and OxyContin overdose (which left her a quadriplegic with permanent vegetative brain injury) occurred the day after she was expelled. MSS 34-36.

The NIAC policy provides liquor liability coverage under the CGL Coverage Part (because the CGL liquor liability exclusion does not apply unless Narconon is licensed to furnish alcohol) and separately under the Liquor Liability Coverage Part under Liquor Liability Coverage Form CG0033. MSS 6. The Liquor Liability Coverage Form's insuring agreement covers liability for "injury" imposed on NIAC "by reason of the selling, serving or furnishing of any alcoholic beverage" and the Form defines "injury" as "all damages" including damages because of bodily injury and property damage including damages for care, loss of services or loss of support." MSS 16-17.

The Liquor Liability Form excludes coverage if a liquor license required for selling, serving or furnishing alcohol is suspended, expired, canceled or revoked. MSS 19. NIAC never asserted this exclusion to NNI because NNI is not in the business of selling, serving or furnishing alcoholic beverages and Narconon does not require a liquor license.

The Liquor Liability Form also excludes coverage if other insurance covers the "injury" unless the other insurance provides "liquor liability" coverage whereupon the exclusion does not apply. MSS 19. NIAC never asserted this exclusion to NNI because the Western World policy provides liquor liability coverage under its policy's CGL Coverage Form CG0001 which is identical to the NIAC CGL Coverage Form CG0001. CGL Coverage Form CG0001 covers liquor liability because the form's liquor liability exclusion does not apply (as discussed above) because Narconon is not in the business of furnishing alcohol and does not require a liquor license.

Although similar, the NIAC Policy's two (2) separate liquor liability coverages have one slight difference. Liquor liability is provided by the CGL Coverage Form CG0001 because the "liquor liability" exclusion does not apply (the exclusion excludes coverage for entities in the business of furnishing alcohol). The CGL Coverage Form CG0001 is triggered by an "occurrence" (meaning "accident") causing "bodily injury" (which includes death).

Since the Liquor Liability Form's exclusions do not apply, and the CGL Coverage Form's liquor liability exclusion does not apply, the only inquiry for triggering the duty to defend under the NIAC Policy's two (2) separate liquor liability coverages is whether a review of the Desmond or Landmeier Lawsuits' complaints' causes of action or factual allegations or extrinsic facts conclusively establish it is impossible for a liquor liability claim (even if groundless or unfounded) to be asserted or implied against NNI. Unless NIAC can conclusively demonstrate with undisputed evidence the impossibility of a liquor liability claim against NNI, NIAC must defend NNI under its Policy's two (2) liquor liability coverages.

The Desmond Pleadings (Complaint and First Amended Complaint) allege NNG is a subsidiary, licensee or alter ego of NNI, and Desmond consumed alcohol furnished by Narconon staff in a staff member's apartment before leaving the apartment to purchase and overdose on heroin. MSS 26-28. The Desmond pleadings assert negligence causes of action for furnishing alcohol and allege furnishing alcohol was a proximate cause of Desmond's overdose death. MSS 20, 21, 43-44. These allegations trigger a duty to defend under the NIAC Policy's two separate liquor liability coverages.

The Landmeier pleadings (Complaint) allege NNO and NNI staff provided alcohol to Landmeier and had sexual relationships with Landmeier. MSS 34. NNO and NNI expelled Landmeier from the treatment facility and she overdosed the next day sustaining severe bodily injury. MSS 35-36. The Landmeier Pleadings assert negligence causes of action against NNO and NNI for furnishing alcohol and having improper sexual relations which the Pleadings allege was proximate cause of Landmeier's overdose bodily injury. MSS 29, 34. These allegations trigger a duty to defend under the NIAC Policy's two separate liquor liability coverages.

The Desmond and Landmeier Lawsuits allege NNI is liable for bodily injury to Desmond and Landmeier caused partly by furnishing alcohol. The furnishing of alcohol was an "occurrence"

("accident") because the staff's purpose in furnishing alcohol was to facilitate social interaction, not to cause a later-occurring unintended drug overdose. *State Farm Fire & Cas. Co. v. Superior Court,* 164 Cal. App. 4th 317 (2008). The bodily injury (meaning the overdose) is an unexpected, unforeseen or undesigned happening or consequence from either a known or an unknown cause (furnishing alcohol) and this occurrence definition is read into "occurrence" based liability coverage by operation of law. *Delgado v. Interinsurance Exchange of Auto. Club of So. Cal.*, 47 Cal 4th 302 (2009). The liquor liability allegations of the Desmond and Landmeier Lawsuits trigger a duty to defend under the NIAC CGL coverage part.

Liquor liability is also provided by the Liquor Liability Coverage Form CG0033 which is triggered solely by the imposition of liability for furnishing alcoholic beverages. The Desmond and Landmeier Lawsuits allege NNI is liable for the furnishing of alcohol to Desmond and Landmeier and potential liability for furnishing alcohol triggers a duty to defend.

**2. NIAC Owes a Duty to Defend the Landmeier Lawsuit Under Its Policy's Improper Sexual Conduct Part Coverage**

The Landmeier Lawsuit alleges improper sexual conduct between Narconon staff and Landmeier was a causative factor in her subsequent drug overdose. Sexual conduct between Narconon staff and Landmeier is unlawful in Oklahoma. Counselors cannot engage in sexual relationships with patients, and all sexual conduct with patients must be reported to the Department of Health. OAC Title 310:405-3-3(e); 310:405-3-2(g). Improper sexual conduct is defined by the NIAC policy as "actual, attempted, or alleged unlawful sexual conduct." Sexual relations between staff and Landmeier is "improper sexual conduct" triggering a duty to defend under the NIAC policy. NIAC correctly acknowledged its duty to defend, but later reneged under the risable pretext the Improper Sexual Conduct Coverage Part's "other insurance" provision applied (Improper Sexual Conduct coverage is "excess" to other policies providing "claims made" coverage). The "other insurance" provision does not apply because the Western World policy is an "occurrence" policy, not a "claims made" policy, and the term "claims made" does not exist in the Western World policy.

### 3. NIAC Owes a Duty to Defend the Desmond Lawsuit Under Its Policy's Commercial General Liability Coverage (CGL) Part

The CGL Coverage Form (CG0001) provides $1 million "bodily injury" coverage caused by an "occurrence," subject to the inapplicable "professional services" exclusion discussed above.

Coverage for the Desmond and Landmeier Lawsuits turn on the facts alleged in the underlying complaint, not on the "technical legal cause of action treated by the third-party." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500, 510 (2001). Legal theories or causes of action based on "intentional" misconduct does not preclude a duty to defend where factual allegations or extrinsic evidence discloses the possibility that negligent or "unintentional" conduct is potentially involved. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 623, 276 (1966), citing *Maxon v. Security Ins. Co.*, 214 Cal.App.2d 603 (1963). So long as the facts disclose potential liability for a "lesser included offense" (i.e., negligence) that could be asserted by the plaintiff, the pleading of intentional misconduct claims does not eliminate the insurer's defense obligation.

NIAC's refusal to defend erroneously rests upon the assertion the Desmond and Landmeier Lawsuits do not allege an "occurrence."[4] Western World has already discussed (above) that NIAC's "occurrence" defense does not apply to the Policy's several liquor liability coverages.

However, NIAC's CGL liability also extends to the Desmond Lawsuit's allegations that NNI is liable for negligently creating and operating a deficient "blueprint" for drug rehabilitation centers. The Desmond trial court found general negligence claims were being asserted against NNI notwithstanding the legal theories or cause of action "labels" in the Desmond complaint. The trial court found the local Narconon entity (NNG) was compelled by its License Agreement with NNI to follow NNI's "blueprint" of rehabilitation practices used by NNI around the world. NNI was responsible for the negligent design, administration and oversight of its program, and NNI agreed to indemnify NNG for claims arising out of the failure to administer the drug rehabilitation program.

The trial court concluded negligence claims against NNI were at the core of the Desmond Lawsuit when the court denied NNI's motion for summary judgment ("MSJ") asserting there was no

[4] As discussed below, the NIAC policy's "professional services" exclusion does not apply to eliminate coverage triggered under any of the three applicable NIAC coverage parts (CGL, Liquor Liability and Improper Sexual Conduct).

evidence of negligence. Desmond's opposition showed a detailed "blueprint" of the Narconon program proving a jury could find NNI's negligence was a proximate cause of Desmond's death. MSS 43. The trial court agreed the claims against NNI were founded on negligence. MSS 44.

The trial court found, "evidence presented from which a jury could conclude that NNI, through NNG, undertook the duty of providing services to Patrick Desmond and failed to exercise reasonable care in carrying out that assumed duty." MSS 44. Even as to civil RICO and intentional misrepresentation claims, the trial court found underlying negligence claims existed. *Id.* The lesser included offense claims (negligence) in the Desmond Lawsuit constitute an "occurrence" ("accident"). Although NIAC has not argued an "occurrence" defense on its declination of the Landmeier Lawsuit, the same reasoning applies to Landmeier.

The CGL Coverage Part also provides separate liquor liability coverage because the CGL Coverage Form's (CG0001) liquor liability exclusion does not apply. The CGL liquor liability exclusion only applies if Narconon is in the "business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." MSS 6. Since none of the Narconon entities (NNI, NNG or NNO) are in the alcohol business, the CGL Coverage Form provides a second, independent liquor liability coverage triggering a duty to defend the Desmond and Landmeier Lawsuits.

**F. The NIAC Policy's "Professional Services" Exclusion Does Not Apply To The Liquor Liability Coverage Part Or Improper Sexual Conduct Coverage Part**

**1. The "Professional Services" Exclusion Applies Only To The CGL Coverage Part According To Its Express Terms**

The "Professional Services" Exclusion Endorsement (form CG 2116; NIAC-Policy 000056) states the endorsement only "modifies insurance provided under the following: Commercial General Liability Coverage Part." MSS 8 Western World agrees the "professional services" exclusion applies to the CGL Coverage Form CG0001. However, the "professional services" exclusion does not apply to the Liquor Liability Coverage Part (liquor liability coverage form CG0033) or the Improper Sexual Conduct Coverage Part (improper sexual conduct liability coverage form NIAC-ISCET). Those Coverage Parts have separate coverage declarations: (i) Commercial Liquor Liability Coverage Part Declarations, identifying the coverage part's $1 million limit of liability and the form comprising the coverage part: Form CG0033 (Liquor Liability Coverage Form); and (ii) Improper Sexual Conduct

Liability Coverage Part Declarations, identifying the coverage part's $250,000 limit of liability and the form comprising the coverage part: Form NIAC-ISCET (Improper Sexual Conduct Form). Neither the Liquor Liability nor the Improper Sexual Conduct Declarations' Coverage Part identifies the "professional services" exclusion form (Form CG2116) as part of those Coverage Parts.

The "Professional Services" Exclusion Endorsement states it modifies the "Commercial General Liability Coverage Part" by adding "professional services" exclusion to "Paragraph 2., Exclusions of Section I – Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B - Personal And Advertising Injury Liability." MSS 8.

The "professional services" exclusion does not apply beyond Coverage A and Coverage B of the Commercial General Liability Coverage Form (CG0001) where Coverage A and Coverage B insuring clauses are found, and where Coverage A and Coverage B exclusions are found.

Further, neither the Liquor Liability Coverage Form nor the Improper Sexual Conduct Liability Coverage Form are listed within the "Professional Services" Exclusion Endorsement. The Endorsement limits itself to adding the exclusion to Coverage A and Coverage B Exclusions that are only found within the Commercial General Liability Coverage Form (CG0001).

Also, the exclusionary provision to which the "Professional Services" Exclusion Endorsement attaches – namely, "Paragraph 2., Exclusions of Section I – Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B - Personal And Advertising Injury Liability", does not exist within the Liquor Liability Coverage Form (CG0033) or Improper Sexual Conduct Liability Coverage Form (NIAC-ISCET).

Instead, the Liquor Liability Coverage Form (CG0033) only contains a single Section I - Liquor Liability Coverage insuring clause which covers "injury" by reason of the selling, serving or furnishing of any alcoholic beverage were "injury" is defined as all damages, not just bodily injury or property damage, and including damages for care, loss of services or loss of support.

Similarly, the Improper Sexual Conduct Liability Coverage Form (NIAC-ISCET) only contains a single Section I - Bodily Injury Arising From "Improper Sexual Conduct" insuring clause which covers bodily injury arising from improper sexual conduct.

Western World believes the "Professional Services" Exclusion Endorsement is

unambiguously limited to the Commercial General Liability Coverage Form (CG0001). However, to the extent NIAC maintains the "Professional Services" Exclusion Endorsement applies to either the Liquor Liability Coverage Form or the Improper Sexual Conduct Liability Coverage Form, then the NIAC Policy is ambiguous on this point. Insurance policy exclusions are subject to "special" interpretive rules. *North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 642. Chief among these rules is it all exclusions must be "conspicuous, plain and clear;" otherwise they are "strictly construed" in favor of coverage. *EMMI Inc. v. Zurich American Ins. Co.*, 32 Cal. App. 4th for 65, 471 (2004). An exclusion fails to satisfy the standard unless it is phrased in language that is "clear and unmistakable." *Id.* at 471. Critically, the clarity of the exclusion is judged "as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Id.* at 471. Finally, to be enforceable, the insurer's interpretation of that exclusion must be the only one to which it is reasonably susceptible. *McKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 648 (2003). Therefore, even if an insurer advances a reasonable interpretation that bars recovery, the court must nevertheless find "coverage so long as there is any other reasonable interpretation under which recovery would be permitted." *Id.* The "professional services" exclusion does not state the exclusion applies to the Liquor Liability Coverage Form or Improper Sexual Conduct Liability Coverage Form and, therefore, by its terms the exclusion does not exclude "liquor liability" or "improper sexual conduct" coverage even if the liability arose from the rendering of professional services.

**2. The Injuries NNI Caused As Alleged In The <u>Desmond</u> and <u>Landmeier</u> Lawsuits Were Not Caused By "Professional Services"**

It is further clear the "professional services" exclusion does not apply to the <u>Desmond</u> and <u>Landmeier</u> Lawsuits because after-hours social interaction with staff, improper sexual relations with staff, and the staff's furnishing of alcoholic beverages to patients, are <u>not</u> the rendering of or failure to render professional services.

Activities not directly related to the performance of a specialized vocation or profession are not "professional services." *Bank of California v. Opie*, 663 F.2d 977 (9th Cir. 1981); see also *Food Pro International, Inc. v. Farms Ins. Exchange*, 169 Cal.app.4th 976, 987-989 (2008) [engineering

consultant's failure to prevent onsite bodily injury was ordinary negligence, not result of professional services]; *Colony Ins. Co. v. Fladseth*, U.S.D.C. Case No. C 12-1157 CW (N.D. Cal. 6/21/2013) [attorney's billing practices are not professional services].

NIAC liberally overreaches the limited application of the "professional services" exclusion because staff were not rendering professional services to Desmond or Landmeier during after-hours socializing which included improper sexual relations and improper furnishing of alcoholic beverages.

While the "professional services" exclusion applies to drug counseling and other professional services which were arguably part of the Desmond and Landmeier Lawsuits' claims, it does not extend to non-professional activities such as after-hours socializing, improper sexual relations and furnishing of alcoholic beverages by staff members. The "professional services" exclusion does not insulate coverage for ordinary "nonprofessional" negligence.

Professional services exclusions are interpreted narrowly against the insurer. *North Counties Engineering, Inc. v. State Farm General Ins. Co.*, 224 Cal.App.4th 902, 927 (2014), citing *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 808 (1982). Professional services exclusions do not apply where damages are based on conduct outside the scope of the typical services provided by that profession. *North Counties Engineering, supra*, 224 Cal.App. 4th at 930. A tenuous connection to professional services is insufficient to trigger the "professional services" exclusion. *Ambrosio v. Brit UW Limited*, 606 Fed.Appx. 885 (2015).

Where the professional's conduct has no relationship to the treatment, no professional service exists. Improper or abusive behavior by those providing treatment to patients is not a "professional service." *Marie Y. v. General Star Indem. Co.*, 110 Cal.Appl.4th 928 (2003). In *Marie Y*, a dentist sexually abused a sedated patient. The court concluded sexually abusing a sedated patient was not a professional service or professional incident (dentistry). Other courts agree that improper conduct including sexual misconduct does not fall within the scope of "professional services." See, e.g., *Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440 (Idaho App. 1984) [physician drugged and performed sexual acts on a patient]; *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d (Minn. 1984) [ physician sexually assaulted teen male patients]; *Standard Fire Ins. Co. v. Blakeslee*, 771 P.2d 1172 (Wash. App. 1989).

After-hours alcohol provided to Desmond at the staff's apartment on the night Desmond overdosed is not the rendering of a "professional service." Staff engaged in sexual misconduct and providing alcohol to Landmeier up to the day before she overdosed is not the rendering of a "professional service."[5] In common parlance, staff "partied" with patients at the staff's apartment after the counseling day ended and "partied" with Landmeier on unspecified occasions up to the time of her expulsion. After-hours "partying" with sex and alcohol fueled socializing is not a function of Narconon's professional services. The deviant behavior is neither a professional service nor an incident of a professional service.

*Tradewinds Escrow, Inc. v. Truck Ins. Exchange*, 97 Cal.App.4th 704 (2002) states "professional services" arise out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, which is predominantly mental or intellectual (escrow services). *Hollingsworth v. Commercial Union Ins. Co*., 208 Cal.App.3d 800 (1989) extends "professional services" to a botched a ear piercing service by a cosmetologist. *Amex Assurance Co. v. Allstate Ins. Co.*, 112 Cal.App.4th 1246 (2003), applied a "professional services" exclusion to a plumber's improper installation of a water heater reasoning plumbing requires skilled workmanship. If the escrow agent, cosmetologist or plumber brought the client to their apartment for an after-hours party where having sexual relations and furnishing of alcohol was a causative factor in the client's injury, nobody would contend the "professional services" exclusion applied.

Desmond and Landmeier were not injured by professional drug rehabilitation services. They were injured by non-professional conduct (sexual relations and furnishing alcohol) that was not part of Narconon's drug rehabilitation treatment, or occurred during treatment. The Desmond Lawsuit alleges the conduct occurred after-hours at a staff member's apartment, while the Landmeier Lawsuit is "silent" on the location and timing but the nature of the conduct (sexual relations and alcohol) indicates social misconduct, not professional treatment. Indeed, the act of sexual relations or

[5] NIAC's counsel recently attempted to apply a "professional services" exclusion in much the same manner as in Desmond. U.S. Magistrate Judge Maria-Elena James of the Northern District (the same District as the present action) rejected counsel's attempt to apply the "professional services" exclusion as a broad brush to eliminate coverage without a proper examination of the purported "professional services" at issue. *Atain Specialty Ins. Co. v. 20 Parkridge, LLC*, Northern District Case No. 15-cv-00212-MEJ, "Order Granting Motion to Stay and Denying Motion to Dismiss," Docket No. 13 (May 11, 2015).

furnishing alcohol does not require specialized knowledge, labor or skill which is predominantly mental or intellectual (California's definition of "professional services").

**G. The Narconon License Agreements Do Not Prevent Coverage Under The NIAC Policy**

For the Landmeier Lawsuit, NIAC has erroneously argued an indemnity provision in a trademark license agreement between NNI and NNO prevents equitable contribution. However, the trademark license's indemnity provision does not apply because (1) the Landmeier Lawsuit is not a trademark license claim, and (2) under California law, insurance policies' "other insurance" clauses control priority of coverage in equitable contribution claims, not extrinsic indemnity agreements between insureds.

NNI licensed NNO to use NNI's trademarks for its drug rehabilitation program. The license agreement only applies to liabilities arising out of the use of NNI's trademarks. Landmeier does not allege trademark violations, or that Landmeier's injury was caused by trademark infringements. Landmeier alleges NNI negligently controlled NNO's drug rehabilitation operations which allowed sexual misconduct, alcohol abuse and drug abuse to occur between Landmeier and staff. NNI's liability does not arise from NNO's misuse of the trademark, but rather from NNI's direct negligence in carelessly controlling NNO's operations.

In addition to the trademark indemnity agreement between NNI and NNO being irrelevant because the Landmeier Lawsuit does not seek liability for trademark violations, it is also irrelevant for the following additional reasons:

- There has been no determination of an obligation under indemnity agreement in the form of a judgment or settlement.
- There has been no finding that NNO is solely negligent.
- This equitable contribution action involves insurers, not parties to the indemnity agreement.
- The indemnity agreement is not an insured contract under Western World's policy.

NIAC previously suggested it believes the trademark indemnity provision establishes a "priority of coverage" defense making NIAC "excess" to the Western World policy, but this conclusion is based upon an erroneous confusion between "subrogation" and "equitable contribution" principles. NIAC's priority of coverage argument arises from NIAC's misreading of *Rossmoor*

*Sanitation, Inc. v. Pylon, Inc*., 13 Cal.3d 622 (1975) which is limited to a subrogation dispute between insurers standing in the shoes of their policyholders to insert their policyholders' rights against each other. As later cases made clear, *Rossmoor* is fact-dependent, limited the subrogation matters, and does not state a universal priority of coverage rule. *Maryland Casualty Co. v. Nationwide Mutual Ins. Co*., 81 Cal. App. 4th 1082, 1092 (2000) ["[*Rossmoor*] did not hold an indemnitee's policy will always be excess. The court instead made clear it was reaching its conclusion based on the particular circumstances of the case"]. Later cases clarified that an indemnity agreement between policyholders does not control priority of coverage in an equitable contribution action between insurers because the insurers are not parties to the indemnity agreement. *Travelers Casualty & Surety Co. v. American Equity Ins. Co*., 93 Cal. App. 4th 1142, 1157 (2001). *Travelers* held equitable contribution actions are "governed by general principles governing the interpretation and enforcement of 'other insurance" clauses between insurers." *Id.*

As to the Desmond Lawsuit, NIAC cannot assert a priority of coverage argument both for the analytical reasons discussed above and because NNI owes indemnity back to NNG under a separate Business Associate Agreement. MSS 30. NNG and NNI executed a License Agreement identical to the agreement in place between NNO and NNI. The Business Associate Agreement obligates NNI to provide quality assessment and administrative services to NNG, including assurance of compliance with state and federal law, and requires NNI to indemnify NNG for all liability arising from the agreement. *Id.* NNI therefore has no right to seek indemnity from NNG, and NIAC cannot assert priority of coverage based on indemnity agreements between the Narconon entities.

**H. Western World Is Entitled to Equitable Contribution From NIAC For Reimbursement of Defense Fees and Costs (Past And Future) For Defending NNI in Desmond And Landmeier Lawsuits**

Equitable contribution under California law applies where insurers share the same level of liability on the same risk as to the same insured. *Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal. App. 4th 1082, 1089 (2000). Overlapping, mutually conflicting "other insurance" clauses result in the sharing of the obligation on a pro rata basis in proportion to the respective coverage of the risk. *Fireman's Fund Ins. Co. v. Maryland Cas Co*., 65 Cal. App. 4th 1279, 1293 (1998); *Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1080 (2002). Because the purpose of equitable

contribution is to accomplish substantial justice, the court has broad discretion to determine which method of allocation will most equitably distribute the loss among insurers, and no single allocation method is preferred. *Scottsdale Ins. Co. v. Century Surety Co.*, 182 Cal. App. 4th 1023, 1032 (2010).

Initially, Western World defended NNI in Desmond and Landmeier through counsel that jointly defended NNI and the local Narconon entity (either NNO or NNG). Later, different law firms separately defended NNI and the local Narconon entity. Western World is only entitled to equitable contribution from NIAC for reimbursement for the defense of NNI. For the initial joint defense, Western World allocates the defense 50-50 between the Narconon entities, meaning the portion attributed to NNI is 50%. After NNI received separate defense counsel, 100% of those defense costs is attributed to NNI.

Desmond and Landmeier each involve a single occurrence. NIAC provides three stackable coverages ($1 million CGL including liquor liability and $1 million standalone liquor liability, plus $250,000 standalone sexual misconduct in Landmeier) for total limits of $2.25 million ($2 million for Desmond, which does not involve sexual misconduct coverage), while Western World's anti-stacking endorsement limits Western World's coverage to a single per-occurrence limit of $1 million.

NIAC and Western World policies contain identical other insurance clauses requiring equitable pro-ration as a matter of law. MSS 9, 18, 57. *Dart Industries*, *supra.* In view of California's policy to accomplish substantial justice through equitable contribution, the equitable allocation of separately appointed defense counsel's fees is a pro-rata based on limits allocation (66/33 for Desmond, 70/30 for Landmeier) between Western World and NIAC.

For Desmond, NIAC has $2 million coverage (sexual misconduct coverage does not apply) and Western World has $1 million coverage, establishing an allocation of 66.6/33.3 between NIAC (2/3) and Western World (1/3). For the Landmeier Lawsuit, NIAC's CGL, Improper Sexual Conduct Coverage Part and Liquor Liability Coverage Part all apply for total limits of $2.25 million. The "per limits" allocation between NIAC and Western World is 70/30 calculated as NIAC (2.25/3.25).

Because defense fees and costs are a liquidated sum, Western World is entitled to recover prejudgment interest on defense fees/costs it paid at the legal rate of 10% per annum. Civil Code §§3287 and 3289(b); *Chase v. National Indem. Co.*, 129 Cal.App.2d 853 (1954).

Western World's claim for reimbursement of past defense fees/costs is as follows (figures rounded):[6]

| *Underlying Lawsuit* | *Payee* | *WW Payments* | *Allocation Factor* | *NIAC Allocation* |
|---|---|---|---|---|
| *Desmond* | Joint Defense Counsel (Drew Eckl) | $319,000 | 33% | $105,200 |
| | Costs: 3rd party vendors retained by Drew Eckl | $28,000 | 33% | $9,200 |
| | Narconon International counsel (Carlock) | $478,000 | 66% | $315,400 |
| | Costs: 3rd party vendors retained by Carlock | $58,000 | 66% | $38,200 |
| | Subtotal | | | $468,000 |
| | Interest (10%) | | | $152,600 |
| | *Desmond* Subtotal | | | $620,600 |
| *Landmeier* | Joint Defense Counsel (Noland) | $54,000 | 35% | $18,900 |
| | Costs: 3rd party vendors retained by Noland | $6,600 | 35% | $2,300 |
| | Narconon International counsel (Best & Sharp) | $53,000 | 70% | $37,100 |
| | Costs: 3rd party vendors retained by Best & Sharp | $3,000 | 70% | $2,100 |
| | Subtotal | | | $60,400 |
| | Interest (10%) | | | $12,500 |
| | *Landmeier* Subtotal | | | $72,900 |
| | Total | | | **$693,500** |

MSS 64-67, 71-74.

## IV. CONCLUSION

In the Desmond and Landmeier Lawsuits, NIAC erroneously refused to defend its named insured NNI even though a potential for coverage existed under its policy's CGL Coverage Part, Liquor Liability Coverage Part, and Improper Sexual Conduct Coverage Part (for Landmeier only). Having wrongly refused to defend, NIAC owes an equitable reimbursement to Western World for past, present and future defense fees/costs of NNI. Desmond is settled, Landmeier is ongoing. Western World requests allocation by limits reflecting an apportionment allowed by the Western World and NIAC Policies, and the greater exposure faced by NIAC due to its Policy's stackable

[6] Western World's claim for reimbursement of future defense fees/costs to defend NNI in the ongoing Landmeier Lawsuit seeks a judicial declaration of the equitable percentage share owed by NIAC to Western World for the continuing and future defense fees/costs which Western World requests be made on the same allocation this Court imposes for the previously-incurred defense fees/costs.

limits. NIAC's "professional services" exclusion does not apply to the Liquor Liability Coverage Part or Improper Sexual Conduct Coverage Part. As to the CGL Coverage Part, the "professional services" exclusion does not exclude coverage for the concurrent non-professional ordinary negligence claims including, but not limited to, the additional liquor liability coverage provided by the CGL Coverage Part, and NNI's ordinary negligence in the formulation, control, and direction of drug treatment, and NNI's negligent supervision vicarious liability for the ordinary negligence of its subsidiary entities NNG and NNO which allowed staff to have sexual relations, and furnish alcohol and drugs to patients during after-hours socializing (and potentially during treatment hours).

NIAC erroneously failed to fulfill its duty to defend by failing to investigate all the circumstances presented by the Desmond and Landmeier Lawsuits, failing to conduct a diligent inquiry into facts and circumstances supporting covered claims, ignoring factual allegations in the pleadings which supported covered claims, and failing to reconsider and accept its duty to defend when information was presented to it supporting covered claims. NIAC wrongly concluded the Desmond and Landmeier Lawsuits were limited to "professional services" claims even though a cursory review showed the lawsuits' factual allegations asserted non-professional ordinary negligence claims against NNI, and additional ordinary negligence claims for liquor liability and improper sexual conduct which are specifically covered by the NIAC policy. When the factual allegations are compared to the NIAC Policy, potentially covered claims exist triggering a duty to defend. Western World respectfully requests entry of summary judgment in its favor and the award of relief requested in this Motion for Summary Judgment. For the reasons stated herein, Western World respectfully requests entry of summary judgment in its favor.

Dated: December 11, 2015

SELVIN WRAITH HALMAN LLP

By: /s/ David A. Evans
James L. Wraith
David A. Evans
Attorneys for Plaintiff/Counter-Defendant
Western World Insurance Company

186095

| | |
|---|---|
| **Re:** | **Western World Insurance Company v. Nonprofits Insurance Alliance of California** |
| **Court:** | **United States District Court, Northern District of California - San Jose Division** |
| **Action No.** | **5:14-cv-04466-EJD** |

## PROOF OF SERVICE

I declare that I am over the age of 18, am not a party to the above-entitled action, and am an employee of Selvin Wraith Halman LLP whose business address is 505 14th Street, Suite 1200, Oakland, Alameda County, California 94612.

On December 11, 2015, I served the following document(s):

**WESTERN WORLD INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES;**

**MOVING SEPARATE STATEMENT IN SUPPORT OF WESTERN WORLD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT;**

**STIPULATION RE DAMAGES;**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF WESTERN WORLD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT;**

**DECLARATION OF DAVID A. EVANS IN SUPPORT OF WESTERN WORLD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT;**

**[PROPOSED] ORDER GRANTING WESTERN WORLD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**By ELECTRONIC FILE TRANSFER TO ECF FILE & SERVE:** By transmitting a true copy the document(s) listed above for service on all parties in this case pursuant to applicable statutes, local rules and/or order of this Court.

Ms. GailAnn Y. Stargardter
Archer Norris
2033 North Main Street, Suite 800
Walnut Creek, CA 94596
Telephone No.: (925) 930-6600
Fax No.: (925) 930-6620
Email: gstargardter@archernorris.com

Attorneys for Defendant and Counterclaimant:
NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 11, 2015

Laura L. Sanchez