James L. Wraith, State Bar No. 112234
David A. Evans, State Bar No. 181854
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone: (510) 874-1811
Facsimile: (510) 465-8976
E-mail: jwraith@selvinwraith.com
devans@selvinwraith.com

Attorneys for Plaintiff/Counter-Defendant
Western World Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA, a California corporation; and DOES 1 through 10,<br><br>Defendants.<br>___<br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,<br><br>Counterclaimant,<br><br>v.<br><br>WESTERN WORLD INSURANCE COMPANY,<br><br>Counter-Defendant | CASE NO.: 5:14-cv-04466-EJD<br><br>**MOVING SEPARATE STATEMENT IN SUPPORT OF WESTERN WORLD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 25, 2016<br>Time: 9:00 a.m.<br>Ctrm.: 4<br>Judge: Judge Edward J. Davila<br><br>Trial Date: April 25, 2016<br>Complaint Filed: October 6, 2014 |

Plaintiff/Counter-Defendant Western World Insurance Company hereby submits its Moving Separate Statement in support of its Motion for Summary Judgment pursuant to the Court's Standing Order for Civil Cases, Section IV.B.1.

///

///

| **Claim or Defense** | **Moving Party's Undisputed Facts/Supporting Evidence** | **Opposing Party's Response/Supporting Evidence** |
|---|---|---|
| 1st Cause of Action: Declaratory Relief (Landmeier); 2nd Cause of Action: Declaratory Relief (Desmond) | | |
| 1. NIAC owed duty to defend NNI | 1. NIAC issued Policy No. 2007-1800-NPO to Narconon International ("NNI").<br><br>Evans Decl. ¶5 and attached Ex. C/F (NIAC Policy No. 2007-1800-NPO ("NIAC Policy") [NIAC-POLICY-000001-75]) | |
| | 2. NIAC is a liability risk pool organized under California law that insures only California nonprofit entities.<br><br>Evans Decl. ¶4; Ex. C (NIAC Policy) [NIAC-POLICY-000001, 32]); NIAC Answer, ¶ 2 (Request for Judicial Notice, ¶2) | |
| | 3. The NIAC Policy is a combined Commercial General Liability (CGL), Improper Sexual Conduct (ISC) and Commercial Liquor Liability (LL) policy in which each coverage is a separate, stand-alone coverage part.<br><br>Evans Decl. ¶16; Ex. C(NIAC Policy) [NIAC-POLICY-000001, 8]) | |
| | 4. The NIAC policy includes a CGL coverage part with $1 million per occurrence limit and $2 million aggregate limit.<br><br>Evans Decl. ¶17; Ex. C (NIAC Policy [NIAC-POLICY-000009]) | |
| | 5. The insuring provision of the NIAC CGL coverage part provides:<br><br>We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. … This insurance applies to "bodily injury" and "property damage" only if … the "bodily injury' or "property damage" is caused by an | |

| | | |
|---|---|---|
| | "occurrence"<br><br>Evans Decl. ¶18; Ex. C (NIAC Policy [NIAC-POLICY-000017]) | |
| | 6. The NIAC CGL coverage part excludes coverage for "bodily injury" or "property damage" by reason of causing or contributing to the intoxication of any person, but the exclusion applies only when the insured is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.<br><br>Evans Decl. ¶20; Ex. C (NIAC Policy [NIAC-POLICY-000018]) | |
| | 7. The NIAC CGL coverage part is the only coverage part in which coverage is triggered by an "occurrence."<br><br>Evans Decl. ¶19; Ex. C (NIAC Policy [NIAC-POLICY-000017, 45, 69]) | |
| | 8. The NIAC CGL coverage part includes a "professional services" exclusion which provides in pertinent part:<br><br>This endorsement modifies insurance provided under the following:<br><br>COMMERCIAL GENERAL LIABILITY COVERAGE PART<br><br>SCHEDULE<br><br>Description Of Professional Services:<br>1. Any and all professional services<br><br>***<br>With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:<br><br>This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. | |

| | | |
|---|---|---|
| | Evans Decl. ¶22; Ex. C (NIAC Policy [NIAC-POLICY-000056]) | |
| | 9. The NIAC CGL coverage part includes an "other insurance" provision which provides that if other insurance is also primary, NIAC will contribute by equal shares if all other insurance allows the same method, or contribute by limits otherwise.<br><br>Evans Decl. ¶21; Ex. C (NIAC Policy [NIAC-POLICY-000025-26]) | |
| | 10. NIAC policy includes Improper Sexual Conduct (ISC) Liability coverage part with $250,000 defense within limits under policy form NIAC-ISCE/07 06.<br><br>Evans Decl. ¶23, 24; Ex. C (NIAC Policy [NIAC-POLICY-000012]) | |
| | 11. The insuring provision of the NIAC ISC coverage part provides in pertinent part:<br><br>We will pay those sums that the insured becomes legally obligated to pay as monetary damages because of "bodily injury" arising from "improper sexual conduct."<br><br>Evans Decl. ¶ 25; Ex. C (NIAC Policy [NIAC-POLICY-000069]) | |
| | 12. The NIAC ISC coverage part defines "improper sexual conduct" to mean "actual, attempted, or alleged unlawful sexual conduct by one person or two or more persons acting in concert as prohibited by federal or state law."<br><br>Evans Decl. ¶26; Ex. C (NIAC Policy [NIAC-POLICY-000074]) | |
| | 13. The NIAC ISC coverage part includes an "other insurance" provision which provides the ISC coverage is excess over other insurance "that is written on a claims-made basis."<br><br>Evans Decl. ¶27; Ex. C (NIAC Policy [NIAC-POLICY-000072]) | |
| | 14. NIAC admits Western World's policies were not issued on a "claims-made" basis. | |

| | | |
|---|---|---|
| | Evans Decl. ¶15; Ex. G (NIAC Responses to Requests for Admissions [WW001973, 1975-76; NIAC Answer, 16:20-21 (RJN ¶2) | |
| | 15. NIAC policy includes Liquor Liability (LL) coverage part with $1 million per occurrence limit under policy form CG0033/01 96.<br><br>Evans Decl. ¶28, 29; Ex. C (NIAC Policy [NIAC-POLICY-000013]) | |
| | 16. The insuring provision of the NIAC LL coverage part provides in pertinent part:<br><br>We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages.<br><br>Evans Decl. ¶30; Ex. C (NIAC Policy [NIAC-POLICY-000045]) | |
| | 17. The NIAC LL coverage part defines "injury" to mean "all damages, including damages because of 'bodily injury' and 'property damage', and including damages for care, loss of services or loss of support."<br><br>Evans Decl. ¶31; Ex. C (NIAC Policy [NIAC-POLICY-000045]) | |
| | 18. The NIAC LL coverage part includes an "other insurance" which provides that if other insurance is also primary, NIAC will contribute by equal shares if all other insurance allows the same method, or contribute by limits otherwise.<br><br>Evans Decl. ¶32; Ex. C (NIAC Policy [NIAC-POLICY-000048]) | |
| | 19. The NIAC LL coverage part includes the following exclusions:<br><br>d. Liquor License Not in Effect "Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is suspended or after such license expires, is | |

| | | |
|---|---|---|
| | canceled or revoked.<br><br>f. Other Insurance<br>Any "injury" with respect to which other insurance is afforded, or would be afforded, but for the exhaustion of the limits of insurance.<br>This exclusion does not apply if the other insurance response to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.<br><br>Evans Decl. ¶33, 34; Ex. C (NIAC Policy [NIAC-POLICY-000045-46]) | |
| 2. The underlying Desmond Action triggers coverage under the NIAC policy | 20. Desmond's family filed a lawsuit against NNG and NNI on May 18, 2010 captioned *Desmond v. Narconon of Georgia, Inc. et al.*, Dekalb County, Georgia, Case No. 10A28641-2, alleging causes of action against NNG and NNI for negligence, negligence per se, fraud civil conspiracy, and punitive damages.<br><br>Evans Decl. ¶35; Ex. H (Desmond Complaint [WW000208-228]) | |
| | 21. Desmond filed a First Amended Complaint on March 22, 2012, alleging causes of action against NNG and NNI for negligence, negligence per se, fraud civil conspiracy, civil RICO and punitive damages.<br><br>Evans Decl. ¶35; Ex. I (Desmond FAC [WW000265-300]) | |
| | 22. NNG was a drug and alcohol rehabilitation facility located in Georgia and operating under license from NNI.<br><br>Evans Decl. ¶ 38 Ex. H (Desmond Complaint, ¶¶3, 4 [WW000211]), Ex. I (Desmond FAC, ¶¶3,4 [WW000266]) | |
| | 23. NNI licensed NNG to use NNI's trademarks, service marks and design marks "in connection with services in the field of drug rehabilitations and education, and on and in connection with approved products that are related to the services.<br><br>Evans Decl. ¶39; Ex. J (License Agreement [WW001883]) | |

| | | |
|---|---|---|
| | 24. Under a Business Associate Agreement, NNI agreed to provide quality assessment and administrative services to NNG, and to indemnify NNG for liability arising from the agreement.<br>Evans Decl. ¶40; Ex. K (Business Associate Agreement [WW001888, 1890]) | |
| | 25. Patrick Desmond was a patient at NNG.<br><br>Evans Decl. ¶41; Ex. H (Desmond Complaint, ¶27 [WW000217]), Ex. I (Desmond FAC, ¶57 [WW000275]) | |
| | 26. On June 10, 2008, Desmond spent an evening drinking beer and vodka and watching sports on television with an NNG staff member.<br><br>Evans Decl. ¶42; Ex. H (Desmond Complaint, ¶30 [WW000218]), Ex. I (Desmond FAC, ¶61 [WW000276]), Deposition of Bradley Taylor, 86:15-87:25 [WW001958-59] | |
| | 27. Desmond left after receiving a telephone call from former NNG patients inviting him to purchase heroin.<br><br>Evans Decl. ¶43; Ex. H (Desmond Complaint, ¶31 [WW000218]), Ex. I (Desmond FAC, ¶62 [WW000276]), Deposition of Bradley Taylor, 90:4-94:3 [WW001962-65] | |
| | 28. Desmond died later that night from a heroin overdose.<br><br>Evans Decl. ¶44; Ex. H (Desmond Complaint, ¶33 [WW000219]), Ex. I (Desmond FAC, ¶64 [WW000276]) | |
| 3. The underlying Landmeier Action triggers coverage under the NIAC policy. | 29. Landmeier and her family filed a lawsuit against NNO and NNI on March 2, 2010 captioned *Landmeier v. Narconon of Oklahoma, Inc.*, District Court of Pittsburg County, Oklahoma, Case No. CJ-2010-57, alleging causes of action for negligence, negligence per se, breach of contract, violation of the Oklahoma consumer protection act, intentional infliction of emotional distress and punitive damages.<br><br>Evans Decl. ¶45, 46; Ex. M | |

| | | |
|---|---|---|
| | (Landmeier Complaint [WW000202-207]) | |
| | 30. NNO is a drug and alcohol rehabilitation facility located in Oklahoma and operating under license from NNI.<br><br>Evans Decl. ¶47; Ex. M (Landmeier Complaint, ¶11 [WW000203]) | |
| | 31. NNI licensed NNO to use NNI's trademarks, service marks and design marks "in connection with services in the field of drug rehabilitations and education, and on and in connection with approved products that are related to the services.<br><br>Evans Decl. ¶48; Ex. N (License Agreement [NIAC-CF-L-000359]) | |
| | 32. Under the License Agreement, NNO agreed to indemnify NNI for claims arising from or relating to the use of the licensed marks.<br><br>Evans Decl. ¶49; Ex. N (License Agreement, ¶8 [NIAC-CF-L-000361]) | |
| | 33. Heather Landmeier was a patient at NNO because of her addiction to heroin.<br><br>Evans Decl. ¶50; Ex. M (Landmeier Complaint, ¶¶5, 12-15 [WW000203-204]) | |
| | 34. Landmeier alleges NNO employees provided drugs and alcohol to her and engaged in sexual conduct with her.<br><br>Evans Decl. ¶51; Ex. M (Landmeier Complaint, ¶16 [WW000204]) | |
| | 35. NNO expelled Landmeier on March 4, 2008 due to her continued addiction to heroin and oxycontin.<br><br>Evans Decl. ¶52; Ex. M (Landmeier Complaint, ¶17 [WW000204]) | |
| | 36. Landmeier overdosed on heroin and oxycontin on March 5, 2008, leaving her in a vegetative state.<br><br>Evans Decl. ¶53; Ex. M (Landmeier Complaint, ¶18 [WW000204]) | |
| 4. NIAC wrongfully denied coverage for the Desmond Action | 37. NIAC denied coverage for the Desmond Action on June 21, 2010 on the basis that the "professional | |

| | | |
|---|---|---|
| | services" exclusion applied and because the Desmond Complaint did not allege an "occurrence."<br><br>Evans Decl. ¶54, 55; Ex. O (Letter from Vicky Campbell (NIAC) to Phil Hart (NNI) [NIAC-CF-D-000956-960] | |
| | 38. NIAC concluded all allegations of the Desmond Action pertained to improper providing of professional drug and alcohol rehabilitation services.<br><br>Evans Decl. ¶56; Ex. P (Letter from Rand Chritton to Vicki Campbell dated June 7, 2010 [NIAC-CF-D-000956-960] | |
| | 39. NIAC reaffirmed its denial of coverage on the same grounds on October 27, 2010 following NNI's request for reconsideration.<br><br>Evans Decl. ¶57; Ex. Q (Letter from Rand Chritton to Gary Soter) [NIAC-CF-D-001103-1107] | |
| | 40. NIAC reaffirmed its denial of coverage on the same grounds on May 11, 2012 in response to Western World's tender of the FAC.<br><br>Evans Decl. ¶58; Ex. R (Letter from Rand Chritton to Clay Porter) [NIAC-CF-D-001059-1061] | |
| | 41. NIAC reaffirmed its denial of coverage on the same grounds on November 8, 2012 following NNI's request for reconsideration.<br><br>Evans Decl. ¶59; Ex. S (Letter from Chritton to Soter) [NIAC-CF-D-000559-560] | |
| | 42. NIAC reaffirmed its denial of coverage on the same grounds again on January 30, 2013 in response to NNI's objections to NIAC's denial of coverage.<br><br>Evans Decl. ¶60; Ex. T (Letter from Chritton to Soter) [NIAC-CF-D-000564-571] | |
| | 43. In opposition to a motion for summary judgment filed by NNI in the Desmond Action contending there was no evidence of negligence by NNI, the Desmond plaintiffs filed an opposition | |

| | | |
|---|---|---|
| | identifying multiple allegations asserting claims of negligence against NNI.<br><br>Evans Decl. ¶62; Desmond MSJ Brief (RJN, ¶3) | |
| | 44. The court in the Desmond Action denied NNI's motion for summary judgment as to the question of negligence, ruling that the Desmond Action alleged the possibility of negligence claims against NNI.<br><br>Evans Decl. ¶63-67; Desmond MSJ Order (RJN, ¶4) | |
| 5. NIAC wrongfully denied coverage for the Landmeier Action | 45. NIAC accepted the defense of NNI on March 16, 2010 under its ISC coverage part, while asserting its "professional services" exclusion excluded coverage under its CGL coverage part.<br><br>Evans Decl. ¶68; Ex. U (Letter from Vicky Campbell (NIAC) to Phil Hart (NNI)) [NIAC-CF-L-000309-314] | |
| | 46. NIAC reaffirmed its acceptance of the defense on July 13, 2010.<br><br>Evans Decl. ¶69; Ex. V (Email from Campbell to Hart) [NIAC-CF-L-000300-301] | |
| | 47. NIAC agreed on July 21, 2010 to share in defense of NNI with Western World through the law firm of Noland, Pettigrew & Bruce.<br><br>Evans Decl. ¶70; Ex. W (Email from Campbell to O'Malley [NIAC-CF-L-000379-380] | |
| | 48. NIAC denied coverage on January 29, 2013, asserting its policy was excess to Western World's policy in part because of an "other insurance" clause in NIAC's ISC coverage part provided NIAC's policy was excess to other coverage provided on a "claims-made" basis.<br><br>Evans Decl. ¶71; Ex. X (Email from Aarti Kaushal (NIAC) to Rick Hazard (WW)[NIAC-CF-L-000070] | |
| | 49. NIAC reaffirmed its denial of coverage to Western World's counsel on July 23, 2013. | |

| | | |
|---|---|---|
| | Evans Decl. ¶72; Ex. Y (Email from Rand Chritton to Gerard Pignato [NIAC-CF-L-00013-20] | |
| 6. NIAC is obligated to contribute with Western World to the defense of NNI | 50. Western World issued policy no. NNP1123556, effective August 19, 2007 to August 19, 2008, to Narconon of Georgia (NNG").<br><br>Evans Decl. ¶2; Ex. A/D (Western World policy no. NPP1123556 ("NNG Policy") [WW00067-119]) | |
| | 51. The NNG Policy includes Commercial General Liability coverage (CGL) part with $1 million per occurrence limit and $2 million aggregate limit.<br><br>Evans Decl. ¶6; Ex. A (NNG Policy [WW000076]) | |
| | 52. Western World issued policy no. NPP0958680, effective June 25, 2007 to June 25, 2008, to Narconon of Oklahoma dba Narconon Arrowhead ("NNO").<br><br>Evans Decl. ¶3; Ex. B/E (Western World policy no NPP0958680 ("NNO Policy") [WW00001-55]) | |
| | 53. The NNO Policy includes Commercial General Liability coverage (CGL) part with $1 million per occurrence limit and $3 million aggregate limit.<br><br>Evans Decl. ¶7; Ex. B (NNO Policy [WW000005]) | |
| | 54. NNI is an additional insured under both the NNG and NNO policies, but only to the extent NNI "is being held responsible for the acts, omissions and/or negligence of the 'named insured.'… This insurance afforded shall not apply to claims, suits and/or damages arising out of the acts, omissions and/or negligence of the 'additional insured(s).'"<br><br>Evans Decl. ¶14; Ex. A, B (NNG Policy and NNO Policy) [WW000091, 25]) | |
| | 55. The insuring provision of the NNG and NNO policies provides:<br><br>We will pay those sums that the insured becomes legally obligated to pay as | |

| | | |
|---|---|---|
| | damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. … This insurance applies to "bodily injury" and "property damage" only if … the "bodily injury' or "property damage" is caused by an "occurrence"<br><br>Evans Decl. ¶8; Ex. A, B (NNG Policy and NNO Policy [WW000108, 44) | |
| | 56. Under the Contractual Liability Limitation, both the NNG and NNO policies eliminate the contractual assumption of tort liability for another (subparagraph f) from the definition of an "insured contract."<br><br>Evans Decl. ¶9; Ex. A, B (NNG Policy and NNO Policy [WW00095, 29) | |
| | 57. The NNG and NNO policies include an "other insurance" provision which provides that if other insurance is also primary, Western World will contribute by equal shares if all other insurance allows the same method, or contribute by limits otherwise.<br><br>Evans Decl. ¶10; Ex. A, B (NNG Policy and NNO Policy [WW000115-116, 51-52) | |
| | 58. The NNO Policy includes Sexual Molestation Insurance coverage with $300,000 limits per claim and in the aggregate.<br><br>Evans Decl. ¶ 11, Ex. B (NNO Policy [WW000015]) | |
| | 59. The insuring provision of the NNO Policy's Sexual Molestation Insurance provides in pertinent part:<br><br>We will pay those sums that the insured becomes legally obligated to pay as monetary damages because of "molestation" to which this insurance applies.<br><br>Evans Decl. ¶11; Ex. B (NNO Policy [WW000015]) | |
| | 60. The NNO Policy Sexual Molestation Insurance coverage excludes liability of others assumed by | |

| | | |
|---|---|---|
| | the insured under any contract.<br><br>Evans Decl. ¶12; Ex. B (NNO Policy [WW000015]) | |
| | 61. The NNG Policy and NNO Policy include a "maximum limit of liability" endorsement that limits coverage to the highest applicable limit of all coverages for any "occurrence" or "professional incident."<br><br>Evans Decl. ¶13; Ex. A, B_(NNG Policy and NNO Policy [WW000097, 31]) | |
| | 62. Western World defended NNI and NNG in the Desmond Action.<br><br>Stipulation re Amount of Defense Fees and Costs Incurred, filed herewith ("Stipulation re Defense Costs"), ¶2 | |
| | 63. Western World defended NNI and NNO in the Landmeier Action<br><br>Stipulation re Defense Costs Incurred, filed herewith, ¶2 | |
| 3rd Cause of Action: Equitable Contribution (Landmeier); 4th Cause of Action: Equitable Contribution (Desmond) | | |
| 1. NIAC owed a duty to defend NNI | See MSS Nos. 1-36, above | |
| 2. NIAC wrongfully refused to defend NNI in the Desmond and Landmeier Lawsuits | See MSS Nos. 36-44, 44-49, above | |
| 3. Western World defended NNI in both the Landmeier and Desmond Lawsuits | See MSS Nos. 50-63, above | |
| 4. NIAC is obligated to contribute with Western World to the defense of NNI | | |
| | 64. Western World paid $319,017.41 to the law firm of Drew, Eckl & Farnham, LLP to defend NNI and NNG jointly in the Desmond Action.<br><br>Evans Decl. ¶74; Stipulation re Defense Costs, ¶9 | |
| | 67. Western World paid $27,430.24 to third party vendors retained by the Drew Eckl firm to defend NNI in the Desmond Action. | |

| | | |
|---|---|---|
| | Evans Decl. ¶75; Stipulation re Defense Costs, ¶9 | |
| | 68. Western World paid $478,078.86 to the law firm of Carlock, Copeland & Stair, LLP, independent counsel retained to defend NNI in the Desmond Action.<br><br>Evans Decl. ¶76; Stipulation re Defense Costs, ¶9 | |
| | 69. Western World paid $58,159.44 to third party vendors retained by the Carlock firm to defend NNI in the Desmond Action.<br><br>Evans Decl. ¶77; Stipulation re Defense Costs, ¶9 | |
| | 70. NIAC did not contribute to the defense provided by Western World to NNI in the Desmond Action.<br><br>Evans Decl. ¶61; Ex. G, NIAC Responses to Requests for Admissions, 11:18-22 (WW001974) | |
| | 71. Western World has paid $53,748.89 to date to the law firm of Noland, Pettigrew & Lewis, P.C. to defend NNI and NNO jointly in the Landmeier Action.<br><br>Evans Decl. ¶78; Stipulation re Defense Costs, ¶9 | |
| | 72. Western World paid $6,601.93 to third party vendors retained by the Noland firm to defend NNI in the Landmeier Action.<br><br>Evans Decl. ¶79; Stipulation re Defense Costs, ¶9 | |
| | 73. Western World paid $53,216.66 to date to the law firm of Best & Sharp, independent counsel retained to defend NNI in the Landmeier Action.<br><br>Evans Decl. ¶80; Stipulation re Defense Costs, ¶9 | |
| | 74. Western World paid $3,263.16 to date to third party vendors retained by the Best & Sharp firm to defend NNI in the Landmeier Action.<br><br>Evans Decl. ¶81; Stipulation re Defense Costs, ¶9 | |
| | 75. NIAC did not contribute to the | |

| | | |
|---|---|---|
| | defense provided by Western World to NNI in the Landmeier Action<br><br>Evans Decl. ¶73; Ex. X, Y; NIAC Answer, 16:14-16 (RJN, ¶2) | |

I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.

Dated: December 11, 2015

SELVIN WRAITH HALMAN LLP

By: /s/ David A. Evans
James L. Wraith
David A. Evans
Attorneys for Plaintiff/Counter-Defendant
Western World Insurance Company

184064