GailAnn Y. Stargardter (Bar No. 250749)
gstargardter@archernorris.com
Andrew J. King (Bar No. 253962)
aking@archernorris.com
ARCHER NORRIS
2033 North Main Street, Suite 800
Walnut Creek, CA
Telephone: 925-930-6600
Facsimile: 925-930-6620

Attorneys for Defendant
NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,<br><br>Defendant.<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,<br><br>Counterclaimant,<br><br>v.<br><br>WESTERN WORLD INSURANCE COMPANY,<br><br>Counter-Defendant | Case No. 5:14-CV-04466—EJD<br><br>**DEFENDANT/COUNTERCLAIMANT NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO WESTERN WORLD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[FED.R.CIV.P. 56]**<br><br>Date: February 25, 2016<br>Time: 9:00 a.m.<br>Dept. Courtroom 4—5th Floor<br>Judge: Hon. Edward J. Davila |

# Table of Contents


Page

**I. INTRODUCTION** ........ 1

**II. STATEMENT OF UNDISPUTED MATERIAL FACTS** ........ 5

A. NIAC is a risk pool, not a standard insurance company ........ 5

B. The relationship between NNI, NNO and NNG. ........ 5

C. The NIAC Policy. ........ 6

D. The WWIC Policies. ........ 6

E. The *Landmeier* Action. ........ 7

F. The Desmond Action. ........ 8

**III. ARGUMENT** ........ 11

A. Summary judgment is appropriate when the interpretation of the NIAC Policy and the WWIC Policies present questions of law for the Court. ........ 11

B. NIAC's duty to defend, while broad, is not unlimited and its duty to defend is not triggered by random facts asserted in the Pleadings that do not result for claims for damages against its insured. ........ 12

C. NIAC has no duty to defend the Desmond Action because the only claims asserted against NNI are for Fraud, Civil Rico and for Punitive Damages based upon NNI's fraudulent conduct and Civil Rico violation—neither of which are an "occurrence" within the meaning of a liability policy. ........ 14

D. The Designated Professional Services Endorsement in the NIAC Policy removes all potential for coverage for the claims asserted against NNI in the *Landmeier* and *Desmond* Actions under the CGL Coverage Form. ........ 16

1. Drug and alcohol rehabilitation services are "professional services" as that term is defined by California courts. ........ 17

2. Landmeier's and Desmond's injuries relate to and arise out of NNI's rendering or failure to render the professional services it was hired to perform. ........ 19

E. The Liquor Liability Coverage Form does not provide any coverage for the claims asserted against NNI in the Landmeier or Desmond Actions. ........ 20

## Table of Contents

(Continued)

Page

1. The Landmeier and Desmond Actions do not seek to impose liability against NNI as a result of the furnishing of alcohol to Landmeier or Desmond........21

2. NNI is not in the business of furnishing or serving alcohol, thus the LLC Coverage Form does not apply........21

3. Exclusion 2.d. precludes coverage, as a matter of law........23

4. Exclusion 2. f. precludes coverage, as a matter of law........23

F. The Claims asserted against NNI in the Landmeier Action do not fall within the Improper Sexual Conduct Liability Coverage Form insuring agreement........24

**IV. CONCLUSION**........25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adickes v. S.H. Kress & Co.*
398 U.S. 144 90 S. Ct. 1598 (1970) ........ 12

*Allstate Ins. Co. v. Hansten*
765 F.Supp. 614 (N.D. Cal. 1991) ........ 15

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986) ........ 12

*Antles v. Aetna Cas. & Sur. Co.*
221 Cal.App.2d 438 (1963) ........ 19

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*
352 F.Supp.2d 1119 (C.D.Cal. 2005) ........ 12

*Begun v. Scottsdale Ins. Co.*,
No. C-12-03649 EDL, slip op. (N.D. Cal., May 16, 2013), *aff'd*, 613 Fed.Appx. 643 (9th Cir. 2015) ........ 17

*California v. Campbell*
138 F.3d 772 (9th Cir. 1998) ........ 11

*Celotex Corp. v. Catrett*
477 U.S. 317, 106 S. Ct. 2548 (1986) ........ 12

*Centillium Communs., Inc. v. Atl. Mut. Ins. Co.*
528 F. Supp. 2d 940 (N.D. Cal. 2007) ........ 13

*Chatton v. Nat'l Union Fire Ins. Co.*
10 Cal.App.4th 846 (1992) ........ 15

*CNA Cas. of Cal. v. Seaboard Sur. Co.*
176 Cal.App.3d 598 (1986) ........ 13, 14

*Collin v. Am. Empire Ins. Co.*
21 Cal. App.4th 787 (1994) ........ 15

*Davis v. Farmers Ins. Group*
134 Cal.App.4th 100 (2005) ........ 24

*Delgado v. Interinsurance Exch. of Auto. Club of So. Cal.*
47 Cal.4th 302 (2009) ........ 15

*Dynamic Concepts v. Truck Ins. Exch.*
61 Cal.App.4th 999 (1998) ........ 16

*Employers Ins. v. Musick Peeler & Garrett*
871 F.Supp 381 (S.D. Cal. 1994) ........ 15

**TABLE OF AUTHORITIES**
(Continued)

Page

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*,
16 Cal.App.4th 492 (1993) ..... 15

*Fire Ins. Exch. v. Abbott*
204 Cal.App.3d 1012 (1988) ..... 13

*Fireman's Fund Ins. Co. v. Nat' Bank for Coops.*
849 F. Supp. 1347 (N.D. Cal. 1994) ..... 17

*Food Pro Int'l v. Farmers Ins. Exch.*
169 Cal.App.4th 976 (2008) ..... 19, 20

*Forum Ins. Co. v. Ranger Ins. Co.*
1992 U.S.Dist. LEXIS 11360, 27 (N.D.Ill. 1992) ..... 16

*Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co*.
51 Cal.2d 558 (1959) ..... 15

*Gray v. Zurich Ins. Co.*, 65 Cal.2d. 263 (1965) ..... 13

*Hollingsworth v. Comm. Union Ins. Co*.
208 Cal. App. 3d 800 (1989) ..... 17

*Horace Mann Ins. Co. v. Barbara B.*
4 Cal. 4th 1076 (1993) ..... 14

*Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*
182 Cal. App.4th 23, 39 (2010) ..... 24

*Knorr v. Comm. Cas. Co.*
90 A.2d 387 (Pa. Super. Ct. 1952) ..... 17

*La Jolla Beach & Tennis Club v. Indus. Indem. Co.*
9 Cal.4th 27 (1994) ..... 13

*Low v. Golden Eagle Ins. Co.*
99 Cal.App.4th 109 (2002) ..... 13, 14, 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 106 S. Ct. 1348 (1986) ..... 11, 12

*Montrose Chem. Corp. v. Super. Ct.*
6 Cal.4th 287 (1993) ..... 12, 13

*N. E. Ins. Co. v. Masonmar, Inc.*
1:13-CV-364 AWI SAB, 2014 WL 1247604, at *9 (E.D. Cal. 2014) ..... 4, 22

*North Counties Engineering, Inc. v. State Farm General Ins. Co.*
224 Cal.App.4th 902 (2014) ..... 17, 19, 20

**TABLE OF AUTHORITIES**
(Continued)


Page

*Pension Trust Fund for Operating Engr's. v. Fed. Ins. Co.*
307 F.3d 944 (9th Cir. 2002)........................................................................................ 14

*Pepper Indus., Inc. v. Home Ins. Co.*
67 Cal.App.3d 1012 (1977)........................................................................................ 12

*Ruder & Finn v. Seaboard Sur. Co.*
52 N.Y.S. 2d 663 (1981) ........................................................................................ 14

*State Farm Fire & Cas. Co. v. Eddy*
218 Cal.App.3d 9585 (1990)........................................................................................ 12

*State Farm Fire & Casualty Co. v. Willison*
833 F.Supp.2d 1200 (D.Hawaii 2011) ........................................................................................ 16

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.*
97 Cal.App.4th 704 (2002)........................................................................................ 17, 19

*U.S. Fid. & Guar. Co. v. Country Club of Johnston County, Inc.*
458 S.E.2d 734 (N.C. Ct. App. 1995) ........................................................................................ 21

*Upper Deck Co. v. Federal Ins. Co.*
358 F.3d 608 (9th Cir. 2004)........................................................................................ 16

*USF v. Clarendon Am. Ins. Co.*
452 F.Supp.2d 972 (C.D.Cal. 2006) ........................................................................................ 13

*Waller v. Truck Ins. Exch.*
11 Cal.4th 1 (1995). ........................................................................................ 12, 13

Wausau Underwriters *v. Unigard Sec. Ins. Co.*
68 Cal.App.4th 1030 (1998)........................................................................................ 14

*Yates v. Jumbo Seafood Rest., Inc.*
C 10-02652 JW, 2010 WL 293683, at *4 (N.D. Cal. 2012) ............................................. 13, 21, 24

**Statutes**

Fed.R.Civ.P. 56(a)........................................................................................ 11

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that, on February 25, 2016, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4, 5th Floor of the United States District Courthouse located at 280 South 1st Street, San Jose, California, Defendant/Counter-Claimant NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA ("NIAC") will, and hereby does, move for summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56 on the grounds that, as a matter of law, under the terms of the liability insurance policy at issue, NIAC did not owe a duty to defend or duty to indemnify Narconon International ("NNI") against the claims asserted in the *Landmeier* Action, which is filed and proceeding in Oklahoma or against the claims asserted in the *Desmond* Action, which was filed in Georgia, but has since settled.

NIAC seeks entry of judgment in its favor as to WESTERN WORLD INSURANCE COMPANY'S ("WWIC's") Complaint for Declaratory Relief, in its entirety, and also seeks entry of judgment in its favor as to all claims asserted in its Counterclaim against WWIC. NIAC's motion will be, and is, based upon this Notice of Cross-Motion and Opposition to WWIC's Motion for Summary Judgment, the accompanying Statement of Undisputed Facts, Memorandum of Points and Authorities, the Declaration of GailAnn Y. Stargardter and exhibits thereto, all of which are filed concurrently herewith, and on all such further evidence, documents and argument as may be presented to the Court at or before the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The litigation arises out of a coverage dispute between Western World Insurance Company ("WWIC"), a commercial insurance company, and Nonprofits Insurance Alliance of California ("NIAC"), a risk pool for California nonprofit organizations, regarding their respective duties to defend and indemnify Narconon International ("NNI") in two lawsuits—the *Landmeier* Action, which is filed and proceeding in Oklahoma, and the *Desmond* Action, which was filed in Georgia, and has since settled. The *Landmeier* and *Desmond* Actions assert claims against NNI arising out of its failure to provide promised drug and alcohol rehabilitation services to Heather

Landmeier ("Landmeier") and Patrick W. Desmond ("Desmond").

NNI is an organization that promotes substance abuse and addiction treatment using the principals of Scientology and L. Ron Hubbard ("Technology"). NNI entered into licensing agreements with Narconon of Oklahoma ("NNO") and Narconon of Georgia ("NNG") for individual drug and alcohol treatment services. Under the terms of the License Agreements, NNI provided the Technology and other services to the individual treatment centers in return for ten percent of the treatment center's profits. The indemnity provision in the License Agreements required NNO and NNG to defend and indemnify NNI against all liabilities, claims, and actions of any kind, which arise from or relate to the use of the Technology, marks, or relate to or arise from any of the services or products associated with the marks.

Landmeier's family entered into a contract with NNO to provide drug rehabilitation services to their daughter. After being asked to leave NNO for failing to comply with its rules, Landmeier overdosed on drugs and was paralyzed from the neck down. Desmond's family entered into a contract with NNG, to provide alcohol rehabilitation services to their son. By court order, Desmond was to be enrolled in a residential drug treatment facility, which NNG represented it was. While in treatment at NNG, after consuming alcohol on-site, Desmond left the residential drug treatment facility, overdosed on heroin and died.

The Landmeier family sued NNI and NNO for failing to provide the drug rehabilitation services it contracted to provide to Landmeier. The Desmond family also sued NNG for failing to provide drug rehabilitation services to Desmond. The Desmond family sued NNI for Fraud and Civil Rico arising out of its representations regarding the provision of drug rehabilitation service at NNG and for covering up the circumstances surrounding Desmond's death.

NIAC issued a Liability Policy to NNI. The NIAC Policy was issued to NNI in its capacity as a provider of drug prevention and rehabilitation services. The NIAC Policy included Liability Coverage under three separate forms: Commercial General Liability (CGL) Coverage Form, Improper Sexual Conduct Liability (ISC) Coverage Form; and Liquor Liability Coverage ("LLC") Form. The cost of the policy issued by NIAC to NNI was $6,514.00.

NNO and NNG were insured under policies issued by WWIC. NNI is an additional

insured under both WWIC policies. The additional insured endorsements in the WWIC policies issued to NNO and NNG specifically reference the License Agreement between NNI and NNO and NNG.

The WWIC policy issued to NNO provided both Commercial General Liability coverage and Professional Liability coverage and insured the drug rehabilitation facility and the housing units associated with the treatment center. The advance premium for this policy was $127,020.00. The WWIC policy issued to NNG also provided both Commercial General Liability coverage and Professional Liability coverage. The advance premium for this policy was $17,712.00.

NNI tendered its defense to both NIAC and WWIC. WWIC accepted the tender of defense for both the *Landmeier* and *Desmond* Actions. Because the Petition in the *Landmeier* Action alleged that Landmeier had sex with members of the staff while at NNO, NIAC initially accepted defense of the *Landmeier* Action under the ISC Coverage Form. The ISC Coverage Form provided a $250,000 wasting limit of insurance. NIAC later took the position that the limited coverage available under the ISC Coverage Form was excess to the WWIC coverage.

NIAC declined coverage for the *Landmeier* Action under the CGL Coverage Form because the actual claims asserted against NNI—for failing to provide drug rehabilitation services—were excluded from coverage by the Designated Professional Services exclusion included in the Policy.

NIAC declined coverage for the *Desmond* Action under the CGL Coverage Form because the claims asserted against NNI—Fraud, Civil RICO—are not "occurrences" and thus the claims did not fall within the CGL Coverage Form's insuring agreement and because, to the extent the allegations of wrongdoing against NNI arose out of its failure to provide professional services, coverage was excluded by the Designated Professional Services Exclusion in the Policy.

WWIC filed its Complaint for Equitable Contribution/Equitable Subrogation against NIAC on October 16, 2014. WWIC seeks a determination that NIAC is obligated to defend and indemnify NNI in the *Landmeier* and *Desmond* Actions under the CGL Coverage Form and the LLC Form. WWIC also seeks a determination that NIAC was obligated to defend and indemnify NNI in the *Landmeier* under the ISC Coverage Form. NIAC filed a Counterclaim for Declaratory

Relief, seeking a determination that it has no duty to defend or indemnify NNI against the claims asserted in the *Landmeier* or *Desmond* Actions.

NIAC is entitled to summary judgment in its favor that it has no duty to defend or indemnify NNI in the *Landmeier* or *Desmond* Actions under the CGL Coverage Form and LLC Form for the following reasons:

1. There is no coverage under the CGL Coverage Form for the *Desmond* Action because the claims asserted against NNI—for Fraud and Civil Rico—are not the result of an "occurrence" and thus do not fall within the NIAC Policy's insuring agreement.

2. There is no coverage under the CGL Coverage Form for the claims asserted against NNI in the *Landmeie*r or *Desmond* Actions because all the claims for damages asserted against NNI are due to its failure to provide drug rehabilitation services and, thus, all potential for coverage for both Actions is precluded by the Designated Professional Services Agreement.

3. There is no coverage under the LLC Form because the purpose of the Liquor Liability Coverage Form is to restore coverage that is otherwise excluded under the CGL coverage form to insureds whose operations include the manufacturing, distributing, sale, serving or furnishing of alcoholic beverages. *N. E. Ins. Co. v. Masonmar, Inc.*, 1:13-CV-364 AWI SAB, 2014 WL 1247604, at *9 (E.D. Cal. 2014). NNI is not in the business of serving or furnishing alcoholic beverages—it is in the business of providing drug prevention and rehabilitation services. Nor does the pleadings filed in the *Landmeier* and *Desmond* Actions seek to impose liability against NNI for its sale, serving or furnishing of alcoholic beverages to Landmeier as part of its business operations. Hence the claims do not fall within the LLC Form's insuring agreement. Additionally, exclusions 2.d. and 2.f. remove all potential for coverage under the LLC Form.

NIAC is also entitled to summary judgment in its favor with respect to its duty to defend NNI in the *Landmeier* Action under the ISC Coverage Form for the following reasons:

1. There is no coverage under the ISC Coverage Form because the *Landmeier* Petition does not assert claims for damages arising out of the "actual, attempted, alleged or unlawful sexual conduct as prohibited by federal law or state law" against NNI.

2. Even if this Court finds that the that the *Landmeier* Petition does assert a cause of action for damages as a result of improper sexual conduct, under equitable principles, the $250,000 wasting limit afforded under this coverage should be reserved for payment of any settlement or judgment rather than be used to defray defense costs.

Accordingly, WWIC's Motion for Summary Judgment should be denied. NIAC's Motion for Summary Judgment should be granted.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. NIAC is a risk pool, not a standard insurance company.

NIAC is one of four 501 (c) 3 nonprofit organizations that comprise The Nonprofits Insurance Alliance Group. NIAC is a risk pool, not a standard insurance company. (Fact 1) NIAC provides liability coverage for 501(c) 3 federally tax exempt nonprofits located in California. Only 501(c)(3) federally tax-exempt nonprofits qualify for membership with the Nonprofits Insurance Alliance Group. (Fact 1)

### B. The relationship between NNI, NNO and NNG.

Narconon International (NNI) is an organization that promotes substance abuse and addiction treatment using the principals of Scientology and L. Ron Hubbard. NNI is responsible for supervising and coordinating the use, promotion, and dissemination of the Hubbard Philosophy. (Fact 2)

NNI entered into License Agreements with Narconon of Oklahoma ("NNO") and Narconon of Georgia ("NNG")—two individual drug treatment centers. (Fact 3) NNI provides the Hubbard Philosophy and Hubbard Technology as well as marks, materials and programs to these centers. (Fact 3) NNI also monitors all operations of the centers, sends corrective missions to the centers to correct any deviation from the standards, specifications and guidelines of NNI. (Fact 3) In exchange for providing these services, NNI receives ten percent of the center's revenue. (Fact 3)

The indemnity provision in the License Agreements requires NNO and NNG to defend and indemnify NNI against all liabilities, claims, and actions of any kind, and costs, including attorney fees, which arise from or relate to the use of the marks or relate to or arise from any of

the services or products associated with the marks. (Fact 4). NNI is an additional insured under the WWIC Policies issued to NNO and NNG based upon the terms of the License Agreements. (Fact 17)

**B. The NIAC Policy**

NIAC issued a policy to NNI for the policy period July 6, 2007 through July 6, 2008. (Fact 5) The premium for the NIAC Policy was $6,514.00 (FACT 6) The NIAC Policy includes the following coverage forms: Commercial General Liability ("CGL") Coverage Form (Facts 7-11); the Improper Sexual Liability Coverage Form (Facts 12-13) and the Liquor Liability Coverage Form. (Fact 14-15), pursuant to all of the terms, conditions, limitations, exclusions, and endorsements contained therein. The NIAC Policy included Endorsement CG 21 16 (07/98)—EXCLUSION—DESIGNATED PROFESSIONAL SERVICES, which precludes coverage, under the CGL coverage form, for "'bodily injury' … due to the rendering or failure to render any professional service." (Fact 11) The NIAC Policy is attached as Exhibit 1 to the Stargardter Declaration and is expressly incorporated into this Statement as if fully set forth herein.

**C. The WWIC Policies**

NNO and NNG were insured under policies issued by WWIC for this same time period. (Fact 16) NNI is an additional insured under both WWIC Policies. (Fact 17) The additional insured endorsements in the WWIC Policies issued to NNO and NNG specifically reference the licensing agreement between NNI and NNO and NNG. (Fact 17)

The WWIC Policy issued to NNO provided both Commercial General Liability coverage and Professional Liability coverage and insured the drug rehabilitation facility and the housing units associated with the treatment center. (Fact 18) The advance premium for this Policy was $127,020.00. (Fact 18) The WWIC Policy issued to NNG also provided both Commercial General Liability coverage and Professional Liability coverage. (Fact 19) The advance premium for this Policy was $17,712.00. (Fact 19). The CGL Coverage Form in the WWIC Policies included the same Liquor Liability Exclusion as included in the NIAC CGL Coverage Form. (Fact 20). The WWIC Policies are attached as Exhibits 4 and 5 to the Stargardter Declaration and are expressly incorporated into this Statement as if fully set forth herein.

**D. The *Landmeier* Action.**

Valerie Landmeier filed a Petition against NNO and NNI. (Fact 21) The Petition alleges the following: NNI "provides services to its licensed facilities including, but not limited to, providing managerial expertise, as well as the monitoring and supporting the highest level of technical and administrative excellence throughout the network of facilities (Fact 22). Heather Landmeier was a "resident" at NNO and NNI's drug rehabilitation facility on several occasions between June 2005 and March 2008. (Fact 23) She was readmitted on August 26, 2007 for the purpose of detoxification and drug rehabilitation treatment. (Fact 24) NNO and NNI owed duties to provide Landmeier with "day to day rehabilitation assistance" and agreed to provide her with all necessary medical supervision, treatment and support in her day to day life activities. (Fact 25)

The Petition alleges that: From August 26, 2007 through March 4, 2008, employees of NNO's and NNI's facilities provided drugs and alcohol to Landmeier (Fact 26) and allowed her to enter into sexual relationships with staff members at their facility. (Fact 27) On March 4, 2008, defendants forced Landmeier to leave the facility, knowing that she had relapsed and had become addicted to heroin and oxycodone—both of which had been provided to her by employees of NNO's and NNI's facility, and was under the influence of these drugs at the time she was forced to leave the facility. (Fact 28) On March 5, 2008, Landmeier overdosed on heroin and oxycodone and was left in vegetative state, completely paralyzed from the neck down. (Fact 29)

The Landmeier Petition asserts three Causes of Action against NNI. Cause of Action A—Negligence and Negligence Per Se—alleges that NNO and NNI owed both statutory and common law duties to Landmeier to use reasonable care in providing her day to day drug rehabilitation assistance through the Narconon Drug Rehabilitation Program by and by failing to act in a reasonable and proper manner when NNI had knowledge, either actual and/or implied and/or constructive, of the health conditions of Heather Landmeier, including but not limited to, known drug addictions. (Fact 31) Cause of Action A alleges that NNO and NNI failed to act in a reasonable and proper manner when hiring training, supervising, retaining employees who NNO and NNI knew would be providing Landmeier with assistance and supervision, knowing said employees had provided drugs to other residents in the past. (Fact 32) Cause of Action A alleges

that the acts or omissions that constitute a breach of the duty of care owed to Landmeier include, but are not limited to failing to comply with all applicable standards and regulations of both federal and Oklahoma Law (Fact 33) and that the alleged acts and/or omissions constitute a breach of the duty of care owed to Landmeier were the actual and proximate cause of her damages. (Fact 34)

Cause of Action B—Breach of Contract—alleges that NNO and NNI agreed to provide Landmeier with all necessary medical supervision, treatment and support in her day to day life activities (Fact 35) and that NNO and NNI breached said contract by failing to provide those services to Landmeier (Fact 36). Cause of Action B alleges that the breach of said contract by NNO and NNI resulted in Landmeier suffering harm. (Fact 37).

Cause of Action C alleges that NNO and NNI breached the Oklahoma Consumer Protection Act by making false, fraudulent and misleading misrepresentations/assurances or promises/ regarding the treatment to be provided to Landmeier in violation of the Oklahoma Consumer Protection Act, resulting in harm to Landmeier and her family. (Facts 38 and 39)

The Petition also asserts Causes of Action for Intentional Infliction of Emotional Distress (Facts 40 and 41) and Punitive Damages against NNO and NNI. (Facts 42 and 43)

**E. The Desmond Action**.

The *Desmond* Action was filed on May 19, 2010. (Fact 44) The Complaint filed in the *Desmond* Action alleged the following: NNI owned, licensed, operated and/or otherwise directed drug rehabilitation facilities throughout the United States and around the world. (Fact 45) The Brevard County Drug Court required Patrick W. Desmond ("Desmond") to be enrolled for a period of six months in an in-patient, residential drug and alcohol rehabilitation facility in which he would be closely supervised at all times. (Fact 46) Mr. and Mrs. Desmond searched for an appropriate drug rehabilitation facility and decided to send their son to defendant NNG's facility. (Fact 47) NNG represented to Mr. and Mrs. Desmond and the Brevard County Drug Court that its facility was a residential facility that met the Court's requirements of providing a therapeutic environment in which Desmond would be closely supervised at all times. (Fact 48)

The Complaint alleges that despite being licensed by the State of Georgia to provide

services only in non-residential settings, NNG maintained and illegally operated off-site housing programs in several apartment complexes, including a program for male patients located at One Sovereign Place. (Fact 49) After his initial participation in the Narconon Program, Desmond returned to his parents' home but failed a required alcohol test, which lead to him being compelled by the Brevard County Drug Court to return to NNG's facility. (Fact 50)

The Complaint alleges that: "On the evening of June 10, 2008, Patrick W. Desmond was drinking beer and vodka with NNG's employees and staff members in a staff member's apartment at One Sovereign Place." (Fact 51) After becoming highly intoxicated with NNG's employees and staff members, Desmond left the illegal housing program's premises with two former patients of Defendant NNG, who had announced their intention to attempt to buy heroin. (Fact 52) Although NNG's employees and staff members were aware that Desmond intended to leave the facility for the purpose of attempting to purchase heroin, they failed to intervene and prevent him from doing so and also failed to timely report to their superiors or law enforcement that Desmond had left the premises. (Fact 53) NNG and NNI provided no security and no reasonable or adequate supervision or monitoring to ensure that Desmond or any other drug or alcohol-dependent patient would be allowed to freely leave the housing program premises at their own discretion for the purpose of engaging in the ongoing abuse of drugs and alcohol (Fact 54) NNG and NNI provided no security and no reasonable or adequate supervision or monitoring to ensure that NNG's patients would not engage in on-going abuse of drugs and alcohol at the housing program premises. (Fact 55) On the morning of June 11, 2008, Desmond died of cardiopulmonary arrest secondary to heroin overdose. (Fact 56) The Complaint asserted two cause of action against NNI—Fraud for its coordinated efforts, after the death of Desmond, to perpetrate a fraudulent cover up of the circumstances and events leading up to and resulting in his death. (Facts 57 and 58) and Punitive Damages—for illegally operating an unlicensed housing program for its drug and alcohol rehabilitation patients; for making false and fraudulent representations to Mr. and Mrs. Desmond and the Brevard County Drug Court and for perpetrating a fraudulent cover up of the circumstances and events leading up to Desmond's Death. (Fact 59.)

NNI tendered defense of the Desmond Action to NIAC on June 3, 2010. NIAC declined coverage for the Desmond Action on June 21, 2010, based on lack of an occurrence and based upon the Designated Professional Services exclusion. (Fact 60)

On March 22, 2012, a First Amended Complaint (FAC) was filed. (Fact 61) The purpose of the FAC was to add counts for Civil RICO by Fraudulent Statements to a Government Agency, Mail Fraud and Theft by Deception against the defendants. (Fact 61) The FAC alleged that: NNI fraudulently misrepresented the Narconon Program as one where students suffering from alcohol and drug addiction would be provided with substantive education in drug and alcohol abuse but instead of providing drug rehabilitation NNI has and continues to conceal the Program's true relationship with the Church of Scientology by teaching a "technology" virtually identical to the fundamental tenets and practice of the Church of Scientology. (Fact 62) NNI was associated in fact with NNG's scheme and/or artifice to defraud. (Fact 62) NNG licenses its entire treatment program and technology from NNI and due to NNI's strict oversight and auditing of NNG's treatment services, NNI knew or should have known NNG was not providing the substantive education on drugs and alcohol addiction. (Fact 64) NNI should have known that NNG was operating an illegal housing facility because it was copied on at least three occasions on NNG's Urgent Directive concerning the conditions at One Sovereign Place. (Fact 65). NNI profited from these fraudulent activities through its License Agreement with NNG. (Fact 66).

The FAC asserted five Counts against NNI. Count V alleges the existence of a Civil Conspiracy by NNG and NNI to facilitate the unlicensed and illegal operation of a drug and alcohol rehabilitation housing program, which actions proximately caused Desmond's death, pain, suffering and other damages. (Fact 67) Count VII alleges that in the immediate aftermath of Desmond's death, NNI coordinated efforts to perpetrate a fraudulent cover up of the circumstances and events leading up to Desmond's death, including intentionally providing false and misleading information to the Brevard County Drug Court and law enforcement. (Fact 68) Count VIII alleges that NNI unlawfully acquired, maintained an interest in and/or had control over an enterprise of property, including money, through a pattern of racketeering. (Fact 69) Count VII alleges that NNI and others engaged in two or more acts of racketeering activity by

committing numerous acts of making false statements and writings to a government agency by willfully falsifying and concealing or covering up by trick, scheme or other device, information related to NNG's operation as a provider of drug and alcohol rehabilitation services. (Fact 70) Count IX alleges that NNI and other engaged in two or more acts of racketeering activity through mail fraud by transmitting written communication by wire or mail that was devised in a scheme to defraud and/or constituted an attempt to obtain money or property by a means of false or fraudulent pretenses, representations or promises. (Fact 72) Count X alleges that NNI and others engaged in two or more acts of racketeering activity by obtaining money by deceitful means or the artful practice with the intention of depriving the owner of property. (Fact 72). The FAC sought Punitive Damages against NNI for illegally operating an unlicensed housing program for its drug and alcohol rehabilitation patients; for making false and fraudulent representations to Mr. and Mrs. Desmond and the Brevard County Drug Court and for perpetrating a fraudulent cover up of the circumstances and events leading up to Desmond's Death. (Fact 73.)

NNI tendered defense of the FAC to NIAC. NIAC declined coverage for the FAC on May 11, 2012. (Fact 74) NIAC declined coverage on the basis that the allegations of Civil Conspiracy, Fraud and Civil RICO were not "occurrences" under the Coverage A insuring agreement. NIAC also declined coverage because the claims asserted against NNI arose out of its provision of drug rehabilitation services and were thus excluded under the Designated Professional Services exclusion included in the policy. (Fact 74, Stargardter Decl., ¶68, Exh. 10.) The *Desmond* Action settled in February of 2013.

## III. <u>ARGUMENT</u>

### A. Summary judgment is appropriate when the interpretation of the NIAC Policy and the WWIC Policies present questions of law for the Court.

Summary judgment is warranted where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); *Applied Med. Res. Corp. v. U.S. Surgical*

*Corp.*, 352 F.Supp.2d 1119, 1123 (C.D.Cal. 2005). Thus, the district court should grant summary judgment if the evidence would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986).

The party moving for summary judgment has the initial burden to show the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S. Ct. 1598 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324, 106 S. Ct. 2548 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324. The mere existence of a "scintilla of evidence" in support of the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252.

Interpretation of an insurance policy is a question of law for the court. *Waller v. Truck Ins. Exch.*,11 Cal.4th 1, 18 (1995). Summary judgment is an appropriate means of determining coverage under an insurance policy where there are no issues of material fact to be tried and the sole issue before the court is one of law. *State Farm Fire & Cas. Co. v. Eddy*, 218 Cal.App.3d 958, 964-965 (1990) citing *Pepper Indus., Inc. v. Home Ins. Co.* 67 Cal.App.3d 1012, 1017 (1977). Here, summary judgment is proper where the Court is asked to interpret the provisions of an insurance policy and apply those provisions to undisputed facts.

### B. NIAC's duty to defend, while broad, is not unlimited and its duty to defend is not triggered by random facts asserted in the Pleadings that do not result for claims for damages against its insured.

Under California law, an insurer's duty to defend arises when a suit against an insured alleges a claim that potentially subjects the insured to liability for covered damages unless the insurer can demonstrate, by reference to undisputed facts, that the claim is not covered. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 296-297 (1993). The duty to defend is assessed at the time of tender. *Centillium Communs., Inc. v. Atl. Mut. Ins. Co.*, 528 F. Supp. 2d 940, 945 (N.D. Cal. 2007), citing *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal.App.3d 598, 610 (1986).

In assessing whether an insurer's duty to defend has been triggered, a court must consider all facts available to the insurer at the time the insured has tendered defense of claims made against it. *Ibid*. The court must then compare "the allegations contained in the Complaint with the terms of the policy and ascertain whether the facts alleged together with the facts known to the insurer at the inception of a lawsuit or tender of defense reveal a possibility that the claim is covered." *USF v. Clarendon Am. Ins. Co.*, 452 F.Supp.2d 972, 992 (C.D.Cal. 2006) citing *Montrose*, 6 Cal.4th at 295.

But, "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19 citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d. 263, 274 (1965). Therefore, under California law, "where there is no possibility of coverage, there is no duty to defend." *Waller*, 11 Cal.4th at 19 citing *Fire Ins. Exch. v. Abbott* 204 Cal.App.3d 1012, 1029 (1988). For example, an insurer "need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *La Jolla Beach & Tennis Club v. Indus. Indem. Co.*, 9 Cal.4th 27, 39 (1994). This includes claims falling outside the scope of the insuring clauses included within the policy, claims falling within an express exclusion from coverage, or claims barred by statutory or public policy limitations. *Gray*, 65 Cal.2d. at 276, *La Jolla Beach & Tennis*, 9 Cal.4th at 39.

Critically, WWIC's contention that this Court must look to the "potential liability" created by the "facts alleged" in the pleadings without taking into account the claims for damages actually asserted against NNI to determine whether NIAC's duty to defend the *Landmeier* and *Desmond* Actions is just plain wrong. California courts have made clear that the "sweep of the rule" stated in *Gray v. Zurich*[1] is limited by the rule prohibiting an insured party from "speculating about unpled causes of action." *See Yates v. Jumbo Seafood Rest., Inc.*, C 10-02652 JW, 2010 WL 293683, at *4 (N.D. Cal. 2012), citing *Low v. Golden Eagle Ins. Co.*, 99 Cal.App.4th 109, 114, (2002) ((holding there was no duty to defend where "none of [underlying plaintiff's] causes of action in the Underlying Complaint implicated the issue of whether [insured] Jumbo's conduct was intentional or negligent, which means that the passing references to

[1] *Gray v. Zurich Ins .Co.*, 65 Cal. 2d 263, 276 (1965).

'negligence' in the Underlying Complaint are irrelevant for purposes of determining whether the Policy covered the Underlying Complaint"). In *Low v. Golden Eagle*, the Court of Appeal found no duty to defend under general liability coverage where the plaintiff in the underlying complaint alleged bodily injury to herself but made no claim for that bodily injury *Id*. at 112.

Moreover, a liability insurer does not defend against "facts" in isolation; rather, it defends against *claims* against the insured that create a potential for indemnity, that is, claims that are covered by the policy. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) ("a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity"). Accordingly, "[NIAC] must defend a suit which potentially seeks damages within the coverage of the policy," not against claims or potential claims for which no damages are sought. *Wausau Underwriters v. Unigard Sec. Ins. Co.,*68 Cal.App.4th 1030, 1036, 1043 (1998).

WWIC's reliance on *Pension Trust Fund for Operating Engr's. v. Fed. Ins. Co*., 307 F.3d 944, 951 (9th Cir. 2002), *CNA*, *supra*, 176 Cal.App.3d at 609 and *Ruder & Finn v. Seaboard Sur. Co*., 52 N.Y.S. 2d 663 (1981) is misplaced. In each of these cases the "fact" on which the court relied upon to find coverage was contained within the causes of action asserted against the insured. Such is not the case here. Neither the *Landmeier* nor the *Desmond* Actions assert claims for damages against NNI based on its furnishing of alcohol to Landmeier or Desmond. The Landmeier Action does not seek to impose liability against NNI as a result of improper sexual misconduct. Rather, both Actions seek to impose liability against NNI for its failure to treat Landmeier's drug addiction and Desmond's alcohol addiction.

**C. NIAC has no duty to defend the Desmond Action because the only claims asserted against NNI are for Fraud, Civil Rico and for Punitive Damages based upon NNI's fraudulent conduct and Civil Rico violation—neither of which are an "occurrence" within the meaning of a liability policy.**

In order for NIAC's duties to defend and indemnify NNI to be triggered under the Coverage A Section of the CGL Coverage Form, the Complaint and FAC filed in the *Desmond* Action must assert claims for damages as a result of "bodily injury" caused by an "occurrence" against an insured.

The NIAC policy defines "occurrence" to mean an "accident." The policy does not define

the term "accident," however, the definition of this term has been set by the California courts. In the context of liability insurance, an accident is an "unexpected, unforeseen or undersigned happening or consequence from either a known or unknown cause." *Delgado v. Interinsurance Exch. of Auto. Club of So. Cal.*, 47 Cal.4th 302, 308 (2009), citing *Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co*., 51 Cal.2d 558, 563-564 (1959). The word "accident" in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed. *Delgado, supra*., 47 Cal. 4th at 311. An injury producing event is not an "accident" when all of the acts, the manner in which the acts were done, and the objective accomplished occurred as intended by the actor. *Ibid*. "This common law construction of the term 'accident' becomes part of the policy and precludes any assertion that the term is ambiguous." *Ibid*. citing *Collin v. Am. Empire Ins. Co.*, 21 Cal. App.4th 787, 810 (1994).

The Complaint asserted two cause of action against NNI—Count VII—Fraud and Count VIII—Punitive Damages for acting in concert with NNG in operating an illegal housing program, making intentionally false and fraudulent statements to Mr. and Mrs. Desmond and the Brevard County Drug Court and perpetrating a fraudulent cover-up of the circumstances and events leading up to Patrick W. Desmond's death. The FAC added four causes of action against NNI—all based on Civil RICO violations.

Under well settled California law neither a conspiracy to act, claims of fraud, intentional or negligent misrepresentation are "occurrences" within the meaning of a liability policy. *See Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal.App.4th 846, 861(1992); *Employers Ins. v. Musick Peeler & Garrett*, 871 F.Supp 381, 386 (S.D. Cal. 1994); *Allstate Ins. Co. v. Hansten* ,765 F.Supp. 614, 616 (N.D. Cal. 1991) (holding that claims of fraud or negligent misrepresentation, which is a sub-species of fraud are not "occurrences") and *Fibreboard Corp. v. Hartford Acc. & Indem. Co*., 16 Cal.App.4th 492, 511 (1993) (holding a civil conspiracy, including claims asserting a conspiracy to act negligently, cannot occur by accident or "occurrence").

Since RICO claims necessarily involve actions taken on behalf of an enterprise or conspiracy, these claims cannot be the result of an "occurrence" or "accident."[2] In *Upper Deck*

[2] See, e.g., *State Farm Fire & Casualty Co. v. Willison*, 833 F.Supp.2d 1200, 1218 (D.Hawaii 2011); and *Forum Ins.*

*Co. v. Federal Ins. Co.*, 358 F.3d 608, 613-16 (9th Cir. 2004) (applying California law), the Ninth Circuit held that a RICO claim does not allege any covered damages since economic loss does not qualify as "bodily injury" or "property damage" under a CGL policy. The trial court in that case had dismissed the action holding that the claims, including RICO claims, involved intentional conduct that did not constitute an "occurrence." *Id.* at p. 612. The concurrence disagreed with the majority, arguing that the decision should be affirmed on the basis of the trial court's holding that the claims did not constitute an "occurrence." *Id.* at p. 616 [concurrence]. *See also Dynamic Concepts v. Truck Ins. Exch.* 61 Cal.App.4th 999 (1998) (a RICO claim involves "economic losses which do not fall under the policy definitions of 'bodily injury' or 'property damage.'").

The only claims for damages asserted against NNI in the Desmond Action—Fraud, Civil Rico violations and Punitive Damages based upon fraud and racketeering activities—are not occurrences and thus did not fall within the Coverage A insuring agreement in the NIAC Policy. Accordingly, NIAC had no duty to defend or indemnify NNI under the CGL Coverage Form, as a matter of law.

**D. The Designated Professional Services Endorsement in the NIAC Policy removes all potential for coverage for the claims asserted against NNI in the *Landmeier* and *Desmond* Actions under the CGL Coverage Form.**

In addition to being caused by an "occurrence," in order for NIAC's duties to defend and indemnify NNI to be triggered under the Coverage A Section of the CGL Coverage Form, the claims for "bodily injury" must not be excluded from coverage by any exclusions. (Facts 5, 8)

As discussed above, the claims asserted against NNI in the *Desmond* Action do not fall within the insuring agreement in the CGL Coverage Part because they do not assert claims for "bodily injury" caused by an "occurrence." However, even if the Court believes that the Complaint and FAC and other extrinsic evidence available to NIAC, at the time of tender, suggested the possibility that the Complaint and FAC could be read to assert claims for damages as a result of NNI's negligent failure to provide drug and alcohol rehabilitation services to Desmond, all potential for coverage for those claims is removed by the Designated Professional

---

*Co. v. Ranger Ins. Co.*,1992 U.S.Dist. LEXIS 11360, 27 (N.D.Ill. 1992).

Services exclusion in the NIAC Policy, which states: "This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering or failure to render any professional service." The same is true for the Landmeier Action, which also asserts claims against NNI as a result negligence and breach of contract in failing to provide the promised drug rehabilitation services

**1. Drug and alcohol rehabilitation services are "professional services" as that term is defined by California courts.**

The Designated Professional Services Exclusion in the NIAC Policy does not define the term "professional services," but the term "professional services" has been the subject of various California court opinions, which have ascribed a judicially accepted meaning to it. California courts interpret "professional services" to refer to services:

> [A]rising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. It is a broader definition than "profession" and encompasses services performed for remuneration.

*See, e. g., Begun v. Scottsdale Ins. Co.*, No. C-12-03649 EDL, slip op. (N.D. Cal., May 16, 2013), *aff'd*, 613 Fed.Appx. 643 (9th Cir. 2015), *Stone*, supra, 470 F. Supp. at 1098 citing *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal.App.4th 704, 713 (2002). *See also Fireman's Fund Ins. Co. v. Nat' Bank for Coops.*, 849 F. Supp. 1347, 1368 (N.D. Cal. 1994) (holding that under *Hollingsworth v. Comm. Union Ins. Co*., 208 Cal. App. 3d 800 (1989), a professional service "generally signifies an activity done for remuneration as distinguished from a mere pastime."). Critically, nothing in *North Counties Engineering, Inc. v. State Farm General Ins. Co.*, 224 Cal.App.4th 902 (2014) changed this definition of "professional services".

The *Hollingsworth* court further held that in determining whether a particular act is a professional service it is the act itself, not the title or character of the party performing the act that is determinative. *Hollingsworth*, 208 Cal.App.3d at 806, 807. To that end, the court cited with approval to *Knorr v. Comm. Cas. Co.*, 90 A.2d 387, 388 (Pa. Super. Ct. 1952), in which the court held that since a policy was issued to a beauty parlor, it was clear that the term "'professional services' referred to the technical work performed by beauticians, hair-dressers, etc." *Hollingsworth*, 208 Cal.App.3d at 807.

Here, the NIAC Policy was issued to NNI in its capacity as a provider of drug prevention and rehabilitation services. (Fact 5) Thus, under *Hollingsworth*, it is clear that the term "professional services," in this instance, refers to the work performed by NNI in providing the technology for the services offered by both NNO and NNG (Facts 3 and 62) and managing, operating, directing, monitoring, auditing and supervising the services provided by NNO and NNG (Facts 3, 22, 25 and 45). These services—require mental and intellectual skill, not merely physical or manual labor. It is also clear that both the *Landmeier* Actions seek damages against NNI due to its failure to provide the professional services it contracted to perform. (Facts 31-39) and if this Court accepts WWIC's interpretation of the pleadings filed in the *Desmond* Action, then basis for the claims asserted against NNI in the Desmond Action is also its failure to provide drug and alcohol rehabilitation services to Desmond.

Indeed, the Desmonds' "Response to Defendant NNI's MSJ/MPSJ" cited to by WWIC in its MPA, catalogues the professional services NNI was supposed to but failed to provide to NNG and Desmond (WWIC Fact No. 43, Evans Decl. ¶62, Desmond MSJ Brief, pp. 6-8, WWIC's RJN, ¶3) The Desmonds' Response confirms that they sought to impose liability against NNI due to its failure to provide drug rehabilitation services to Desmond. (WWIC Fact No. 42, WWIC Fact No. 43, Evans Decl. ¶62, Desmond MSJ Brief, pp. 27, 28, 29 and 33.) As does the Court's Order denying NNI's MSJ/MPSJ.[3] (WWIC Fact No. 44, Evans Decl. ¶63-67, Desmond MSJ Order, pp. 7 and 9 , RJN, ¶4)

What WWIC fails to appreciate is that the fact that the trial court found that the FAC in the *Desmond* Action could be construed to asserted claims for negligence against NNI is, in and of itself, insufficient to bring those allegations within coverage because those claims, which are based on NNI's failure to render drug and alcohol rehabilitation services to Desmond, are

---

[3] In denying NNI's MSJ/MPSJ on the issue of whether it owed a duty to Desmond , the Court held:
"There is evidence presented from which a jury could conclude that NNI, through NNG undertook the duty of ***providing services*** to Patrick Desmond and failed to exercise reasonable care in carrying out that presumed duty." [Emphasis added], and
"None of the authorities NNI cites involved a situation where a defendant allegedly misrepresented itself as a provider of supervised inpatient treatment for alcohol and drug addiction and then allegedly—instead of providing that treatment—contributed to plaintiff's injury by facilitating access to drugs and alcohol."

precluded from coverage under the Designated Professional Services Exclusion. Furthermore, the act that precipitated plaintiffs' injuries need not have been one of professional malpractice, as long as the plaintiffs were injured by NNI in the performance of a professional service, the Designated Professional Services exclusion will apply. *Food Pro Int'l v. Farmers Ins. Exch*., 169 Cal.App.4th 976, 991 (2008).

**2. Landmeier's and Desmond's injuries relate to and arise out of NNI's rendering or failure to render the professional services it was hired to perform.**

In determining whether particular circumstances fall within the professional services exclusion, the focus in on whether the injury "occurred during the performance of professional services, not the instrumentality of injury." *Tradewinds*, 97 Cal.App.4th at 713; *see also Antles v. Aetna Cas. & Sur. Co.*, 221 Cal.App.2d 438, 443 (1963) (holding injuries occurring when a lamp fell on a chiropractor's patient while he was treated resulted from the doctor's professional services because lamp was an integral part of the treatment process). On this standard alone, all of the claims asserted against NNI in the *Landmeier* and *Desmond* Actions fall within the Designated Professional Services Exclusion because both Actions seek damages as a result of NNI's failure to render drug and alcohol rehabilitation services—the very services Landmeier and Desmond were seeking. *Tradewinds, supra*, 97 Cal.App.4th at 713.

Additionally, the injury must arise from the professional service, "not merely at the same time the insured was otherwise providing professional services to a third party." *Food Pro*, *supra*, 169 Cal.App.4th at 991. In this respect, it does not matter if the injury merely happened to arise at the time the insured was providing a professional service. Instead, the injury must arise from the performance of or failure to perform that service – *i.e.*, the injury must relate to the provision of the professional service. Here neither Landmeier nor Desmond were injured when they tripped over a mop left in a hallway at the drug rehabilitation center. Both were injured because NNI failed to treat their drug and/or alcohol addictions.

The decision in *North Counties, supra*, 224 Cal.App.at 902, in which the court declined to enforce a professional services exclusion, is consistent with the holding in *Food Pro*. In *North Counties*, an engineering firm was sued for negligence in connection with the construction of a

dam that the firm was hired to design. The firm's general liability policy stated that the policy did not apply to "'property damage' due to the rendering or failure to render any professional service including but not limited to engineering, drafting, or architectural services … and supervisory or inspection services." *Id.* at 928. The Court of Appeal held that the exclusion did not extend to claims for damages due to what plaintiff alleged was negligence in the actual construction of the dam, not the firm's design or engineering of the dam or supervisory work connected with the design and engineering of the dam. Here, unlike the injuries alleged in *Food Pro* and *North Counties*, the injuries sustained by Landmeier and Desmond relate directly to NNI's failure to perform the drug rehabilitation services sought by the Landmeier and Desmond families; their injuries arise from NNI's actual failure to provide the professional services it was hired to perform, not merely at the same time it was otherwise providing those services to a third party.

WWIC's attempt to characterize the provision to Landmeier of drugs and to Desmond of alcohol as occurring during an "after hours social interactions" is disingenuous. (WWIC MPA pp. 18-19) Desmond was required to attend an in-patient, residential drug and alcohol rehabilitation facility (Fact 47). NNG and NNI represented to the Desmond Family that the NNG facility was an in-patient, residential drug and alcohol rehabilitation facility (Facts 48, 63-65). The NNO facility was a residential drug treatment facility. (Facts 23, 24, and 25.**)** There are no "after hours social events" at an in-patient, residential drug and alcohol rehabilitation facility—treatment and care is a 24/7 event. Any departure from treatment protocols or regulations enforcing the provision of drug and rehabilitation services—such as providing inpatients with drugs and alcohol or allowing residential patients to enter into sexual relationships with staff is a failure to provide drug rehabilitation services.

For all of these reasons, the Designated Professional Services Exclusion removes all potential for coverage for the claims asserted against NNI in both the *Landmeier* and *Desmond* Actions, as a matter of law.

**E. The Liquor Liability Coverage Form does not provide any coverage for the claims asserted against NNI in the *Landmeier* or *Desmond* Actions.**

There are four reasons why the Liquor Liability Coverage Form ("LLC Form") does not apply to either the *Landmeier* or *Desmond* Actions.

**1. The Landmeier and Desmond Actions do not seek to impose liability against NNI as a result of the furnishing of alcohol to Landmeier or Desmond.**

Although the *Landmeier* Petition alleges that Landmeier was provided with alcohol while a resident at NNO, the Petition fails to assert a single Cause of Action against NNI based on the furnishing of alcohol. Similarly, although the *Desmond* Action alleges that NNG employees provided Desmond with alcohol, the only Counts asserted against NNI are for Fraud, Civil Rico violations and punitive damages based upon its Fraud and Civil Rico violations. Because the pleadings in the *Landmeier* and *Desmond* Actions fail to assert claims for damages against NNI on the basis that it furnished alcohol to Landmeier and Desmond, the claims asserted do not fall within the LLC Form's insuring agreement. *See*, *Yates v. Jumbo Seafood*, *supra* at *4 and *Low v. Golden Eagle, supra*, 99 Cal.App.4th at 112 (no duty to defend where the plaintiff in the underlying complaint alleges certain facts but makes no claim for injuries based upon that fact.).

**2. NNI is not in the business of furnishing or serving alcohol, thus the LLC Coverage Form does not apply.**

The CGL coverage forms included in both the NIAC Policy and the WWIC Policies preclude coverage for Liquor Liability only if the insured is in the business of selling, serving or furnishing alcoholic beverages.[4] (Fact 20 and WWIC Fact 6.) NNI is not in the business of selling, serving or furnishing alcoholic beverages. It is in the business of providing drug rehabilitation services. (Fact Nos. 2, 3, 22, and 45). *See e.g., U.S. Fid. & Guar. Co. v. Country Club of Johnston County, Inc.,* 458 S.E.2d 734, 738-39 (N.C. Ct. App. 1995) (the obvious purpose of the phrase "in the business of" is to describe the nature of the insured's activity—if the conduct of serving or furnishing alcoholic beverages is a permanent, ongoing operation, the

---

[4] Exclusion **c. Liquor Liability in the CGL Coverage Form states:**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage for which any insured may be held liability by reason of:

(1) Causing or contributing to the intoxication of any person;
(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

insured is in the business of serving or furnishing alcohol; if such conduct is infrequent or occasional, it is not "in the business of.") Thus, any liability that would be imposed upon NNI as a result of the furnishing of alcohol to Landmeier or Desmond would be covered under the CGL Coverage Form included in the NIAC policy except where, as here, because liability is sought to be imposed on NNI as a result of its failure to provide drug and alcohol treatment services, coverage is otherwise precluded by the Designated Professional Services Exclusion.

The insuring agreement in the LLC Form states that NIAC will pay those sums the insured becomes legally obligated to pay as damages because of injury, to which this insurance applies, if liability is imposed by the insured by reason of the … serving or furnishing of any alcoholic beverage. (Fact 14) The court in *N.E. Ins. v. Masonmar*, *supra*, 2014 WL 1247604, was asked to construe a policy that included both a LLC Form and the CGL Coverage Form.

The Court held that "the structure of the Policy show[ed] that the LLC Form is designed to provide coverage for the claims that the CGL's Liquor Liability Exclusion would otherwise exclude." *Id*. at *9. In so holding, the Court stated that "the fact that that the title of the CGL's Liquor Liability Exclusion was a mirror image of the LLC's Form Title indicated that there was a relationship between the LLC Forms provision and the CGL Coverage Form's exclusion." *Ibid*. The Court noted that the CGL's Liquor Liability Exclusion applied if the insured was in the business of manufacturing, distributing, selling, serving, or furnishing alcohol, while the LLC Form applied to liability imposed by reason of selling, serving, or furnishing alcohol. *Ibid* . The Court held that "although 'manufacturing' and 'distributing' were not part of the LLC Coverage Form's language, the LLC Form's use of the terms 'selling, serving, or furnishing' further indicated a relationship between the LLC Coverage Form and the CGL Liquor Liability Exclusion." *Ibid*. Next, the Court noted that the exact three categories excluded by the CGL Coverage Form's Liquor Liability Exclusion—causing or contributing to intoxication, provision of alcohol to a minor or drunkard, and violation of an alcohol related statute—were expressly excepted from the LLC Coverage Form's "Your Product" exclusion. Accordingly, the Court held that the LLC Coverage Form only applies when the insured is in the business of selling, serving, furnishing alcohol. *Id*. at *9.

Here, neither the underlying pleadings any other evidence available to NIAC at the time of tender alleged that NNI was in the business of selling, serving or furnishing of alcoholic beverages. To the contrary, NNI was involved in the provision of rehabilitation services. There is no application of the LLC form to the claims asserted in the Landmeier or Desmond Actions.

**3. Exclusion 2.d. precludes coverage, as a matter of law.**

Exclusion 2.d. precludes coverage when any required liquor license is not in effect, expired, suspended or revoked. Under the rationale employed by the *Masonmar* Court, this exclusion emphasizes the fact that the LLC Form only applies when the insured is in the business of selling, serving or furnishing alcohol. Here, there is simply no evidence to support that NNI is in the business of selling, serving or furnishing alcohol.

**4. Exclusion 2. f. precludes coverage, as a matter of law.**

Exclusion 2. f. precludes coverage for any injury liability which is imposed on the insured by reason of selling, serving or furnishing alcohol when other insurance afforded covers that injury. Under *Masonmar*, the LLC Form applies only when the insured is in the business of selling, serving or furnishing alcohol. *Masonmar, Inc*., *supra* at *9. The exclusion includes a "give back" of coverage in that the exclusion does not apply if that other insurance responds to liability imposed on the insured due to its selling, serving or furnishing of alcohol. In other words, if NNI was in the business of selling, serving or furnishing alcohol, and if the WWIC Policy had included a LLC Form, Exclusion 2.f would not apply to the LLC Form in the WWIC Policy. Instead, under the give back provision, coverage under both LLC Forms would apply to the loss.

But the WWIC Policy did not include a LLC Form. And, because the WWIC Policy did not include a Designated Professional Service Exclusion, the CGL Coverage Form in the WWIC Policy provided coverage for any claims that might have been asserted against NNI for its liability in furnishing alcohol to Landmeier or Desmond. Hence, exclusion 2 f. applies because other insurance provided by WWIC is not afforded by a LLC Form.

/ / /

/ / /

**F. The Claims asserted against NNI in the Landmeier Action do not fall within the Improper Sexual Conduct Liability Coverage Form insuring agreement.**

The insuring agreement in the Improper Sexual Conduct Liability Coverage Form ("ISC Form") states that NIAC will pay those sums the insured becomes legally obligated to pay as monetary damages because of "bodily injury" arising from "improper sexual conduct." Under California law, the term "arising from" as used in a liability policy "links a factual situation with the event creating liability and does not import any particular standard of causation or theory of liability into an insurance policy." *Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100, 106-107 (2005). The words "arising from" are "of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from [,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with' …." *Ibid*. However, there still must be some connection between the allegations in the Petition and the liability covered by the policy. *See Yates*, *supra* at *4, and *Low, supra*, 99 Cal.App.4th at 112. The *Landmeier* Action does not assert claims for damages against NNI as a result of improper sexual conduct.

The basis for liability against NNI is its failure to provide the drug rehabilitation services as promised. The Petition asserts liability against NNI for its failure to act reasonably in treating her drug addiction; failing to hire, train, supervise or retain employees who would be providing drug rehabilitation services to her; and failing to provide Landmeier with necessary medical supervision, treatment and support, and misrepresenting the nature of the services provided by NNO. The claims for damages against NNI are not based upon improper sexual misconduct.

Even assuming the allegations of the *Landmeier* Action give rise to a potential for coverage under the NIAC policy, the coverage available under the ISC Coverage Form is excess to the coverage afforded by the WWIC policy for two reasons. First, under the terms of the License Agreement signed by NNI and NNO, NNO is obligated to defend and indemnify NNI against the claims asserted in the *Landmeier* Action, NNO and thus the policy issued by WWIC (by virtue of the insured contract provisions) have a greater primacy than the NIAC policy. *See, e.g., Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co*., 182 Cal. App.4th 23, 39 (2010) (holding that an entity which agrees to indemnify another party in the underlying transaction has a

greater primacy than an independent insurer that insures against the loss. NNI's status as an additional insured under the WWIC Policy is based upon the License Agreement not the Business Agreement (Fact 17). It is provisions in the License Agreement, not provisions in the Business Agreement that control the scope of WWIC's defense obligations.

Second, due to the eroding nature of the ISC coverage, treating this coverage as excess is in the NNI's best interest. WWIC has an obligation to defend. Defense costs paid by WWIC do not erode coverage. Defense costs paid by NIAC do erode coverage under the ISC Coverage Form. If the Court upholds NIAC's position that its coverage is excess to the WWIC Policy, NNI would have a total of $1,250,000 to contribute to the settlement of the *Landmeier* Action. If NIAC is forced to contribute to the defense of the *Landmeier* Action, payment of those defense costs will necessarily impact the amount available to contribute toward any settlement—which will negatively impact NIAC's named insured. NNO paid $127,020.00 to WWIC for coverage for itself and NNI as an additional insured. NNI paid only $6,714.00 to NIAC. By insisting that NIAC pay a pro-rata share of the defense costs WWIC is actually placing is own interests above that of its insured and, in so doing, depriving the insured of additional funds that could be applied toward the settlement of the action.

## IV. CONCLUSION

For all of the reasons set forth above, NIAC's motion for summary judgment should be granted and WWIC's motion for summary judgment should be denied. Judgment should be entered in favor of NIAC that it had no duty to defend or indemnify the Landmeier and Desmond Actions under the CGL Coverage Form and the LLC Form. Judgment should also be entered in NIAC's favor that it has no duty to defend the Landmeier Action under the ISC Coverage Form or that, for equitable reasons, the coverage afforded under the ISC Coverage Form is excess to the coverage afforded by the WWIC policy such that the proceeds of the ISC Coverage Form apply only to the satisfaction of any settlement or judgment.

Dated: December 28, 2015

ARCHER NORRIS

*/s/ GailAnn Y. Stargardter*
GailAnn Y. Stargardter
Attorneys for Defendant NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA

NA1676/2307276-1