James L. Wraith, State Bar No. 112234
David A. Evans, State Bar No. 181854
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone: (510) 874-1811
Facsimile: (510) 465-8976
E-mail: jwraith@selvinwraith.com
devans@selvinwraith.com

Attorneys for Plaintiff/Counter-Defendant
Western World Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA, a California corporation; and DOES 1 through 10,<br><br>Defendants.<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,<br><br>Counterclaimant,<br><br>v.<br><br>WESTERN WORLD INSURANCE COMPANY,<br><br>Counter-Defendant | CASE NO.: 5:14-cv-04466-EJD<br><br>**WESTERN WORLD INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NIAC'S CROSS-MOTION FOR SUMMARY JUDGMENTAND REPLY TO NIAC'S OPPOSITION TO WESTERN WORLD'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 25, 2016<br>Time: 9:00 a.m.<br>Ctrm.: 4<br>Judge: Judge Edward J. Davila<br><br>Trial Date: April 25, 2016<br>Complaint Filed: October 6, 2014 |

## TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. STATEMENT OF RELEVANT FACTS ........ 1

III. LEGAL ARGUMENT ........ 1

A. Standard For Summary Judgment And Burdens Of Proof ........ 1

B. Principles Defining Duty To Defend ........ 1

C. The Factual Allegations Of The Desmond Lawsuit And Landmeier Lawsuit Assert An "Occurrence" Creating A Potential For "Bodily Injury" Coverage Under The NIAC Policy's CGL Coverage Part, Liquor Liability Coverage Part, And Improper Sexual Conduct Coverage Part (Landmeier Only) ........ 3

1. The Desmond And Landmeier Lawsuits Trigger A Duty To Defend Under NIAC's CGL Coverage Because They State Claims For "Bodily Injury" Caused By An "Occurrence" ........ 4

2. The Desmond And Landmeier Lawsuits Trigger A Duty To Defend Under NIAC's Liquor Liability And CGL Coverage Because They State Claims For "Injury" For Furnishing Alcohol To Desmond And Landmeier ........ 7

a. By Its Terms The NIAC Liquor Liability Coverage Does Not Require The Insured To Be In The Business Of Providing Alcohol, And NIAC May Not Rewrite Its Policy Language To Include Such A Condition ........ 7

b. NIAC's Liquor Liability Exclusions Do Not Apply ........ 9

c. NIAC's CGL Coverage Applies To Claims Arising From Fact That Narconon Furnished Alcohol To Desmond And Landmeier ........ 9

3. The Landmeier Lawsuit Triggers A Duty To Defend Under NIAC's Improper Sexual Conduct Coverage ........ 10

D. The NIAC Policy's "Professional Services" Exclusion Does Not Apply Because After Hours Furnishing Of Alcohol, Illegal Drugs, And Elicit Sexual Relations Are Not "Professional Services" ........ 12

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Ins. Co. v. Superior Court*,
51 Cal.3d 807, 822 (1990) ....................8

*Allstate Ins. Co. v. Overton*,
160 Cal. App. 3d 843, 851 (1984) ....................6

*Armstrong World Industries v. Aetna Casualty*,
45 Cal.App. 4th 1 (1996) ....................12

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017, 1038-1039 (2002) ....................1

*Bank of California v. Opie*,
663 F.2d 977 (9th Cir. 1981) ....................13

*Barnett v. Fireman's Fund Ins. Co.*,
90 Cal. App. 4th 500, 510 (2001) ....................2, 5, 8

*Buss v. Superior Court*,
16 Cal.4th 35 (1997) ....................1

*Certain Underwriters at Lloyd's of London v. Superior Court*,
24 Cal.4th 945, 968 (2001) ....................8

*Colony Ins. Co. v. Fladseth*,
U.S.D.C. Case No. C 12-1157 CW (N.D. Cal. 6/21/2013)....................13

*Delgado v. Interinsurance Exchange of Automobile Club of Southern California*,
47 Cal.4th 302, 310 (2009) ....................4, 10

*Food Pro Int'l, Inc. v. Farmers Ins. Exch*,
169 Cal.app.4th 976, 992 (2008) ....................4, 13

*Golden Security Thrift & Loan Ass'n v. First American Title Ins. Co.*,
53 Cal. App. 4th 250 (1997) ....................8

*Gray v. Zurich Ins. Co.*,
65 Cal.2d 263, 276 (1966) ....................4, 5

*Hedmann MD v. Liberty Mutual Fire Ins. Co.*,
158 Or. App. 510 (1998)....................14

*Hirst v. St. Paul Fire & Marine Ins. Co.*,
683 P.2d 440 (Idaho App. 1984)....................13

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal.4th 1076, 1083 (1993) ....................6, 7

*Howard v. American Nat'l Fire Ins. Co.*,
187 Cal.App.4th 498, 519-520 (2010) ....................6

**Page(s)**

*In Re Michael J. Scott on Disbarment*, 52 Cal 3d 968 ....................14

*Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal. App. 4th 23 (2010) ....................11, 12

*Jafari v. EMC Companies*, 155 Cal.App.4th 855 (2007) ....................6

*Kwok v. Transnation Title Ins Co.*, 170 Cal. App. 4th 1562, 1571 (2009) ....................8

*Lipson v. Jordache Enterprises, Inc.*, 9 Cal.App.4th 151, 155 (1992) ....................6

*Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109 (2002) ....................5, 6

*Marie Y. v. General Star Indem. Co.*, 110 Cal. App. 4th 928 (2003) ....................13

*Maryland Casualty Co. v. Nationwide Mutual Ins. Co.*, 81 Cal. App. 4th 1082, 1092 (2000) ....................11

*Maxon v. Security Ins. Co.*, 214 Cal.App.2d 603 (1963) ....................5

*Mirpad, LLC v. California Guarantee Assn.*, 132 Cal. App. 4th 1058, 1068 (2005) ....................2, 3

*Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) ....................2, 3

*Mullen v. Glens Falls Ins. Co.*, 73 Cal.App.3d 163, 170 (1977) ....................6

*North Counties Engineering, Inc. v. State Farm General Ins. Co.*, 224 Cal.App.4th 902, 927 (2014) ....................13

*North East Ins. Co. v. Masonmar, Inc.*, 1:13-CV-364 AWI SAB, 2014 WL 1247604 (E.D. Cal. 2014) ....................8, 9

*Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 808 (1982) ....................13

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622 (1975) ....................11, 12

*S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1294 (9th Cir. 1982) ....................1

*Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d (Minn. 1984) ....................13

*Standard Fire Ins. Co. v. Blakeslee*, 771 P.2d 1172 (Wash. App. 1989) ....................13

**Page(s)**

*State Farm Fire & Cas. Co. v. Superior Court*, 164 Cal. App. 4th 317 (2008) ....................10

*Travelers Casualty & Surety Co. v. American Equity Ins. Co.*, 93 Cal. App. 4th 1142, 1157 (2001) ....................11, 12

*Upper Deck Co., LLC v. Federal Ins. Co.*, 358 F.3d 608, 615-616 (9th Cir. 2004) ....................6

*Vann v. Travelers Cos.*, 39 Cal.App.4th 1610, 1614-1615 (1995) ....................1

*Waller v. Truck Ins. Exch.*, 11 Cal.4th 1 (1995) ....................6

*Yates v. Jumbo Seafood Restaurant, Inc.*, C 10-02652 JW, 2012 WL 293683 (N.D. Cal. 2012) ....................5, 6

**Statutes**

Cal. Civil Code §1636....................8

Cal. Civil Code §1639....................8

## I. INTRODUCTION

The underlying bodily injury claims asserted by the Desmond Lawsuit (wrongful death) and Landmeier Lawsuit (quadriplegia and grievous brain injury) allege facts triggering "bodily injury" coverage under NIAC's policy under its CGL liquor liability coverage part, Liquor Liability ("LL") coverage part, and Improper Sexual Conduct ("ISC") coverage part (Landmeier only). NIAC does not dispute an equitable share of the defense provided by Western World to NNI in both Lawsuits exceeds $690,000 (and increases as the Landmeier defense continues).

## II. STATEMENT OF RELEVANT FACTS

In view of procedural page limitations and both parties' recitation of facts in their respective opening briefs, Western World refers this Court to Western World's Statement of Relevant Facts in its opening Motion for Summary Judgment.

## III. LEGAL ARGUMENT

### A. Standard For Summary Judgment And Burdens Of Proof

To prevail on its Cross-Motion for Summary Judgment, NIAC must establish there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. FRCP 56(a). If NIAC is not entitled to judgment as a matter of law, its motion must be denied. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1294 (9th Cir. 1982). NIAC must establish there is no potential for liability under its policy; even the possibility of coverage for a single claim will trigger the duty to defend. *Buss v. Superior Court*, 16 Cal.4th 35 (1997). NIAC may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating the exclusion applies, and it has the burden of proving through conclusive evidence that the exclusion applies in all possible worlds. *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-1039 (2002). Any doubts as to whether the facts give rise to a duty to defend is resolved in favor of finding the duty applies; in this case, such a finding requires a denial of NIAC's Cross-Motion. *Vann v. Travelers Cos.*, 39 Cal.App.4th 1610, 1614-1615 (1995). This is a heavy burden which NIAC does not meet.

### B. Principles Defining Duty To Defend

The principles defining the duty to defend are well settled and generally admitted by NIAC although NIAC fails to correctly apply them in this matter. An insurer has a duty to defend the

insured against any suit that even potentially seeks covered damages. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) (*"Montrose").* This means the duty to defend arises whenever the suit seeks damages on any theory that, if proved, would be covered by the policy. *Mirpad, LLC v. California Guarantee Assn.*, 132 Cal. App. 4th 1058, 1068 (2005) (*"Mirpad").* The insurer has no duty to defend "only when "the third-party complaint can *by no conceivable theory raise a single issue* which could bring it within the policy coverage."" (*Ibid*). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." (*Montrose*, *supra*, at 295.) The duty to defend may exist even when coverage is in doubt and ultimately does not develop because the facts known to the insurer at the inception of the suit reveal the bare potential for coverage. (*Ibid*). As the California Supreme Court has noted, "the insured's desire to secure the right to call on the insurer's superior resources for the defense of third-party claims is, in all likelihood, typically a significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score" (*Id.* at 295-296), and have imposed a duty to defend that arises on tender of defense and continues until the suit concludes or the insurer has shown there is no potential for coverage (*Id*. at 295).

A duty to defend the suit exists by *comparing the factual allegations of the complaint with the policy terms*. (*Id*. at 295). The "duty to defend arises *when the facts alleged in the underlying complaint give rise to a potentially covered claim*." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001). Facts extrinsic to the complaint may also give rise to a duty to defend when they reveal a potential for coverage. (*Ibid*). Any doubts about whether the facts establish a duty to defend must be resolved in the insured's favor. *Montrose*, *supra*, at 299-300.

In summary, in an action seeking a determination of the duty to defend, "the insured must prove the existence of the potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim *may fall within policy coverage*; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages

(or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." *Montrose, supra,* 6 Cal. 4th at 300. If coverage depends on the resolution of the disputed factual issue, "the very existence of that dispute would establish a possibility of coverage and thus a duty to defend." *Mirpad, supra,* 132 Cal. App. 4th at 1068.

Western World carried its burden of showing NIAC had a duty to defend the Desmond Lawsuit and Landmeier Lawsuits because factual allegations in the pleadings give rise to potentially covered claims for liquor liability and improper sexual conduct (Landmeier only), and for providing illegal drugs (Landmeier only) because these are not excluded professional services.

**C. The Factual Allegations Of The Desmond Lawsuit And Landmeier Lawsuit Assert An "Occurrence" Creating A Potential For "Bodily Injury" Coverage Under The NIAC Policy's CGL Coverage Part, Liquor Liability Coverage Part, And Improper Sexual Conduct Coverage Part (Landmeier Only)**

NIAC's policy contains three separate coverage parts under three separate coverage forms and limits: (i) commercial general liability (CGL), (ii) liquor liability (LL) and (iii) improper sexual conduct (ISC). MSS 3, 4, 10, 15. For the Desmond Lawsuit, there is a potential for coverage under the CGL and LL coverage parts, and for the Landmeier Lawsuit there is a potential for coverage under the CGL, LL and ISC coverage parts. NIAC cannot eliminate the possibility of liquor liability coverage under either the CGL or LL coverage parts because liquor liability is expressly covered, and cannot eliminate the possibility of improper sexual conduct (Landmeier only) coverage under the ISC coverage part. Further, furnishing illegal drugs (OxyContin and Heroin) (Landmeier only) is expressly covered by the CGL part because providing illegal drugs is not a professional service excluded by the professional service exclusion. Likewise, the LL and ISC coverage part do not have a professional services exclusion and professional services analysis is unnecessary. However, to be thorough, furnishing alcohol or illicit sexual relations is also not a professional service of a drug treatment facility particularly when provided after-hours during social interaction.

NIAC's erroneous refusal to defend is based on a narrow and incomplete view of what transpired and by ignoring the Desmond and Landmeier Lawsuits' factual allegations. The drug treatment program did not include after-hours furnishing of alcohol, illegal drugs or illicit sexual relations as these actions are not professional services. The professional services exclusion only

applies to drug rehabilitation treatment, not illicit or illegal actions, and the undisputed factual allegations of an accidental ("occurrence") happening of "bodily injury" as a proximate cause of the furnishing of alcohol, illegal drugs or illicit sexual relations trigger a duty to defend the Desmond and Landmeier Lawsuits under the CGL coverage part, the separate Liquor Liability coverage part, and the separate ISC coverage part (which is not based on an "occurrence" trigger).

**1. The Desmond And Landmeier Lawsuits Trigger A Duty To Defend Under NIAC's CGL Coverage Because They State Claims For "Bodily Injury" Caused By An "Occurrence"**

The mere possibility that coverage exists for the Desmond and Landmeier Lawsuits' factual allegations regarding furnishing alcohol to Desmond, and furnishing alcohol, illegal drugs and illicit sexual relations to Landmeier, as a proximate cause of their bodily injuries, is sufficient to trigger a duty to defend. *Food Pro Int'l, Inc. v. Farmers Ins. Exch*, 169 Cal.app.4th 976, 992 (2008).

The Desmond and Landmeier Lawsuits allege Desmond and Landmeier suffered "bodily injury" caused by an "occurrence." The NIAC policy defines as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (NIAC-policy 000026). Desmond died and Landmeier suffered quadriplegia and brain damage."

The NIAC policy CGL coverage part defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." An "accident" means an unexpected, unforeseen or undesigned consequence as determined from the perspective of the insured. *Delgado v. Interinsurance Exchange of Automobile Club of Southern California*, 47 Cal.4th 302, 310 (2009). The Desmond and Landmeier Lawsuits expose Narconon's negligent drug and alcohol treatment causing "occurrences" of "accidental" bodily injury for failing to prevent after-hours socializing with staff, or the unexpected provision of alcohol, illegal drugs and illicit sexual relations which were a proximate cause of the subsequent "occurrences" ("accidental" events) of "bodily injury."

It is axiomatic that a third-party complainant cannot control the scope of coverage by the form of its pleadings. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276 (1966). Coverage for the Desmond and Landmeier Lawsuits depend on the facts alleged in the underlying complaints, not on the "technical legal cause of action pleaded by the third-party." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th

500, 510 (2001).

Equally axiomatic is the principle that legal theories based on "intentional" conduct does not preclude a duty to defend where factual allegations or extrinsic evidence disclose the possibility that negligent or "unintentional" conduct is potentially involved. *Gray v. Zurich Ins. Co.*, *supra*, citing *Maxon v. Security Ins. Co.*, 214 Cal.App.2d 603 (1963). So long as the pleaded facts or extrinsic facts discoverable by NIAC through investigation disclose potential liability for a "lesser included offense" (i.e., negligence), the pleading of intentional tort claims does not eliminate the insurer's defense obligation.

NIAC relies on *Yates v. Jumbo Seafood Restaurant, Inc.*, C 10-02652 JW, 2012 WL 293683 (N.D. Cal. 2012) an unpublished Northern District case, to argue potential liability disclosed by factual allegations do not trigger the duty to defend. However, *Yates* and the case upon which it relies, *Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109 (2002), do not support NIAC's interpretation. *Yates* involved a denial of access claim under the Americans with Disabilities Act. The policy excluded coverage for the breach of federal law including discrimination. Strict liability for ADA violations exists regardless of negligence and, therefore, the isolated use of the word "negligence" referring to the removal of barriers was irrelevant. There was no coverage because the *Yates* lawsuit did not involve "bodily injury" and the policy only covered "bodily injury" or "property damage" which did not exist.

Similarly, *Low* narrowly found there was no duty to defend a class-action lawsuit where the class-action status eliminated any possibility for a covered "bodily injury" claim and the plaintiff's Complaint stated at paragraph 9 that, "plaintiff expressly disclaims seeking recovery for personal injuries attributable to the use of" defendant's ephedrine drug product and "plaintiff and the members of the class preserve their rights to pursue claims for personal injuries arising from their use of the diet drug products and other litigation." (*Low, supra.* 99 Cal. App. 4th 112). Under narrow circumstances where plaintiff's pleading expressly rejects any claim for personal injuries (i.e., bodily injury), a duty to defend does not apply, but these narrow circumstances do not exist in the Desmond and Landmeier Lawsuits.

It is instructive that in finding no coverage, the *Yates* court identified one well-known area in

which coverage can be triggered – whether conduct is negligent or intentional. *Yates* observed the defendant's liability did not depend on whether conduct was negligent or intentional and, therefore, the distinction was irrelevant to coverage. However, *Yates* identifies the classic scenario in which a claim for uncovered intentional conduct nonetheless creates a potential for coverage when the same factual allegations can be re-couched as a covered negligence claim. Allegations of intentional conduct do not eliminate the duty to defend unless it is impossible for judgment to be entered on the lesser-offense negligence theory. *Allstate Ins. Co. v. Overton*, 160 Cal. App. 3d 843, 851 (1984); *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1083 (1993); *Jafari v. EMC Companies*, 155 Cal.App.4th 855 (2007); *Mullen v. Glens Falls Ins. Co.*, 73 Cal.App.3d 163, 170 (1977). In the Desmond Lawsuit, the court found such lesser-offense negligence theories existed. In the ongoing Landmeier Lawsuit, NIAC concedes the lesser-offense negligence theory is asserted.

Unlike *Yates*, the Desmond nor Landmeier Lawsuits allege facts supporting negligently caused "bodily injury" that are covered by the NIAC policy; See, e.g., *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1 (1995); *Low*, *supra*., *and* trigger the duty to defend. *Upper Deck Co., LLC v. Federal Ins. Co.*, 358 F.3d 608, 615-616 (9th Cir. 2004).

NIAC's is obligated to evaluate extrinsic facts available by reasonable inspection at the tender of defense or subsequent retender of defense. *Howard v. American Nat'l Fire Ins. Co.*, 187 Cal.App.4th 498, 519-520 (2010); *Lipson v. Jordache Enterprises, Inc.*, 9 Cal.App.4th 151, 155 (1992). The Desmond Lawsuit was retendered multiple times. MSS 37, 39, 40, 41, 42. The last retender and declination by NIAC was *after* the underlying MSJ was fully briefed and the covered lesser offense of negligent bodily injury was asserted. See MSS 42, 43. The pending Landmeier Lawsuit involves a continuous tender through the present because NIAC and NNI are litigating coverage and insurance bad faith for Landmeier and ten other drug treatment lawsuits. See Request for Judicial Notice, ¶5. Moreover, NIAC admits the Landmeier Lawsuit alleges a cause of action for negligence. MSS 29.

NIAC also owes a duty to defend under NNI's indemnity obligation under the Business Associate Agreement. NIAC admits the Business Associate Agreement obligates NNI to provide quality assessment and administrative services to NNG, and indemnify NNG for liability arising from

the agreement. MSS 24. The Desmond Lawsuit alleges in detail how NNI breached these obligations triggering indemnity to NNG under the Business Associate Agreement. As the Business Associate Agreement is an "insured contract" under the NIAC policy (see NIAC-Policy 000017, 27), NIAC owed a duty to defend NNI on this additional basis, which NIAC ignores.

**2. The Desmond And Landmeier Lawsuits Trigger A Duty To Defend Under NIAC's Liquor Liability And CGL Coverage Because They State Claims For "Injury" For Furnishing Alcohol To Desmond And Landmeier**

The NIAC policy contains a separate commercial liquor liability (LL) coverage with a separate $1 million limit (NIAC-Policy 000013, 45-48). MSS 3, 15. The Desmond and Landmeier Lawsuits allege Narconon furnished alcohol to Desmond and Landmeier. MSS 26, 34. NIAC acknowledges Narconon is not in the business of furnishing alcohol. See NIAC Brief, 21:16-17. Desmond died from a heroin overdose the same night he consumed a bottle of vodka and three beers with Narconon staff, and Landmeier suffered bodily injuries from a heroin and OxyContin overdose the day after Narconon expelled her after furnishing her with alcohol, illegal drugs and illicit sexual relations. MSS 26-28, 34, 35.

NIAC must defend because these allegations or extrinsic facts "reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Each of the underlying complaints allege Narconon entities furnished alcohol to Desmond and Landmeier. NIAC's policy provides liquor liability under the CGL coverage part and separate LL coverage part that requires NIAC to defend any claim involving "bodily injury" by reason of furnishing alcohol. NIAC admits every relevant fact and owes a duty to defend its insured (NNI) under the liquor liability coverage of the CGL and LL coverage parts.

**a. By Its Terms The NIAC Liquor Liability Coverage Does Not Require The Insured To Be In The Business Of Providing Alcohol, And NIAC May Not Rewrite Its Policy Language To Include Such A Condition**

The Desmond and Landmeier Lawsuits allege Desmond and Landmeier injuries resulted, in part, from the furnishing of alcohol by Narconon staff. NIAC misinterprets its defense obligation by searching for a "furnishing alcohol" cause of action even though none is needed. Under California law, coverage turns on the facts alleged in the underlying complaint, not on the form of the cause of action pleaded by the third party. *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500, 510

(2001). In Landmeier, the negligence cause of action incorporating the allegation of Narconon personnel's furnishing alcohol is sufficient to trigger the duty to defend under the liquor liability coverage provided by the CGL coverage part and LL coverage part. In Desmond, the negligence cause of action later recognized by the trial court is sufficient to trigger the duty to defend under the same liquor liability coverage of the CGL coverage part and LL coverage part.

NIAC's liquor liability coverage does not require NNI to be in the business of selling, serving or furnishing alcoholic beverages. The Liquor Liability Coverage Form's insuring agreement covers liability for "injury" imposed on NIAC "by reason of the selling, serving or furnishing of any alcoholic beverage" and the Form defines "injury" as "all damages" including damages because of bodily injury and property damage including damages for care, loss of services or loss of support." MSS 16-17 (NIAC Policy 000045). NIAC's policy language must be evaluated and enforced according to the plain meaning of its terms. *Golden Security Thrift & Loan Ass'n v. First American Title Ins. Co.*, 53 Cal. App. 4th 250 (1997), citing Cal. Civil Code §1639; *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990), citing Cal. Civil Code §1636). Neither litigants nor courts may rewrite clear and explicit policy language. *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 968 (2001); *Kwok v. Transnation Title Ins Co.*, 170 Cal. App. 4th 1562, 1571 (2009). As the *Kwok* court stated, "we do not rewrite any provision of any contract, including an insurance policy, for any purpose."

Against these clear standards, NIAC impermissibly asks this Court to rewrite NIAC's liquor liability coverage to add conditions that do not exist in the language of the policy itself. NIAC points to *North East Ins. Co. v. Masonmar, Inc*., 1:13-CV-364 AWI SAB, 2014 WL 1247604 (E.D. Cal. 2014), an unpublished decision by the Federal Eastern District Court of California, for a barroom brawl. The court concluded the policy's assault and battery coverage ($100,000) applied and liquor liability coverage did not because the injured patron was harmed by another patron's battery, not by ingesting alcohol served by the tavern. The court observed the CGL coverage part's liquor liability was excluded by the "business of furnishing alcohol" exclusion. After acknowledging the LL coverage part's liquor liability ($1 million) could apply to the bar fight, the court concluded in reliance on Illinois law that the bar fight was not a bodily injury arising from the tavern's furnishing

alcohol, but from the physical attack by other patrons. The causal connection with alcohol was insufficient.

The *Masonmar* decision has no application to this matter. If anything, *Masonmar* stands for the proposition that NIAC's $1 million liquor liability coverage under its CGL coverage part applies because Narconon is not in the business of furnishing alcohol. It also stands for the proposition that NIAC's $1 million liquor liability coverage under its LL coverage part applies when bodily injury is caused by the furnishing of alcohol. The portions of the decision interpreted by NIAC are mere dicta and based upon Illinois law, but interestingly support liquor liability coverage under the CGL coverage part and LL coverage part because Narconon is not in the business of providing alcohol and the bodily injuries were caused by providing alcohol.

At most, *Masonmar* suggests the LL coverage part provides coverage for the claims excluded by the CGL coverage part's liquor liability exclusion, based upon nonbinding dicta and relying upon Illinois legal precedent. *Masonmar* has no application to this case.

**b. NIAC’s Liquor Liability Exclusions Do Not Apply**

NIAC’s analysis of the liquor liability coverage part rests on the faulty conclusion that liquor liability coverage only applies to insureds in the business of furnishing alcohol. However, NIAC's position is not supported by the policy language. The Liquor Liability Form excludes coverage if a liquor license required for selling, serving or furnishing alcohol is suspended, expired, canceled or revoked. MSS 19. This exclusion does not apply because NNI is not in the business of selling, serving or furnishing alcoholic beverages and does not require a liquor license.

The Liquor Liability Form excludes coverage if other insurance covers the "injury" unless the other insurance provides "liquor liability" coverage whereupon the exclusion does not apply. MSS 19. Since the Western World policy and the NIAC policy contain the same CGL coverage part (CGL Coverage Form CG0001) providing identical liquor liability coverage to NNI, there is "other insurance" providing liquor liability coverage and the LL coverage part's exclusion does not apply.

**c. NIAC’s CGL Coverage Applies To Claims Arising From Fact That Narconon Furnished Alcohol To Desmond And Landmeier**

As noted above, coverage arising out of furnishing alcohol also exists under NIAC’s CGL

coverage part (which NIAC ignores). Liquor liability is provided by the CGL Coverage Form CG0001 because the "liquor liability" exclusion only excludes coverage for entities in the business of furnishing alcohol). The CGL Coverage Form CG0001 is triggered by an "occurrence" (meaning "accident") causing "bodily injury" (which includes death).

The alcohol-caused bodily injury is an "occurrence" ("accident") because furnishing alcohol to facilitate social interaction led to a later-occurring unintended drug overdose. *State Farm Fire & Cas. Co. v. Superior Court,* 164 Cal. App. 4th 317 (2008). The bodily injury is an unexpected, unforeseen or undesigned happening or consequence from either a known or an unknown cause (furnishing alcohol) and this occurrence definition is read into "occurrence" based liability coverage by operation of law. *Delgado v. Interinsurance Exchange of Auto. Club of So. Cal.,* 47 Cal.4th 302 (2009). The liquor liability allegations of the Desmond and Landmeier Lawsuits trigger a duty to defend under the NIAC CGL coverage part.

### 3. The Landmeier Lawsuit Triggers A Duty To Defend Under NIAC's Improper Sexual Conduct Coverage

NIAC admits the Landmeier Lawsuit asserts an improper sexual conduct claim covered by NIAC's policy's ISC coverage part, but unsoundly explains its failure to defend is excusable because there is no "connection between the allegations in the Petition and the liability covered by the policy." NIAC Brief, 24:12-13. This whimsical speculation does not eliminate a duty to defend. NIAC's Policy covers improper sexual conduct and the Landmeier Lawsuit alleges improper sexual conduct was a proximate cause of Landmeier's bodily injury. NIAC cannot ignore factual allegations giving rise to a duty to defend. NIAC is obligated to defend improper sexual conduct claims, and cannot refuse to defend merely because NIAC finds the undisputed factual allegations to be unconvincing.

NIAC has prudently dropped its unfounded assertion its policy is excess to Western World's based on policies' "other insurance" provisions. However, NIAC now maintains an equally unavailing "excess" argument based on the trademark License Agreement's indemnity provision which does not apply because (1) the Landmeier Lawsuit is not a trademark license claim, and (2) under California law, insurance policies' "other insurance" clauses control priority of coverage in equitable contribution claims, not extrinsic indemnity agreements between insureds.

The license agreement only applies to liabilities arising out of the use of NNI's trademarks. Landmeier does not allege trademark violations, or that Landmeier's injury was caused by trademark infringements. The claims for furnishing alcohol, illegal drugs and illicit sexual relations leading to Landmeier's drug overdose bodily injury are not trademark claims.

NIAC cites *Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal. App. 4th 23 (2010) for the erroneous proposition the Western World policy covers the License Agreement's indemnity provision (as an "insured contract"), but Western World eliminated coverage for indemnity agreements that provide for indemnity of the tort liability of others ("insured contract"). MSS 56. Even if the License Agreement were an "insured contract," NIAC's argument fails because an indemnity agreement cannot elevate one insurance policy over another where there has been no determination of an obligation under the indemnity agreement in the form of a judgment or settlement, there has been no finding that NNO is solely negligent, and the indemnity agreement is not an "insured contract" under the Western World policy. Further, while indemnity agreements might apply to a subrogation claim where an insurer stands in the shoes of its insured, it does not apply to an equitable contribution action where neither insurer is a party to the indemnity agreement.

Primacy of coverage doctrine is rooted in *Rossmoor Sanitation, Inc. v. Pylon, Inc*., 13 Cal.3d 622 (1975), a subrogation dispute between insurers standing in the shoes of their policyholders to insert their policyholders' rights against each other. *Rossmoor* is fact-dependent, limited the subrogation matters, and does not state a universal priority of coverage rule. *Maryland Casualty Co. v. Nationwide Mutual Ins. Co*., 81 Cal. App. 4th 1082, 1092 (2000). Later cases clarified an indemnity agreement between policyholders does *not* control priority of coverage in an equitable contribution action between insurers because the insurers, as here, are not parties to the indemnity agreement. *Travelers Casualty & Surety Co. v. American Equity Ins. Co*., 93 Cal. App. 4th 1142, 1157 (2001). *Travelers* held equitable contribution actions are "governed by general principles governing the interpretation and enforcement of 'other insurance" clauses between insurers." *Id.*

In *Cleveland Wrecking*, a construction worker filed a bodily injury lawsuit against a subcontractor (Cleveland) and general contractor (Webcor). Webcor tendered the claim to the Cleveland, which rejected the tender. The insurer of a different subcontractor defended and brought a

complaint for subrogation against Cleveland. In generally following *Rossmoor,* the *Cleveland Wrecking* court observed that in a subrogation action, "the insurer's right to subrogation does not even arise *unless* it has paid for its insured's loss." *Cleveland Wrecking* at 35. *Cleveland Wrecking* is inapplicable for the same reason the *Travelers* court distinguished *Rossmoor*. *Cleveland Wrecking* involves parties to the indemnity agreement, not an equitable contribution action between insurers.

Lastly, NIAC disingenuously argues it should not defend the ISC claim because it would erode the ISC limits. Since NIAC refuses to defend, and a "targeted tender" was never made by NNI, the argument lacks merit. *Armstrong World Industries v. Aetna Casualty*, 45 Cal.App. 4th 1 (1996). But NIAC is not defending NNI under its ISC coverage.

**D. The NIAC Policy's "Professional Services" Exclusion Does Not Apply Because After Hours Furnishing Of Alcohol, Illegal Drugs, And Elicit Sexual Relations Are Not "Professional Services"**

NIAC over-broadly applies the "professional services" exclusion by maintaining everything done by NNI is a professional service.[1] NIAC erroneously believes "professional services" include furnishing alcohol, illegal drugs, and illicit sexual relations. However, the law instructs us that not every action is a "professional service." The NIAC does not define "professional service" and merely recites there is no "bodily injury" coverage due to the rendering or failure to render any professional service. The "professional service" exclusion applies to the CGL coverage part, but does not apply to the separate Liquor Liability coverage part or separate Improper Sexual Conduct coverage part.

After-hours socializing with staff, furnishing alcohol, illegal drugs or illicit sexual relations are not drug treatment "services." The <u>Desmond</u> and <u>Landmeier</u> Lawsuits allege these actions were a proximate cause of the Desmond and Landmeier bodily injuries, and these allegations trigger coverage under the CGL coverage part (the only coverage part having the "professional services" exclusion) because these are not "professional services." NIAC fails to acknowledge *Marie Y. v. General Star Indem. Co.*, 110 Cal. App. 4th 928 (2003), which holds that abuse of a patient is not a "professional service" at all. *Marie Y.* is directly on point, and NIAC offers no response. Narconon staff socialized with Desmond and furnished alcohol at after-hours gatherings, and furnished alcohol,

[1] NAIC acknowledges its "professional services" exclusion is limited to CGL coverage and it does not extend to liquor liability or improper sexual conduct coverage. See NIAC Brief 16:15-17:5.

illegal drugs and illicit sexual relations to Landmeier during or after treatment. These are not professional services because activities not directly related to the performance of a specialized vocation or profession are *not* "professional services." *Bank of California v. Opie*, 663 F.2d 977 (9th Cir. 1981); see also *Food Pro International, Inc. v. Farms Ins. Exchange*, 169 Cal.app.4th 976, 987-989 (2008) [engineering consultant's failure to prevent onsite bodily injury was ordinary negligence, not result of professional services]; *Colony Ins. Co. v. Fladseth*, U.S.D.C. Case No. C 12-1157 CW (N.D. Cal. 6/21/2013) [attorney's billing practices are not professional services].

Professional services exclusions are interpreted narrowly against the insurer. *North Counties Engineering, Inc. v. State Farm General Ins. Co.*, 224 Cal.App.4th 902, 927 (2014), citing *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 808 (1982). Professional services exclusions do not apply where damages are based on conduct outside the scope of the typical services provided by that profession. *North Counties Engineering, supra*, 224 Cal.App. 4th at 930.

Other courts agree that improper conduct including sexual misconduct does not fall within the scope of "professional services." See, e.g., *Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440 (Idaho App. 1984) [physician drugged and performed sexual acts on a patient]; *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d (Minn. 1984) [ physician sexually assaulted teen male patients]; *Standard Fire Ins. Co. v. Blakeslee*, 771 P.2d 1172 (Wash. App. 1989). The fact that "nonprofessional actions" occurred at a drug treatment program does not transform nonprofessional actions into excluded professional services.

Conduct that is antithetical to the role of the professional is not a “professional service.” In *Hedmann MD v. Liberty Mutual Fire Ins. Co.*, 158 Or. App. 510 (1998), the Oregon Court of Appeals concluded a medical physician's prescription of drugs to a patient in exchange for sexual relations was not a "professional service" excluded by the physician's liability policy. Applying the same "professional services" definition used in California, the court rejected Liberty Mutual's assertion that prescribing medication is a quintessential service of the medical profession excluded by the "professional services" exclusion. Rejecting the application of labels, the court explained it is necessary to delve into the factual circumstances to consider what was actually taking place. The court agreed a doctor who prescribes medication in the course of providing medical treatment is

providing a medical service to which the "professional services" exclusion might apply. However, the wrongful prescription of a drug to seduce a woman into providing sexual services is not "professional service." In that circumstance, the prescription of drugs was not a service of a medical professional.

In the case of *In Re Michael J. Scott on Disbarment*, 52 Cal 3d 968, the California Supreme Court ordered the disbarment of a municipal court judge who issued lenient rulings to his drug dealer. The judge's actions constituted moral turpitude and cast the judiciary into disrepute. Implicit in the disbarment is the Court's conclusion the judge was not rendering "professional services" when he acted contrary to the ethical obligations of a presiding judge.

NIAC argues "after hours" socializing does not occur at a drug treatment facility even though the Desmond Lawsuit alleges the contrary. This assertion falters because NIAC bears the burden of proving it is impossible for "after hours" socializing to occur at a drug treatment facility and it has failed to meet this burden because it offers no factual support. "After hours" socializing between staff and patients is expressly alleged in the Desmond Lawsuit, and the possibility is not refuted in the Landmeier Lawsuit (which is simply silent). NIAC has no supporting facts, much less undisputed facts conclusively establishing "after hours" socializing did not occur, and its dubious argument lacks the foundational facts necessary to give consideration.

It also makes no difference whether furnishing liquor, or illegal drugs, or illicit sexual relations occurred "after hours" because none of it was part of the drug treatment program. The "professional services" exclusion only applies if furnishing liquor, or illegal drugs, or illicit sexual relations are part of the "professional services" provided by Narconon. NIAC cites no factual or legal support for the proposition that furnishing liquor, illegal drugs or illicit sexual relations are "professional services." Nor can it. The "services" of a drug treatment program do not include furnishing alcohol, illegal drugs, or illicit sexual relations to patients. NIAC must prove with supporting evidence that furnishing alcohol, illegal drugs, and illicit sexual relations are part of Narconon's drug treatment program to apply its professional services exclusion, and it has not proffered a scintilla of supporting evidence to support its wrongly-directed argument.

Providing alcohol to Desmond during after-hours socializing at a staff member's residence is

not a "service" provided by a drug treatment professional. Providing alcohol, illegal drugs and illicit sexual relations to Landmeier during or after hours (both are possible) is also not a "service" of a drug treatment professional. These actions do not treat drug addiction. These actions provide personal or social gratification, either during or after office hours, or both. In sum, the "services" of a drug treatment professional do not include acts which are fundamentally contrary to the "service" rendered by such a professional.

## IV. CONCLUSION

Based on the foregoing, Western World respectfully requests the Court deny NIAC's Cross-Motion for summary Judgment and grant Western World's Motion for Summary Judgment.

Dated: January 11, 2016

SELVIN WRAITH HALMAN LLP

By: /s/ David A. Evans
James L. Wraith
David A. Evans
Attorneys for Plaintiff/Counter-Defendant
Western World Insurance Company

187503

| | |
|---|---|
| **Re:** | **Western World Insurance Company v. Nonprofits Insurance Alliance of California** |
| **Court:** | **United States District Court, Northern District of California - San Jose Division** |
| **Action No.** | **5:14-cv-04466-EJD** |

## PROOF OF SERVICE

I declare that I am over the age of 18, am not a party to the above-entitled action, and am an employee of Selvin Wraith Halman LLP whose business address is 505 14th Street, Suite 1200, Oakland, Alameda County, California 94612.

On January 11, 2016, I served the following document(s):

**WESTERN WORLD INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NIAC'S CROSS-MOTION FOR SUMMARY JUDGMENTAND REPLY TO NIAC'S OPPOSITION TO WESTERN WORLD'S MOTION FOR SUMMARY JUDGMENT**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF WESTERN WORLD INSURANCE COMPANY'S OPPOSITION TO NIAC'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO NIAC'S OPPOSITION TO WESTERN WORLD'S MOTION FOR SUMMARY JUDGMENT**

**PLAINTIFF/COUNTER-DEFENDANT WESTERN WORLD INSURANCE COMPANY'S RESPONSE TO NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA'S MOVING SEPARATE STATEMENT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**REPLY TO NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA'S RESPONSE TO WESTERN WORLD INSURANCE COMPANY'S MOVING SEPARATE STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**By ELECTRONIC FILE TRANSFER TO ECF FILE & SERVE:** By transmitting a true copy the document(s) listed above for service on all parties in this case pursuant to applicable statutes, local rules and/or order of this Court.

| | |
|---|---|
| Ms. GailAnn Y. Stargardter<br>Archer Norris<br>2033 North Main Street, Suite 800<br>Walnut Creek, CA 94596<br>Telephone No.: (925) 930-6600<br>Fax No.: (925) 930-6620<br>Email: gstargardter@archernorris.com | Attorneys for Defendant and Counterclaimant:<br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 11, 2016

Laura L. Sanchez