GailAnn Y. Stargardter (Bar No. 250749)
gstargardter@archernorris.com
Andrew J. King (Bar No. 253962)
aking@archernorris.com
ARCHER NORRIS
2033 North Main Street, Suite 800
Walnut Creek, CA
Telephone: 925-930-6600
Facsimile: 925-930-6620

Attorneys for Defendant
NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,<br><br>Defendant.<br><br>---<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,<br><br>Counterclaimant,<br><br>v.<br><br>WESTERN WORLD INSURANCE COMPANY,<br><br>Counter-Defendant | Case No. 5:14-CV-04466—EJD<br><br>**DEFENDANT/COUNTERCLAIMANT NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA'S REPLY TO WESTERN WORLD INSURANCE COMPANY'S MOTION OPPOSITION TO ITS CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**[FED.R.CIV.P. 56]**<br><br>Date: February 25, 2016<br>Time: 9:00 a.m.<br>Dept. Courtroom 4—5th Floor<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........ 1

A. NIAC has no duty to defend NNI under the CGL Coverage Form ........ 4

1. The *Desmond* Action fails to assert claims for damages caused by an "occurrence" against NNI ........ 4

2. The Designated Professional Services Exclusion in the CGL Coverage Form removes all potential for coverage for the claims asserted against NNI ........ 4

a. The failure to provide a safe, monitored and controlled living environment in a residential facility is a failure to provide professional services ........ 5

b. All potential for coverage for the claims of negligent hiring, training and supervision is precluded by the DPSE ........ 9

c. All potential for coverage for the claims for fraud and negligent misrepresentation is precluded by the DPSE ........ 10

B. The LL Coverage Form provides no coverage for the claims asserted against NNI in the *Landmeier* and *Desmond* Actions ........ 12

1. *N. E. Ins. Co. v. Masonmar, Inc.* is directly on point ........ 12

2. The Exclusions in the LL Coverage Form apply ........ 13

C. Either there is no coverage under the ISC Coverage form for the claims asserted in the *Landmeier* Action or any coverage afforded is excess to the coverage afforded by WWIC ........ 14

**CONCLUSION** ........ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Econ. Ins. Co. v. Schoolcraft*
551 F. Supp. 2d 1235 (D. Colo. 2007 ........ 3, 10

*Am. Rehab. &Physical Therapy, Inc. v. Am. Motorists Ins. Co.*
829 A.2d 1173 (Pa.Super.Ct. 2003) ........ 10

*Antles v. Aetna Cas. & Sur. Co.*
221 Cal.App.2d 438 (1963) ........ 1

*Armstrong World Industries v. Aetna Cas.*
45 Cal.App.4th 1 (1996) ........ 15

*Bank of California v. Opie*
663 F.2d 977 (9th Cir. 1981) ........ 6

*Bank of the West v. Superior Court*
2 Cal.4th 1254 (1992) ........ 12

*Begun v. Scottsdale Ins. Co.*
No. C-12-03649 EDL, slip op. (N.D. Cal., May 16, 2013) ........ 1

*Begun v. Scottsdale Ins. Co.*
613 Fed. Appx. 643 (9th Cir. 2015) ........ 9

*Bell v. Sharp Cabrillo Hosp.*
212 Cal.App.3d 1034 (1989) ........ 10

*Chatton v. Nat'l Union Fire Ins. Co.*
10 Cal.App.4th 846 (1992) ........ 4

*Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.*
987 F.2d 1124 (5th Cir. 1993) ........ 10

*Comm.Union Ins. Co. v. Roberts*
7 F.3d 86 (5th Cir. 1993) ........ 3, 10

*Duncanville Diagnostic Crt., Inc. v. Atl. Lloyd's Ins. Co. of Texas*
875 S.W.2d 788 (Tex. App. 1994) ........ 2, 9

*Dynamic Concepts v. Truck Ins. Exch.*
61 Cal.App.4th 999 (1998) ........ 4

*Fibreboard Corp. v. Hartford Acc. & Indem. Co.*
16 Cal.App.4th 492 (1993) ........ 4

# TABLE OF AUTHORITIES

**Page**


*Food Pro Int'l v. Farmers Ins. Exch.*
169 Cal.App.4th 976 (2008) ... 1, 7

*Hedmann MD v. Liberty Mutual Fire Ins. Co.*
158 Or.App. 510 (1998) ... 2, 8, 9

*Hirst v. St. Paul Fire & Marine Ins. Co.*
683 P.2d 440 (Idaho App. 1984) ... 7

*In Re Michael J. Scott Disbarment*
52 Cal.3d 968 (1991) ... 9

*Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*
182 Cal.App.4th 23 (2010) ... 14

*Miller Cas. Ins. Co. of Texas v. Flores*
876 P.2d 227, 230 (N.M.1994) ... 10

*N. E. Ins. Co. v. Masonmar, Inc.*
1:13-CV-364 AWI SAB, 2014 WL 1247604 (E.D. Cal. 2014) ... 3, 12, 13

*Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.*
2 F.3d 105 (5th Cir. 1993) ... 10

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*
41 Cal.3d 903 (1986) ... 1, 12

*Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.*
105 F. Supp. 3d 464 (E.D. Pa. 2015) ... 3, 11

*Smith v. St. Paul Fire & Marine Ins. Co.*
353 N.W.2d 130 (Minn. 1984) ... 7, 8

*Standard Fire Ins. Co. v. Blakeslee*
771 P.2d 1172 (Wash. App. 1989), ... 8

*Upper Deck Co. v. Federal Ins. Co.*
358 F.3d 608, 613-16 (9th Cir. 2004) ... 4

*Wausau Underwriters v. Unigard Sec. Ins. Co.*
68 Cal.App.4th 1030 (1998) ... 1, 4

**INTRODUCTION**

In order to find coverage under the NIAC policy this Court has to ignore the actual claims asserted against Narconon International ("NNI") in the *Landmeier* and *Desmond* Actions. It must also ignore well-settled case law on the duty to defend, the construction of insurance policies, and the construction and application of the professional services exclusion in a CGL Coverage Form.

An insurer has a duty to defend claims for damages that are actually asserted against its insured, not claims that could or might be asserted if the pleading were amended. *Wausau Underwriters v. Unigard Sec. Ins. Co.*, 68 Cal.App.4th 1030, 1036, 1043 (1998). An insurance policy is to be construed as a whole, giving meaning to each of its parts. *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 916- 917 & fn. 7 (1986). Under California law, the definition of "professional services" is a broader definition than "profession" and encompasses services performed for remuneration. *See, e. g., Begun v. Scottsdale Ins. Co.*, No. C-12-03649 EDL, slip op. (N.D. Cal., May 16, 2013), *aff'd*, 613 Fed.Appx. 643 (9th Cir. 2015). The act that precipitated plaintiffs' injuries need not have been one of professional malpractice, as long as the plaintiffs were injured by NNI in the performance of its "professional service." *Food Pro Int'l v. Farmers Ins. Exch.*, 169 Cal.App.4th 976, 991 (2008). In determining whether a professional services exclusion applies, the focus is on whether the injury "occurred during the performance of the 'professional services', not the instrumentality of injury." *Antles v. Aetna Cas. & Sur. Co.*, 221 Cal.App.2d 438, 443 (1963).

The gravamen of the claims asserted against NNI in the *Landmeier* and *Desmond* Actions is that NNI failed to provide drug and alcohol rehabilitation services to Heather Landmeier and Patrick W. Desmond, with disastrous results. The injuries sustained by Landmeier and Desmond occurred during the time NNI was providing—or in this instance, failing to provide—drug rehabilitation services to them. The *Landmeier* Action asserts claims against NNI that sound in breach of contract and negligence—both of which constitute an occurrence under California law. The *Desmond* Action only asserted claims against NNI based on Fraud and Civil RICO violations, neither of which constitute an "occurrence" under California law—and neither of which constitute claims for "property damage" as that term is defined by California case law.

Even assuming, as WWIC urges this Court to do, that the FAC in the *Desmond* Action can be read to assert claims for "bodily injury" to Desmond as a result of NNI's negligent conduct so as to fall within the CGL Coverage Form's insuring agreement, because those claims all arise from NNI's failure to provide the professional services it contracted to perform, all potential for coverage is removed by the Designated Professional Services Exclusion ("DPSE") included in the CGL Coverage Form.

WWIC attempts to circumvent the application of the DPSE by contending that the furnishing of drugs and alcohol to patients by counselors and allowing patients to engage in sex are not professional services. WWIC misses the point. Here the professional services for which the *Landmeier* and *Desmond* plaintiffs contracted was for their children to receive treatment for their addictions in a safe, controlled, in-patient environment where they would be subject to treatment and supervision 24 hours a day, seven days a week. Properly supervising employees to prevent patient harm is an integral part of the drug rehabilitation services NNI promised to provide. But instead of providing those services, plaintiffs allege the NNI program was really a means to indoctrinate patients into the teaching of the Church of Scientology, not a true drug rehabilitation program and, instead of providing a supervised environment, NNI provided an environment that encouraged drug and alcohol abuse. This is the consummate failure to provide the professional services sought by the *Landmeier* and *Desmond* plaintiffs.

Additionally, the cases on which WWIC relies for this point are inapposite. The cases cited by WWIC analyze a professional liability insurer's duty to defend claims for sexual assault that had nothing to do with the insured's provision of professional services and which, in certain contexts, were not even related to the insured's provision of professional services (*Hedmann MD v. Liberty Mutual Fire Ins. Co.*, 158 Or.App. 510 (1998)).

WWIC's attempt to circumvent the application of the DPSE also fails because the professional services exclusion operates to exclude coverage not only for the claims of negligence in rendering the professional services but also for the claims for negligent hiring, training, and supervision and negligent failure to establish adequate policies and procedures. *See, e.g., Duncanville Diagnostic Crt., Inc. v. Atl. Lloyd's Ins. Co. of Texas*, 875 S.W.2d 788, 791-792

(Tex. App. 1994) and *Commercial Union Insurance Company v. Roberts,* 7 F.3d 86 (5th Cir. 1993*)*. Additionally, any claims for misrepresentation concerning the nature of the services to be provided relate directly to professional services and fall within the DPSE. *See Am. Econ. Ins. Co. v. Schoolcraft*, 551 F. Supp. 2d 1235, 1241-42 (D. Colo. 2007) and *Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 473 (E.D. Pa. 2015). These are precisely the claims asserted against NNI in the *Landmeier* and *Desmond* Actions.

The claims asserted by the *Landmeier* and *Desmond* plaintiffs are not covered by the LL Coverage Form. The LL Coverage Form only applies when the insured is in the business of selling, serving, or furnishing alcohol. *N. E. Ins. Co. v. Masonmar, Inc.*, 1:13-CV-364 AWI SAB, 2014 WL 1247604, at *9 (E.D. Cal. 2014). NNI is in the business of furnishing drug rehabilitation services. The claims asserted against NNI arise out of its failure to provide drug and alcohol treatment to residential patients—not from its acts of selling or serving alcohol as a business activity. WWIC has failed to cite any case law that counters the holding in *Masonmar*. WWIC's interpretation of how the LL Coverage Form interacts with the CGL Coverage Form does not make sense given that policies must be read as a whole, giving meaning to each part.

Similarly, there is no coverage for the claims asserted against NNI in the *Landmeier* Action under the ISC Coverage Form because the Petition filed by the *Landmeier* Plaintiffs does not assert a claim for damages against NNI as a result of improper sexual conduct. The fact that the *Landmeier* Petition states that Landmeier was allowed to enter into sexual relationships while at NNO does not, in and of itself, create a claim for damages as a result of improper sexual conduct. None of the causes of action asserted against NNI are for damages as a result of improper sexual misconduct. Rather, the claims against NNI are for failing to provide Landmeier day to day drug rehabilitation assistance through the Narconon Drug Rehabilitation Program.

Even assuming this Court finds that the ISC Coverage Form provides coverage for the claims asserted against NNI in the *Landmeier* Action, principles of equity compel that the $250,000 wasting limits available under the NIAC policy not be used to satisfy NNI's defense costs, which are fully covered under the WWIC policy, but be reserved for use in settling the claim or paying any judgment entered against NNI.

**A. NIAC has no duty to defend NNI under the CGL Coverage Form.**

**1. The *Desmond* Action fails to assert claims for damages caused by an "occurrence" against NNI.**

The only claims asserted against NNI in the *Desmond* Action were for Fraud and Civil RICO. These claims do not satisfy the "occurrence" or "property damage" requirements of the insuring agreement in the CGL Coverage Form. *See Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal.App.4th 846, 861(1992) ("claims of fraud or negligent misrepresentation, which is a sub-species of fraud are not "occurrences"); *Fibreboard Corp. v. Hartford Acc. & Indem. Co*., 16 Cal.App.4th 492, 511 (1993) (a civil conspiracy, including claims asserting a conspiracy to act negligently, cannot occur by accident or "occurrence"); *Upper Deck Co. v. Federal Ins. Co.*, 358 F.3d 608, 613-16 (9th Cir. 2004) (applying California law); and *Dynamic Concepts v. Truck Ins. Exch.* 61 Cal.App.4th 999 (1998) (RICO claims do not allege any covered damages since economic loss does not qualify as "bodily injury" or "property damage" under a CGL policy).

The *Desmond* plaintiffs never asserted claims for "bodily injury" as a result of an "occurrence" against NNI. The *Desmond* plaintiffs had ample opportunity to amend their pleadings to include such claims against NNI, but failed to do so. NIAC's duty to defend is determined by the actual claims for damages asserted against NNI; NIAC has no duty to defend against potential claims which were not made and for which no damages were sought. *Wausau Underwriters v. Unigard Sec. Ins. Co.*, 68 Cal.App.4th 1030, 1036, 1043 (1998).

**2. The Designated Professional Services Exclusion in the CGL Coverage Form removes all potential for coverage for the claims asserted against NNI.**

The DPSE in the NIAC Policy precludes coverage for "'bodily injury'… due to the rendering or failure to render any professional service." Plaintiffs in the *Landmeier* and *Desmond* Actions contracted with NNI, NNO and NNG to provide in-patient drug and alcohol treatment services in a residential treatment setting based on NNI's, NNO's and NNG's representations that as part of treating their patients' addictions they also provided monitoring and support to their "residents". (Fact Nos. 22, 46 and 47). The crux of the Actions is that Landmeier and Desmond were injured because of NNI's failure not only to provide drug rehabilitation services but also due to its failure to closely supervise and monitor Landmeier and Desmond while they were receiving

treatment.

The *Landmeier* Petition asserts damages against NNI for failing to use reasonable care in providing Landmeier day to day drug rehabilitation assistance through the Narconon Drug Rehabilitation Program (Fact 31); failing to act in a reasonable and proper manner when hiring training, supervising, and retaining employees who NNO and NNI knew would be providing Landmeier with assistance and supervision, knowing said employees had provided drugs to other residents in the past(Fact 32); and failing to provide Landmeier with all necessary medical supervision, treatment and support in her day to day life activities (Fact 35).

Similarly, the claims of negligence which WWIC contends were asserted against NNI in the *Desmond* Action arose from NNI's failure to provide drug rehabilitation services, and the failure to hire, supervise, train and monitor the provision of those drug rehabilitation services. (WWIC Fact Nos. 42, 43, and Evans Decl. ¶62, Desmond MSJ Brief, pp. 6-8, 27-29 and 33, WWIC's RJN, ¶3 and WWIC Fact No. 44, Evans Decl. ¶63-67, Desmond MSJ Order, pp. 7 and 9, RJN, ¶4)[1]

**a. The failure to provide a safe, monitored and controlled living environment in a residential facility is a failure to provide professional services.**

WWIC concedes that the provision of drug rehabilitation services is a "professional service" as that term is defined by California law. WWIC instead contends that the "after hours" provision of drugs and alcohol to residential patients and allowing residential patients to enter into sexual relationships are not "professional services" and thus the DPSE does not apply. WWIC's analysis is flawed.

First, in a residential drug treatment facility there are no "after hours". A residential treatment facility is a live-in health care facility providing therapy for substance abuse or other

---

[1] In denying NNI's MSJ/MPSJ on the issue of whether it owed a duty to Desmond , the Court held: "There is evidence presented from which a jury could conclude that NNI, through NNG undertook the duty of ***providing services*** to Patrick Desmond and failed to exercise reasonable care in carrying out that presumed duty." [Emphasis added], and

"None of the authorities NNI cites involved a situation where a defendant allegedly misrepresented itself as a provider of supervised inpatient treatment for alcohol and drug addiction and then allegedly—instead of providing that treatment—contributed to plaintiff's injury by facilitating access to drugs and alcohol."

behavioral problems.[2] Twenty-four hour supervision of Landmeier and Desmond was thus within the scope of the services provided by a residential drug treatment program. And, indeed, NNO and NNG promised that as part of their drug treatment programs they would provide 24 hour personal care and supervision to its residential patients. (Fact Nos. 22, 46 and 47). NNI failed to provide those services.

The decision in *Bank of California v. Opie*, 663 F.2d 977 (9th Cir. 1981) actually supports NIAC's position that NNI's failure to provide 24 hour supervision of its residential patients and staff is a failure to provide professional services. In *Bank of California*, a judgment creditor filed suit seeking coverage under an errors-and-omission policy issued to a mortgage banking corporation for losses it sustained due to the insured's failure to properly apply the proceeds of loans secured for its normal business purposes from a commercial bank. *Id*. at 980. The issue on appeal was whether Opie was performing "professional services" within the meaning of the policy when it breached its loan agreement with the Bank. *Ibid*. The court held that the responsibility to manage the loan proceeds was clearly part of the insured's usual day-to-day business operations, and, therefore, was a "professional service" within the meaning of the policy. *Id*. at 982. The court held:

> Thus, not only were [the insured's] activities as a mortgage banker, broker and correspondent dependent upon proper management of credit, but, in addition, these activities largely consisted of management of credit. [The insured's] liability for the mismanagement of loan proceeds clearly arose out of [its] performance of its vocation as a mortgage banker, and, equally clearly, was one of the special risks inherent in the practice of that profession. To conclude otherwise would ignore the nature of the mortgage-banking business, the plain meaning of the policy, and the reasonable expectations of the insured.

*Ibid*.

The same is true here. NNI provides drug and alcohol rehabilitation services. It provides these services through residential programs. NNI promised to provide 24 hour care and supervision to Landmeier and Desmond as part of their treatment program. Providing a safe, drug

[2] "Residential treatment facility" is defined as "a specialized residential treatment program for Behavior disorders including substance abuse. It may include therapeutically planned group living and Learning situations including Teaching of adaptive skills to help Patient functioning in the community. (From Kahn, A. P. and Fawcett, J. Encyclopedia of Mental Health, 1993, p. 320.)

and alcohol free environment was part of NNI's vocation as a provider of drug and alcohol rehabilitation services and the risk that, by failing to provide such an environment its residential patients would relapse into drug and alcohol use, was one of the special risks inherent in the practice of NNI's profession.

The remainder of the cases cited by WWIC are inapposite. In *Food Pro*, *supra*, 169 Cal.App.4th 976, the Court held that the injury must arise from the professional service, "not merely at the same time the insured was otherwise providing professional services to a third party." *Id*. at 991. In *Food Pro* the insured was sued for failing to warn a worker about a hole in the floor created by another subcontractor—not for injuries that arose out of any of the services it was performing on the site. *Id*. at 980, 988-989. Here, Landmeier and Desmond were injured due to the direct failure by NNI to provide drug and alcohol rehabilitation services, including the provision of a safe environment within which residents could overcome their addictions.

In *Hirst v. St. Paul Fire & Marine Ins. Co*., 683 P.2d 440 (Idaho App. 1984), a physician drugged and sexually assaulted a young boy named Mark who had been brought to him for treatment. 683 P.2d at 442. The court held that the tortious actions of the physician in sexually assaulting Mark were not covered under his malpractice insurance, because of the lack of causal relationship between the treatment sought and the injury:

> [E]ven if we assume that "professional services" embrace all enumerated activities within the "practice of medicine," including "treat[ment] [of] any human disease [or] injury," there still must be a causal relationship between such treatment and the harm alleged by the malpractice claimant. Here, as the district court noted, there was no specific showing in the record that Mark was damaged in any way simply from the administration of the drugs. Nor was there any showing that [the insured] negligently treated the boy's injuries or illness. The district court found that, in spite of the Hirsts' general allegations, the action in reality was one in tort for sexual molestation and that the use of the drugs merely rendered Mark more susceptible to [the insured's] "advances." We agree.

*Id*. at 444. Conversely, here, the injuries sustained by Landmeier and Desmond are causally related to the professional services NNI was to provide but failed to provide—24 hour care, treatment and supervision.

*Smith v. St. Paul Fire & Marine Ins. Co*., 353 N.W.2d 130 (Minn. 1984), a malpractice

action against a medical doctor, addressed coverage under a professional liability policy for sexual abuse of three minor patients that occurred in the course of their treatment for physical ailments/injuries. The court held that

> In a professional liability policy issued to a medical doctor, the term "professional services" plainly refers to medical treatment of physical ailments by the doctor. "[D]amages resulting from * * * providing * * * of professional services" contemplates improper or incorrect medical treatment of a physical ailment by the insured doctor. "[D]amages resulting from * * * withholding of professional services" contemplates failure on the part of the insured doctor to discover or treat an ailment that should have been discovered or treated.

Because it was undisputed that the doctor's acts of sexual contact with his patients were not part of medical treatment, the Court held there was no coverage under the professional liability policy. *Ibid*. Again, here, Landmeier and Desmond were injured because the NNI program, as alleged by plaintiffs, was not a drug rehabilitation program and because NNI, NNO and NNG failed to provide all aspects associated with a residential drug treatment facility.

In *Standard Fire Ins. Co. v. Blakeslee*, 771 P.2d 1172 (Wash. App. 1989), the court held that medical malpractice insurance policies do not cover the insured physician's sexual contact with patients. NNI is not being sued for sexual abuse; NNI is being sued because it failed to provide drug and alcohol rehabilitation services. (NIAC Fact Nos. 31, 32, and 35; WWIC Fact Nos. 42-44).

In *Hedmann MD v. Liberty Mutual Fire Ins. Co.*, 158 Or.App. 510 (1998), a 27–year–old woman filed a complaint against the insured alleging that, outside of his medical practice, he negligently prescribed a drug for her "so as" to maintain a sexual relationship with her and exert control over her. Hedman provided medical services to Kaiser Permanente medical insurance subscribers. *Id*. at 512. Plaintiff was not a patient of the doctor or his practice group; nor was she a member of Kaiser Permanente. *Ibid*. Hedmann tendered defense to Liberty Mutual, who insured him under a homeowners policy and catastrophe liability policy. Liberty Mutual declined coverage under a professional services exclusion in both policies. Liberty Mutual contended that the act of prescribing medication was a "quintessential" service of the medical profession and therefore a professional service, which was excluded from coverage. *Id*. at 515.

The Court disagreed, stating:

> A professional service is an act taken in the context of the person's profession. As alleged in the complaint, plaintiff was not McIntosh's physician and could not have been, because his practice was with Northwest Permanente, and McIntosh was not a member of the Kaiser Foundation Health Plan. As alleged in the complaint, plaintiff prescribed Xanax, not as McIntosh's physician, but so as to enable him to have a sexual relationship with her and control her. As reasonably interpreted, the nature of the alleged acts of misconduct could reasonably be understood to fall outside the policy exclusions for professional services; the trial court therefore erred in ruling that defendant had no duty to defend.

*Id*. at 514-515. Again, NNI is not being sued for sexual abuse; NNI is being sued because it failed to provide drug and alcohol rehabilitation services. (NIAC Fact Nos. 31, 32, and 35; WWIC Fact Nos. 42-44).

Finally, the decision in *In Re Michael J. Scott Disbarment*, 52 Cal.3d 968 (1991) ("*Scott*") simply has no relevance to the issues raised in the parties' Cross Motions for Summary Judgment. In *Scott*, the Supreme Court ordered that Scott be disbarred because his use of cocaine cast the legal profession and the judiciary in disrepute in the community and because he violated judicial canons by presiding over a proceeding from which he was obligated to excuse himself. *Id*. at 979. The case does not discuss interpretation of an insurance contract or the application of a DPSE.

**b. All potential for coverage for the claims of negligent hiring, training and supervision is precluded by the DPSE.**

Case law does, however, support NIAC's position that NNI's negligent failure to hire, train and supervise the treatment counselors at NNO and NNG falls within the DPSE. *See, e.g., Begun v. Scottsdale Ins. Co.,* 613 Fed. Appx. 643,644 (9th Cir. 2015) (insurer had no duty to defend because the claims centered on personal failure, or failure as alter egos of a corporation, to render payroll services; it is irrelevant whether the insured personally rendered these services because the underlying action alleged deficiencies "arising out of" the failure to provide professional services); *Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Texas*, 875 S.W. 2d 788, 791-792 (holding that because plaintiff's death could not have resulted from the negligent hiring, training and supervision or from the negligent failure to institute adequate policies and procedures without the negligent rendering of professional services, the professional

services exclusion operated to exclude coverage not only for the claims of negligence in rendering the professional services but also for the related allegations of negligent hiring, training, and supervision and negligent failure to establish adequate policies and procedures); *Miller Cas. Ins. Co. of Texas v. Flores*, 876 P.2d 227, 230 (N.M.1994) (the hiring and supervision of employees to assist in giving care to his patients constituted an integral part of providing medical services to these patients); *Bell v. Sharp Cabrillo Hosp.*, 212 Cal.App.3d 1034 (1989) ("a hospital has a professional responsibility to insure the competence of its medical staff," and the failure to fulfill "that responsibility constitutes 'professional negligence' involving conduct necessary to the rendering of professional services"). The professional services exclusion also applies to allegations of the negligent training, supervision and monitoring of others working under the professionals. *See Am. Rehab. &Physical Therapy, Inc. v. Am. Motorists Ins. Co.*, 829 A.2d 1173 (Pa.Super.Ct. 2003) *rev'd on other grounds*, 578 Pa. 154, 849 A.2d 1202 (2004). See also, *Comm.Union Ins. Co. v. Roberts*, 7 F.3d 86 (5th Cir. 1993); *Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.*, 2 F.3d 105 (5th Cir. 1993); *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124 (5th Cir. 1993).

**c. All potential for coverage for the claims for fraud and negligent misrepresentation is precluded by the DPSE.**

Similarly, case law supports NIAC's position that the claims for fraud and misrepresentation asserted against NNI in both the *Landmeier* and *Desmond* Actions is precluded by the DPSE. In *Am. Econ. Ins. Co. v. Schoolcraft*, 551 F. Supp. 2d 1235 (D. Colo. 2007), the insured doctors sought coverage under a CGL policy issued by American Economy for claims that they negligently misrepresented and negligently performed *in-vitro* fertilization services provided to plaintiffs. *Id*. at 1237.[3] The American Economy policy contained a professional services exclusion similar to the DPSE included in the NIAC policy. *Id.* at 1240. The court held plaintiffs' claim for negligent misrepresentation constituted an injury due to the rendering of a medical service and was therefore subject to the professional services exclusion in the American Economy policy. *Id*. at 1241-1242.

[3] The Complaint alleged that Schoolcraft falsely told plaintiffs he would provide "state-of-the-art" in vitro fertilization services and perform appropriate genetic screening which he subsequently did not do. *Id.* at 1241.

In *Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 472-73 (E.D. Pa. 2015), the insureds provided cosmetic surgery procedures and medical spa services, including liposuction surgery, at various medical facilities. They were sued by a number of liposuction patients for a bacterial infection that occurred during the procedures and for fraud and negligently misrepresenting the quality of their services. *Id*. at 466. Sentinel issued a CGL policy and a Commercial Umbrella policy to Monarch Medical Spa. The policies included professional services exclusions. Sentinel denied coverage. The insureds argued that the claims for fraud and negligent misrepresentation regarding the nature of their services were not subject to the exclusion. The Court disagreed, holding:

> To now claim that a fraud claim regarding the nature of the quality of professional services is excluded from the definition of "professional services" seemingly ignores the obvious: the marketing of the professional services, regardless of its veracity, is directly connected to the rendering of medical services. Claims relating to those professional services fall within the Professional Services exclusion.

*Id*. at 473.

The claims asserted against NNI arise out of its failure to provide drug and alcohol rehabilitation services to Landmeier and Desmond. The provision of an around the clock, safe, monitored, and supervised living environment was an integral part of the services provided by NNI. The Actions allege that plaintiffs were injured because NNI failed to treat Landmeier's and Desmond's drug/alcohol addictions and also failed to provide twenty-four hour care, monitoring and supervision. The Actions also assert that NNI negligently hired, trained and supervised the personnel responsible for providing drug rehabilitation services to Landmeier and Desmond. Each Action also alleges that NNI fraudulently (Desmond) or negligently misrepresented (Landmeier) the nature of the services provided by NNI. Each of the claims asserted against NNI in the *Landmeier* and *Desmond* Actions arise out of NNI's provision of professional services and are subject to the DPSE. Accordingly, NIAC had no duty to defend or indemnify either the *Landmeier* or *Desmond* Actions under the CGL Coverage Form included in its policy.

**B. The LL Coverage Form provides no coverage for the claims asserted against NNI in the *Landmeier* and *Desmond* Actions.**

**1. *N. E. Ins. Co. v. Masonmar, Inc.* is directly on point.**

A court must interpret the language of a policy in context, with regard to its intended function in the policy. *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 916- 917 & fn. 7 (1986). The "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265 (1992). This is exactly what the court in *N.E. Ins. v. Masonmar*, *supra*, 2014 WL 1247604 did.

In *Masonmar*, the insured was sued for injuries sustained by patrons of its bar who alleged they were stabbed by other patrons of the bar. *Id*. at *1. Plaintiffs asserted that Masonmar over-served the patrons who attacked them, failed to provide adequate security, and otherwise failed to protect them from being assaulted by bar patrons. *Ibid*. Masonmar tendered defense of the suit to North East Insurance Company. *Ibid*. North East issued a policy to Masonmar that included a CGL Coverage Form and a LL Coverage Form. *Ibid*. The limits of insurance under the LL Coverage form were $1,000,000; the limits under the CGL Coverage Form were $1,000,000—however these limits were limited under an Assault and Battery Limitation Endorsement to $100,000. *Ibid*.

A dispute arose between Masonmar and North East as to whether coverage was afforded under both the CGL Coverage Form and the LL Coverage Form (referred to in the Masonmar opinion as the "LLC Form") or limited to the CGL Coverage Form. In order to determine the issue, the court reviewed the structure of the policy as a whole and the interplay between the CGL Coverage Form and LL Coverage Form. This is exactly the same analysis this Court must perform. And, for this reason, contrary to WWIC's assertion, the *Masonmar* decision is directly applicable to the issue presented in this case.

The *Masonmar* Court held that "the structure of the policy shows that the LLC is designed to provide coverage for the claims that the CGL's Liquor Liability Exclusion would otherwise exclude." *Id*. at *8. The Court held that its interpretation was consistent with the plain

language of the LLC, consistent with the structure of the policy as a whole and consistent with the reasonable expectations of the insured. *Ibid*. As the court noted, "It is unknown why an LLC Form would be necessary, unless it is to provide for the coverage that the standard CGL policy otherwise would exclude." As WWIC acknowledges, any allegations that NNI is liable for the injuries sustained by Landmeier and Desmond as a result of the furnishing of alcohol at its treatment centers—except for the application of the DPSE exclusion—would be covered under the CGL Coverage Form.[4] Therefore under *Masonmar*, those allegations are not covered by the LL Coverage Form.

Critically, the *Masonmar* Court's determination of the interplay between the CGL Coverage form and the LL Coverage form was based not on Illinois law, as WWIC contends, but on California law. (See Court's discussion of interpretation of insurance policies at *4). WWIC offers no other reasonable interpretation of the interplay between these two coverage forms.

**2. The Exclusions in the LL Coverage Form apply.**

Exclusion 2.d. precludes coverage when any required liquor license is not in effect, or is expired, suspended or revoked. Under the *Masonmar* rationale, which is based on the interpretation of California law, this exclusion emphasizes the fact that the LLC Form only applies when the insured is in the business of selling, serving or furnishing alcohol. Here, there is simply no evidence that NNI is in the business of selling, serving or furnishing alcohol.

Exclusion 2.f. precludes coverage for any injury liability imposed on the insured by reason of selling, serving or furnishing alcohol when other insurance afforded covers that injury. Under *Masonmar*, the LLC Form applies only when the insured is in the business of selling, serving or furnishing alcohol. *Masonmar*, *supra* at *9. The exclusion includes a "give back" of coverage in that the exclusion does not apply if that other insurance responds to liability imposed on the insured due to its selling, serving or furnishing of alcohol. In other words, if NNI was in the business of selling, serving or furnishing alcohol, and if the WWIC Policy had included a LLC Form, Exclusion 2.f would not apply to the LLC Form in the WWIC Policy. Instead, under the

[4] At 10:11-12 of its Opposition, WWIC states: "The liquor liability allegations of the Desmond and Landmeier Lawsuits trigger a duty to defend under the NIAC CGL coverage part."

give back provision, coverage under both LLC Forms would apply to the loss.

Because the WWIC Policy did not include a Designated Professional Service Exclusion, the CGL Coverage Form in the WWIC Policy provided coverage for any claims that might have been asserted against NNI for its liability in furnishing alcohol to Landmeier or Desmond. Hence, exclusion 2.f. applies because other insurance provided by WWIC is not afforded by a LLC Form.

### C. Either there is no coverage under the ISC Coverage form for the claims asserted in the *Landmeier* Action or any coverage afforded is excess to the coverage afforded by WWIC.

The insuring agreement in the Improper Sexual Conduct Liability Coverage Form ("ISC Form") states that NIAC will pay those sums the insured becomes legally obligated to pay as monetary damages because of "bodily injury" arising from "improper sexual conduct." As discussed above, the *Landmeier* Petition does not assert a claim for damages against NNI based upon improper sexual misconduct; rather it asserts that NNI failed to render the professional services it promised to provide. Accordingly, the ISC Coverage Form has not been triggered.

Even assuming the allegations of the *Landmeier* Action give rise to a potential for coverage under the NIAC policy, the coverage available under the ISC Coverage Form is excess to the coverage afforded by the WWIC policy for two reasons, both of which are based on equity.

*Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal.App.4th 23 (2010) ("*Interstate*") is directly on point. The Court held that an entity which, like NNO, agrees to indemnify the other party to the underlying transaction has a liability of greater primacy than an independent insurer that insures against the loss. *Id*. at 44. Contrary to WWIC's assertion, the licensing agreement is an "insured contract" under its policy. The policy defines "insured contracts" to include licensing agreements. (Fact No. 17, Ex. 4, p. 29). WWIC also mischaracterizes the Licensing Agreement. NNO's indemnification obligations are not limited solely to misuse of trademarks. Rather, NNO agreed to indemnify NNI "against all liabilities, claims and actions of any kind, and costs, including attorneys' fees, which arise from or relate to the use of the Marks, <u>*or relate to or arise from any of the services or products associated with those Marks*</u>." (Fact No. 4, Ex. 2, emphasis added.) And, as the Licensing Agreement makes

clear, the use of the Hubbard Philosophy, Technology and Hubbard Writings in the provision of drug rehabilitation services by the Centers is associated with the use of the Marks. (See Fact Nos. 3 & 4 and Ex. 2, ¶¶A, B, C, D and 5(b) and 5(c) of the Licensing Agreement.) Accordingly, NNO has an obligation to defend and indemnify NNI against claims of any kind arising out of their use of the LRH methodology in the provision of drug rehabilitation services.

*Armstrong World Industries v. Aetna Cas.*, 45 Cal.App.4th 1 (1996) does not apply because we are not dealing with the same type of coverage. If the NIAC CGL Coverage Form applied, *Armstrong* might apply. But here, due to the DPSE, the CGL Coverage Form does not apply. The ISC Coverage Form is a specialized coverage. Because WWIC has a general duty to defend all claims under the CGL portion of its policy, its coverage is primary. Because WWIC has a general duty to defend, and because the limits of insurance under the ISC Coverage Form are wasting limits, those limits should not be used to defray WWIC's defense obligations but should instead be reserved to pay any settlement or judgment.

## CONCLUSION

For all of the reasons set forth above, NIAC's motion for summary judgment should be granted and WWIC's motion for summary judgment should be denied. Judgment should be entered in favor of NIAC that it had no duty to defend or indemnify the *Landmeier* and *Desmond* Actions under the CGL Coverage Form and the LL Coverage Form. Judgment should also be entered in NIAC's favor that it has no duty to defend the *Landmeier* Action under the ISC Coverage Form or that, for equitable reasons, the coverage afforded under the ISC Coverage Form is excess to the coverage afforded by the WWIC policy such that the proceeds of the ISC Coverage Form apply only to the satisfaction of any settlement or judgment.

Dated: January 19, 2016

ARCHER NORRIS

*/s/ GailAnn Y. Stargardter*
GailAnn Y. Stargardter
Attorneys for Defendant NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA