UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NONPROFITS INSURANCE ALLIANCE OF CALIFORNIA,<br><br>Defendant. | Case No. 14-CV-04466-EJD<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 27, 35 |

Plaintiff Western World Insurance Company ("Western World") and Defendant Nonprofits Insurance Alliance of California ("NIAC") both issued insurance policies to Narconon International ("Narconon"). In this action, Western World seeks a judicial declaration that NIAC owes a duty to defend Narconon in two underlying lawsuits. Western World also requests reimbursement of an equitable share of the costs that it has incurred in defending Narconon. For its part, NIAC seeks a judicial declaration that it has no duty to defend or indemnify.

Both parties have moved for summary judgment on NIAC's duty to defend. Western World's motion will be granted in part and denied in part, and NIAC's motion will be granted in part and denied in part.

## I. BACKGROUND

This is an insurance declaratory judgment and equitable contribution action involving insurance policies issued to Narconon. The following facts are not in dispute.

Narconon is an organization that promotes treatment for substance abuse and addiction. Stargardter Decl. ¶ 8, Dkt. No. 35-2. Specifically, Narconon formulates and oversees a Scientology-based treatment program, which is implemented throughout the United States by local state affiliates. Id. This case concerns two of those affiliates—Narconon of Georgia and Narconon of Oklahoma—that run individual drug treatment centers in Georgia and Oklahoma, respectively. Pursuant to a set of License Agreements, Narconon provides materials for implementing the program and monitors operation of the centers; in return, Narconon receives ten percent of each center's revenue. Id. ¶¶ 9, 11.

Relevant here, Narconon is insured under three insurance policies, two issued by Western World and one issued by NIAC. Western World's two policies were issued to Narconon of Georgia and Narconon of Oklahoma in 2007, and both list Narconon as an additional insured. Evans Decl., Ex. A at 84, Dkt. No. 30-1; Evans Decl., Ex. B at 25, Dkt. No. 30-2. The third policy—issued by NIAC to Narconon for an overlapping time period—is the one at issue in the instant case. Evans Decl., Ex. C ("NIAC Policy") at 8, Dkt. No. 30-3. NIAC's policy has three separate coverage forms: (1) Commercial General Liability Coverage Form, (2) Liquor Liability Coverage Form, and (3) Improper Sexual Conduct Coverage Form. Id. at 9, 12–13. The policy also includes an exclusion to the Commercial General Liability Coverage Form for bodily injury that was "due to the rendering of or failure to render any professional service." Id. at 56. The question presented in this case is whether Narconon has the duty to defend two lawsuits under its coverage forms.

The first lawsuit ("the Desmond action") was brought on behalf of Patrick Desmond, who was a patient at Narconon of Georgia. Evans Decl., Ex. H ¶ 27, Dkt. No. 31-4. On the evening of June 10, 2008, after consuming alcohol provided by Narconon staff at a staff member's apartment,

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

2

Mr. Desmond left the premises with two former patients to purchase heroin and died early the next morning from a heroin overdose. Id. ¶¶ 30–34. Mr. Desmond's family sued Narconon of Georgia and Narconon in May 2010, asserting claims for negligence, negligence per se, fraud, civil conspiracy, and punitive damages. Id. ¶¶ 35–58. Narconon tendered the Desmond action to NIAC, but NIAC twice denied coverage, asserting that there was no "occurrence" triggering policy coverage and that the "professional service" exclusion applied. Evans Decl., Ex. O, Dkt. No. 32-7; Evans Decl., Ex. Q, Dkt. No. 33-1. In March 2012, Mr. Desmond's family amended the complaint and added civil RICO claims against Narconon of Georgia and Narconon. Evans Decl., Ex. I ¶¶ 167–76, Dkt. No. 32-1. Both Narconon and Western World tendered the Desmond action to NIAC, but NIAC declined to defend for the same reasons it had stated with regard to the original complaint. Evans Decl., Ex. R, Dkt. No. 33-2; Evans Decl., Ex. S, Dkt. No. 33-3; Evans Decl., Ex. T, Dkt. No. 33-4. The Desmond action proceeded past summary judgment, and the parties settled in February 2013. Evans Decl. ¶¶ 62–67.

The second lawsuit ("the Landmeier action") was brought on behalf of Heather Landmeier, who was a patient at Narconon of Oklahoma. Evans Decl., Ex. M ¶ 15, Dkt. No. 32-5. The action alleges that, from late August 2007 through early March 2008, employees provided drugs and alcohol to Ms. Landmeier and allowed her to enter into sexual relationships with staff members. Id. ¶ 16. On March 4, 2008, Narconon of Oklahoma forced Ms. Landmeier to leave the facility, despite knowledge that she had relapsed and had become addicted to heroin and oxycontin. Id. ¶ 17. The day after her expulsion, Ms. Landmeier overdosed on heroin and oxycontin, leaving her in a vegetative state paralyzed from the neck down. Id. ¶ 18. Her family initiated suit in March 2010 and asserted claims for negligence, breach of contract, violation of the Oklahoma Consumer Protection Act, infliction of emotional distress, and punitive damages against Narconon of Oklahoma and Narconon. Id. ¶¶ 19–37. Narconon tendered the Landmeier lawsuit to NIAC, and NIAC accepted the defense under the Improper Sexual Conduct Coverage Form but not under the Commercial General Liability Coverage Form. Evans Decl. ¶ 68. However, NIAC later withdrew

its defense, stating that its insurance was "excess" to Western World's policy. Evans Decl., Ex. X, Dkt. No. 34-1; Evans Decl., Ex. Y, Dkt. No. 34-2. Litigation in the Landmeier action is ongoing, and trial has not yet been scheduled.

Western World filed the instant lawsuit in October 2014. Dkt. No. 1. Because Western World agreed to defend Narconon in both the Desmond and Landmeier actions, Western World seeks a declaration that NIAC also has a duty to defend the Desmond and Landmeier actions and requests an equitable share of the costs that Western World has incurred to date. Id. In November 2014, NIAC answered and filed counterclaims asserting that it has no duty to defend or indemnify either the Desmond action or the Landmeier action. Dkt. No. 13.

On December 11, 2015, Western World moved for summary judgment on NIAC's duty to defend. Dkt. No. 27 ("Mot."). On December 28, 2015, NIAC responded and cross-moved for summary judgment on its duty to defend and indemnify. Dkt. No. 35 ("Cross Mot."). Western World filed its opposition and reply on January 11, 2016, Dkt. No. 37 ("Opp."), and NIAC filed its reply on January 19, 2016, Dkt. No. 39 ("Reply").

## II. REQUESTS FOR JUDICIAL NOTICE

Western World filed two requests for judicial notice. The first Request for Judicial Notice ("Pl.'s RJN"), Dkt. No. 29, is GRANTED as to both Exhibit A (Plaintiffs' Response to Defendant Narconon Internationals's Motion for Judgment on the Pleadings or, In the Alternative, Motion for Summary Judgment or Partial Summary Judgment, Desmond v. Narconon of Georgia, Inc., Dekalb Cty. State Court Case No. 10-A-28641-2 (Jan. 9, 2013)) and Exhibit B (Summary Judgment Order, Desmond v. Narconon of Georgia, Inc., Dekalb Cty. State Court Case No. 10-A-28641-2 (Jan. 31, 2013)). The second Request for Judicial Notice, Dkt. No. 37-1, is GRANTED as to Exhibit A (Complaint for Declaratory Relief, NIAC v. Narconon Int'l, L.A. Super. Ct. Case No. BC569622 (Jan. 16, 2015)), Exhibit B (Complaint for Declaratory Relief, NIAC v. Narconon Int'l, L.A. Super. Ct. Case No. BC569623 (Jan. 16, 2015)), Exhibit C (Complaint for Declaratory Relief, NIAC v. Narconon Int'l, L.A. Super. Ct. Case No. BC569624 (Jan. 16, 2015)), Exhibit D

(Cross-Complaint, NIAC v. Narconon Int'l, L.A. Super. Ct. Case No. BC569622 (Feb. 6, 2015)), and Exhibit E (Consolidation Order, NIAC v. Narconon Int'l, L.A. Super. Ct. Case No. BC569622 (Apr. 6, 2015)). These types of documents are properly subject to judicial notice. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that a court "may take judicial notice of court filings and other matters of public record.").

### III. LEGAL STANDARD

#### A. Summary Judgment in Insurance Policy Disputes

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Samuels v. Holland Am. Line–USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." Id. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

Summary judgment is an appropriate vehicle to decide insurance coverage when the parties agree on the relevant facts and the sole issue before the court is the legal determination of the interpretation of the insurance policy. State Farm Fire & Cas. Co. v. Eddy, 267 Cal. Rptr. 379, 381–82 (Ct. App. 1990). Here, summary judgment is appropriate because the Court is asked to construe the provisions of an insurance policy and apply those provisions to undisputed facts.

#### B. Duty to Defend

Under California law, an insurer has a broad duty to defend insured entities against claims that create a potential for indemnity. See Montrose Chem. Corp. v. Superior Court, 861 P.2d 1153, 1157 (Cal. 1993). The duty to defend is broader than the duty to indemnify, see Horace Mann Ins. Co. v. Barbara B., 846 P.2d 792, 795 (Cal. 1993), but it is not unlimited, see Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 628 (Cal. 1995). An insurer has a duty to defend when the facts alleged in the underlying complaint together with the extrinsic facts known to the insurer

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

5

"create any *potential* for indemnity under the policy." Barnett v. Fireman's Fund Ins. Co., 108 Cal. Rptr. 2d 657, 662 (Ct. App. 2001) (emphasis added). Stated conversely, the insurer has no duty to defend "only when 'the third party complaint can *by no conceivable theory raise a single issue* which could bring it within the policy coverage.'" Mirpad, LLC v. Cal. Ins. Guar. Ass'n, 34 Cal. Rptr. 3d 136, 142 (Ct. App. 2005) (emphasis in original) (quoting Montrose, 861 P.2d at 1160). Uncertainty over whether the facts give rise to a duty to defend is resolved in favor of the coverage. Horace Mann, 846 P.2d at 798.

## IV. DISCUSSION

The parties move for summary judgment on NIAC's duty to defend the Desmond and Landmeier actions under its insurance policy.[1] The NIAC policy has three separate coverage forms: (1) Commercial General Liability Coverage Form, (2) Liquor Liability Coverage Form, and (3) Improper Sexual Conduct Coverage Form. Western World seeks a declaration that NIAC owes a duty to defend both the Desmond and Landmeier actions under the Commercial General Liability and Liquor Liability Coverage Forms and that NIAC owes a duty to defend the Landmeier action under the Improper Sexual Conduct Coverage Form. NIAC seeks a declaration that it does not have a duty to defend either the Desmond action or the Landmeier action under any of the coverage forms. The Court analyzes each of the separate coverage forms in turn.

### A. Commercial General Liability Coverage Form

Under the Commercial General Liability Coverage Form, NIAC has the duty to defend Narconon against a lawsuit seeking damages for "bodily injury," which is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." NIAC Policy at 17, 26. Nevertheless, "bodily injury" is covered under NIAC's policy only when it is caused by an "occurrence." Id. at 17. The Commercial Liability Coverage Form

---

[1] Although NIAC also moves for summary judgment on the ground that it has no duty to indemnify, it presents no arguments separate from those about the duty to defend. With no basis to distinguish the claims, the Court analyzes the duty to defend.

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

6

1  also excludes from coverage "bodily injury" that is "due to the rendering of or failure to render
2  any professional service." Id. at 56.
3  NIAC makes two arguments against coverage under the Commercial Liability Coverage
4  Form. First, as to the Desmond action alone, NIAC contends that Mr. Desmond's claimed "bodily
5  injury" was not caused by an "occurrence." Second, as to both the Desmond and Landmeier
6  actions, NIAC asserts that the "bodily injur[ies]" allegedly suffered by Mr. Desmond and Ms.
7  Landmeier come within the "professional service" exclusion because their injuries were "due to
8  the rendering of or failure to render [a] professional service." The Court addresses each of these
9  arguments in turn.

### 1. Whether the Desmond action states claims for "bodily injury" caused by an "occurrence"

As noted above, NIAC's policy covers lawsuits for "'bodily injury' . . . caused by an 'occurrence.'" NIAC Policy at 17. While no party disputes that Mr. Desmond's overdose-induced death qualifies as "bodily injury," the parties disagree about whether his death was caused by an "occurrence." "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 26. Although the policy does not further define accident, it is settled under California law that an "accident" for insurance coverage purposes must be "an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." Delgado v. Interinsurance Exch. of Auto. Club of S. Cal., 211 P.3d 1083, 1086 (Cal. 2009) (quoting Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co., 334 P.2d 881, 884 (Cal. 1959)).

Here, Western World contends that the complaint in the Desmond action alleges an "occurrence"—namely, the staff's negligent providing of alcohol to Mr. Desmond that led to his overdose and death. Mot. at 13–14. Concentrating on the causes of action in the complaint, NIAC responds that all of Mr. Desmond's claims against Narconon involve intentional, not accidental, conduct. Cross Mot. at 15–16. The Court agrees with Western World.

The original complaint in the Desmond action alleges that "[Mr. Desmond] was drinking beer and vodka with [Narconon of Georgia] employees and staff members in a staff member's apartment," that he "bec[ame] highly intoxicated with [those] employees and staff members," and that he "left the illegal housing program's premises with two former patients of [Narconon of Georgia] who had announced their intention to attempt to buy heroin." Evans Decl., Ex. H ¶¶ 30–31. Mr. Desmond died of a heroin overdose the next morning. Id. ¶¶ 33–34. Based on those facts, the complaint avers that Narconon of Georgia acted negligently in "allowing and facilitating [Mr.] Desmond's on-going use of alcohol and drugs while in treatment" and in "failing to provide reasonable and adequate security and supervision to prevent its patients . . . from leaving its housing program." Id. ¶ 37c–d. Neither the actions nor the result were intended or foreseen. Instead, the neglectful provision of alcohol to and deficient supervision of a patient in rehab leading to the patient's unexpected death constitute an "occurrence" or "accident." Although the negligence claims are asserted against Narconon of Georgia alone, the complaint supplies a sufficient basis for attributing those actions to Narconon. Specifically, it alleges that Narconon of Georgia is a "subsidiary, licensee and/or alter ego" of Narconon and that Narconon exercises some control over the drug rehabilitation facilities. Id. ¶¶ 4, 16. At a minimum, the allegations raise the potential for coverage, as the Desmond action sought damages from Narconon for "bodily injury" caused by an "occurrence."

The same holds true for the amended complaint. The factual allegations regarding the events underlying Mr. Desmond's death are virtually identical to the allegations in the original complaint. See Evans Decl., Ex. I ¶¶ 61–62, 64–65. Although the amended complaint adds civil RICO claims against Narconon and Narconon of Georgia, it retains the negligence causes of action against Narconon of Georgia. Id. ¶¶ 146, 167–76. Finally, the amended complaint includes the same allegations about the relationship between Narconon and Narconon of Georgia, while also providing further detail about Narconon's intricate involvement and control over Narconon of Georgia's operations. Id. ¶¶ 4, 10, 13, 16, 32. As the trial court later observed in its summary

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

8

judgment ruling, "there is evidence presented from which a jury could conclude that [Narconon], through [Narconon of Georgia], undertook the duty of providing services to [Mr.] Desmond and failed to exercise reasonable care in carrying out that assumed duty." Pl.'s RJN, Ex. B at 7; id. at 9 (explaining that Narconon might be liable for Narconon of Georgia's actions because "a jury could conclude that [Narconon of Georgia] was an agent or instrumentality of [Narconon]"). Like the original complaint, the amended complaint contains enough allegations to trigger the duty to defend because there is potential for coverage based on an "occurrence" that caused Mr. Desmond's "bodily injury."

NIAC's primary response is that the legal causes of action asserted against Narconon all involve intentional acts. But, as noted above, the complaint raises the potential that Narconon is liable for the negligent acts of Narconon of Georgia. Moreover, the California courts have repeatedly instructed that the duty to defend does not depend on "technical legal cause[s] of action pleaded by the third party." Gonzalez v. Fire Ins. Exch., 184 Cal. Rptr. 3d 394, 407 (Ct. App. 2015) (quoting Barnett, 108 Cal. Rptr. 2d at 664); see also Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 952 (9th Cir. 2002) (reciting the same standard). Rather, the duty to defend hinges on the facts alleged in the complaint, and even "remote facts buried within causes of action" have been held sufficient to trigger the defense duty. Pension Tr. Fund, 307 F.3d at 951. Here, the complaint in the Desmond action pleads facts that raise the possibility of coverage for "bodily injury" caused by an "occurrence." That point makes this case distinguishable from the cases cited by NIAC where a review of the pleadings revealed a failure to allege *any* covered conduct. See, e.g., Low v. Golden Eagle Ins. Co., 120 Cal. Rptr. 2d 827, 830 (Ct. App. 2002) (holding that plaintiff's express disclaimer of personal injury precluded any possibility of "bodily injury"); Chatton v. Nat'l Union Fire Ins. Co., 13 Cal. Rptr. 2d 318, 327–28 (Ct. App. 1992) (holding that allegations of only intentional acts precluded any possibility of an "occurrence"); see also Yates v. Jumbo Seafood Rest., Inc., No. 10-CV-02652-JW, 2012 WL 293683, at *4 (N.D. Cal. Feb. 1, 2012) (holding that complaint was devoid of allegations about whether conduct was

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

9

intentional or negligent); cf. Upper Deck Co., LLC v. Fed. Ins. Co., 358 F.3d 608, 615 (9th Cir. 2004) (holding that complaint did not establish "bodily injury"). Thus, NIAC improperly refused to defend on the ground that there was no "occurrence" triggering policy coverage.

Because the Court concludes that the allegations in the Desmond action create the potential for coverage for "bodily injury" caused by an "occurrence," the Court next turns to NIAC's argument that the "professional service" exclusion applies.

### 2. Whether the "professional service" exclusion applies to the Desmond action or the Landmeier action

NIAC contends that there is no duty to defend under the Commercial Liability Coverage Form based on the exclusion of "'bodily injury' . . . due to the rendering of or failure to render any professional service." NIAC Policy at 56. Although the policy does not define "professional service," that term has an accepted meaning in California courts. Specifically, "professional services" are those "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co., 221 Cal. Rptr. 3d 711, 719 (Ct. App. 2017) (quoting Tradewinds Escrow, Inc. v. Truck Ins. Exch., 118 Cal. Rptr. 2d 561, 568 (Ct. App. 2002)). Whether the "professional service" exclusion applies turns on whether the type of activity at issue meets that definition. Id. (citing Amex Assur. Co. v. Allstate Ins. Co., 5 Cal. Rptr. 3d 744, 749 (Ct. App. 2003)). Like all exclusions, the "professional service" exclusion is construed narrowly against the insurer. N. Ctys. Eng'g, Inc. v. State Farm Gen. Ins. Co., 169 Cal. Rptr. 3d 726, 746 (Ct. App. 2014).

Here, Western World argues that the "professional service" is not applicable because Mr. Desmond and Ms. Landmeier were not injured by the rendering or failure to render professional drug rehabilitation services. Mot. at 20. Rather, they were injured by "non-professional conduct (sexual relations and furnishing alcohol) that was not part of Narconon's drug rehabilitation treatment" and did not "occur[] during treatment." Id. NIAC counters that Desmond and

Landmeier actions "seek damages as a result of [Narconon's] failure to render drug and alcohol rehabilitation services—the very services [Ms.] Landmeier and [Mr.] Desmond were seeking." Cross Mot. at 19. In NIAC's view, the fact that Ms. Landmeier and Mr. Desmond were supplied with drugs and alcohol and that Ms. Landmeier was allowed to enter into sexual relationships with the staff mark a departure from treatment protocols. Id. at 20. NIAC's arguments are unpersuasive.

The provision of alcohol to Mr. Desmond cannot fairly be characterized as an activity that arises out of drug and alcohol rehabilitation services. To the contrary, that conduct is not connected to drug and alcohol rehabilitation at all—indeed, it is antithetical to alcohol rehabilitation—and Mr. Desmond's overdose and death did not "occur[] during the performance of professional services." Food Pro Int'l, Inc. v. Farmers Ins. Exch., 89 Cal. Rptr. 3d 1, 12 (Ct. App. 2008) (quoting Tradewinds, 118 Cal. Rptr. 2d at 568). Ms. Landmeier's case is even more egregious. In her complaint, she alleges that during her stay as a patient, the Narconon of Oklahoma staff provided drugs and alcohol to her and allowed her to enter into sexual relationships with the staff. Evans Decl., Ex. M ¶ 16. When Narconon of Oklahoma forced her to leave the facility knowing of her relapse and addition, she overdosed on heroin and oxycontin the next day and was left paralyzed from the neck down. Id. ¶¶ 17–18. As with the Desmond action, the provision of drugs and alcohol at issue in the Landmeier action are outside the scope of drug and alcohol rehabilitation services. Additionally, the Landmeier action also includes allegations related to sexual relations with a patient, which the California Court of Appeal has readily concluded do not fall within the "professional service" exclusion. See Marie Y. v. Gen. Star Indem. Co., 2 Cal. Rptr. 3d 135, 152–53 (Ct. App. 2003) (holding that sexual abuse of a sedated patient could not properly be characterized as rendering services in the dentistry profession); see also Okla. Admin. Code § 86:11-3-5 (providing that counselors "shall not have any type of sexual contact with clients and shall not counsel persons with whom they have had a sexual relationship"). In both the Desmond and Landmeier actions, the "bodily injury" suffered cannot

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

11

conclusively be said to be "due to the rendering of or failure to render any professional service."

The Court finds unavailing NIAC's rejoinder that the Narconon staff's actions were performed pursuant to drug rehabilitation services because Narconon of Georgia and Narconon of Oklahoma run in-patient, residential facilities that provide 24/7 treatment. Cross Mot. at 20. First, the California courts have already rejected a species of this same argument. For example, in Food Pro, the California Court of Appeal held that an engineering consultant's failure to prevent bodily injury on-site was a breach of a common law duty, not the performance of a professional service. 89 Cal. Rptr. 3d at 11. In so ruling, the Court of Appeal rejected as too broad the argument that "[the consultant] was only at the site to perform his professional duties; thus, any act of his at the site that resulted in injury 'arises from' a professional service and is covered by the exclusion." Id. Second, and relatedly, the consequences of accepting NIAC's argument are too far-reaching to be tolerated. NIAC effectively seeks to exclude from coverage every act by an employee at a round-the-clock treatment facility by relabeling those acts as "departure[s] from treatment protocols." Cross Mot. at 20. That sweeping interpretation of "professional service" cannot be correct, as it bars coverage for even heinous acts that have nothing to do with the underlying profession, like the acts alleged in the Desmond and Landmeier actions.

For many of the same reasons, NIAC's attempts to recast Mr. Desmond's and Ms. Landmeier's claims as pertaining only to Narconon's failure to treat patients in the program also fail. NIAC cannot usurp the duty to defend by broadly reframing the complaints to advance one particular theory of liability; instead, the Court must examine the factual allegations in the complaints. Barnett, 108 Cal. Rptr. 2d at 662. Even if the complaints in the Desmond and Landmeier actions can properly be construed as bringing claims for Narconon's failure to provide the drug and alcohol rehabilitation services it was hired to perform, they also seek to hold Narconon liable for negligently providing alcohol and drugs and allowing sexual relationships between patients and staff. Therefore, the "professional service" exclusion does not definitively apply, and NIAC has a duty to defend both the Desmond and Landmeier actions under the

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

12

Commercial General Liability Coverage Form.

Accordingly, the Court GRANTS Western World's motion for summary judgment with respect to the Commercial General Liability Coverage Form and DENIES NIAC's motion for summary judgment with respect to the Commercial General Liability Coverage Form.

### B. Liquor Liability Coverage Form

Under the Liquor Liability Coverage Form, NIAC has the duty to defend Narconon against a lawsuit seeking damages for bodily injury or property damage if Narconon is liable "by reason of the selling, serving or furnishing of any alcoholic beverage." NIAC Policy at 45. Western World argues that NIAC owes a duty to defend the Desmond and Landmeier actions because both actions allege that "[Narconon] is liable for bodily injury . . . caused partly by furnishing alcohol." Mot. at 13; Opp. at 7. NIAC responds that the Liquor Liability Coverage Form is inapplicable because it pertains to entities engaged in the business of furnishing alcohol. See Cross Mot. at 21. Under that reading, there is no coverage for the informal providing of alcohol at issue in the underlying Desmond and Landmeier actions. Id. For the reasons stated below, the Court agrees with NIAC that the Liquor Liability Coverage Form creates no potential for indemnity in either the Desmond action or the Landmeier action.

The issue presented by the parties requires interpreting the word "furnishing" in the Liquor Liability Coverage Form. Construction of an insurance policy focuses closely on the language used in the provisions at issue. Golden Sec. Thrift & Loan Ass'n v. First Am. Title Ins. Co., 61 Cal. Rptr. 2d 442, 444 (Ct. App. 1997) (citing Cal. Civ. Code § 1639). Without a clear indication to the contrary, "[t]he 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' . . . controls judicial interpretation." AIU Ins. Co. v. Superior Court, 799 P.2d 1253, 1264 (Cal. 1990) (quoting Cal. Civ. Code §§ 1639, 1644). However, like in other forms of contract interpretation, context plays an important role. Rather than construing language in the abstract, courts must analyze an insurance policy "in its entirety, with each clause lending meaning to the other." Producers Dairy Delivery Co. v. Sentry Ins. Co., 718 P.2d 920, 928 (Cal.

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

13

1986); see also Cal. Civ. Code § 1641.

Within the context of the Liquor Liability Coverage Form, the word "furnishing" contemplates business relations. The policy itself does not explicitly define "furnishing," but the meaning is clear from the way the word is used. The coverage section provides indemnity for damages liability "by reason of the selling, serving or furnishing of any alcoholic beverage." The words immediately surrounding "furnishing"—"selling [or] serving"—involve commercial interactions. Those neighboring words provide a frame of reference for the intended scope of the entire clause and give "furnishing" more precise meaning. The word "furnishing" also appears in Exclusion 2.d, which exempts from coverage injury "arising out of any alcoholic beverage sold, served or furnished while any required license is suspended or after such license is expires, is cancelled or revoked." NIAC Policy at 45. Not only does that exclusion presume that the insured normally operates pursuant to a license, but it also expressly identifies the act of furnishing alcohol as one that would require a license to perform. More broadly, the rest of the Liquor Liability Coverage Form is plainly focused on an entity that is in the business of selling, serving, or furnishing alcohol. For example, Exclusions 2.b and 2.c relate to separate obligations that an insured employer may owe to its employees. Id. Similarly, Exclusion 2.e applies when the injury underlying the suit arises out of "goods or products" that are "manufactured, sold, handled, distributed or disposed of by" the insured or its affiliates. Id. at 45, 49. These textual clues provide powerful evidence that the word "furnishing" in the Liquor Liability Coverage Form is limited to business interactions.

This reading of "furnishing" also harmonizes with the overall policy scheme because it produces symmetry between the Liquor Liability Coverage Form and the Commercial General Liability Coverage Form. Specifically, the Commercial General Liability Coverage Form includes Exclusion 2.c that parallels the Liquor Liability Coverage Form. That exclusion is titled "Liquor Liability"—the mirror image of "Liquor Liability Coverage"—and applies to an insured that is "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."

1  Id. at 18. Although Exclusion 2.c's addition of "manufacturing" and "distributing" makes the

2  language an inexact match, the remaining language ("selling, serving or furnishing alcoholic

3  beverages") tracks the Liquor Liability Coverage Form's coverage. Moreover, the exact three

4  categories removed from Exclusion 2.c (causing or contributing to intoxication, provision of

5  alcohol to a minor or drunkard, and violation of an alcohol related statute) are expressly excepted

6  from Liquor Liability Coverage. Compare id. at 18, with id. at 45–46. In other words, liability for

7  those three categories falls under Commercial General Liability Coverage but not Liquor Liability

8  Coverage. These structural choices strongly suggest that the drafters intended exclusivity in the

9  two coverage forms, as another district court has concluded for a nearly identically worded policy.

10 N. E. Ins. Co. v. Masonmar, Inc., No. 13-CV-00364, 2014 WL 1247604, at *8–9 (E.D. Cal. Mar.

11 25, 2014). This structure lends further support to NIAC's argument that the Liquor Liability

12 Coverage Form does not apply when the insured is not in the business of "furnishing" alcohol.

13     The contextual understanding of "furnishing" accords with common usage. In the

14 dictionary, "furnish" is defined as "provide with what is needed" or "supply; give." *Furnish*,

15 Merriam–Webster Collegiate Dictionary (10th ed. 2001), cited in Ruiz v. Safeway, Inc., 147 Cal.

16 Rptr. 3d 809, 813 (Ct. App. 2012). Those definitions naturally describe a commercial setting—for

17 example, a business might be said to "furnish alcoholic beverages" when it provides the supply of

18 alcohol to a retailer or sells alcohol to a patron. Cf. Ruiz, 147 Cal. Rptr. 3d at 813 (explaining that

19 a sale of beer qualifies as furnishing alcohol). Although the definitions are not necessarily limited

20 to business interactions, their fit in a more informal situation is at best awkward. Indeed, it would

21 be a strange choice of words for a host organizing a potluck to ask one friend to furnish the

22 appetizer, another friend to furnish the dessert, and a third friend to furnish the alcohol. And, in

23 any event, that broad understanding of "furnishing" is foreclosed by the many circumstantial

24 considerations discussed above. In sum, as used in the Liquor Liability Coverage Form, "the . . .

25 furnishing of [an] alcoholic beverage" is best understood as referring to a business interaction.

26     In light of that construction, NIAC owes no duty to defend either the Desmond action or

27 Case No.: 14-CV-04466-EJD
28 ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

15

the Landmeier action under the Liquor Liability Coverage Form. In particular, that form provides no possibility for coverage because neither lawsuit involves the providing of alcohol in a business or formal setting. The Desmond action alleges that Mr. Desmond was drinking alcohol with Narconon of Georgia staff members at a staff member's apartment, Evans Decl., Ex. H ¶ 30; the Landmeier action alleges that Narconon of Oklahoma employees gave alcohol to Ms. Landmeier, Evans Decl., Ex. M ¶ 16. Western World itself disclaims any professional interaction by (correctly) arguing against application of the "professional service" exclusion for the Commercial General Liability Coverage Form. Moreover, the exclusivity of the Commercial General Liability and Liquor Liability Coverage Forms further weakens Western World's contention that both coverage forms are simultaneously triggered by the informal furnishing of alcohol at issue in the two lawsuits. The Court concludes that NIAC does not have a duty to defend either the Desmond action or the Landmeier action under the Liquor Liability Coverage Form.

Accordingly, the Court DENIES Western World's motion for summary judgment with respect to the Liquor Liability Coverage Form and GRANTS NIAC's motion for summary judgment with respect to the Liquor Liability Coverage Form.

### C. Improper Sexual Conduct Coverage Form

The Improper Sexual Conduct Coverage Form states that NIAC will indemnify Narconon for "'bodily injury' arising from 'improper sexual conduct.'" NIAC Policy at 69. The policy defines "bodily injury" as "bodily injury, sickness or disease including emotional distress or anguish sustained by a person, including death" and defines "improper sexual conduct" as "actual, attempted, or alleged unlawful sexual conduct by one person . . . as prohibited by federal or state law." Id. at 74. The connector "arising from" is not defined in the policy, but California law defines "arising from" broadly as "originating from, having its origin in, growing out of or flowing from or in short, incident to, or having connection with." Davis v. Farmers Ins. Grp., 35 Cal. Rptr. 3d 738, 744 (Ct. App. 2005) (internal quotation marks, alterations, and citations omitted). The term "arising from" in an insurance policy "links a factual situation with the event creating

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

16

liability," but "does not import any particular standard of causation or theory of liability into an insurance policy." Id.

Initially, NIAC stated that it withdrew its defense because its policy makes Improper Sexual Conduct coverage "excess over any other applicable insurance . . . that is written on a claims-made basis," NIAC Policy at 72. Evans Decl., Ex. X. NIAC no longer pursues that course, likely because Western World's policy clearly provides "occurrence"-based coverage, not "claims"-based coverage. Evans Decl., Ex. B at 44. Instead, NIAC raises two new arguments against coverage of the Landmeier action under the Improper Sexual Conduct Coverage Form. First, NIAC contends that the Landmeier action does not assert claims against Narconon as a result of improper sexual conduct. Cross Mot. at 24. Second, NIAC asserts that, as a matter of equity, the specialized coverage available under the Improper Sexual Conduct Coverage Form should be deemed in excess to the primary coverage afforded by Western World's policy. Id. at 24–25. The Court analyzes each of these arguments in turn.

First, the Court disagrees with NIAC's argument that the Landmeier action asserts no claims against Narconon arising from improper sexual conduct. NIAC does not contest that Narconon employees engaged in "improper sexual conduct" when they entered into sexual relationships with their patient, Ms. Landmeier. See Okla. Admin. Code § 86:11-3-5 (providing that counselors "shall not have any type of sexual contact with clients and shall not counsel persons with whom they have had a sexual relationship"). Rather, Narconon contends that "[t]he basis for liability against [Narconon] is its failure to provide the drug rehabilitation services as promised." Id. at 24. That is an incomplete description of the complaint. As Narconon acknowledges, the complaint pleads claims that Narconon was negligent in the hiring, training, or supervision of its employees, that Narconon failed to comply with federal and state law, and that Narconon's negligence caused Ms. Landmeier's injuries. Evans Decl., Ex. M ¶¶ 21–23. The complaint further asserts claims for infliction of emotional distress based on Narconon's outrageous conduct. Id. ¶¶ 32–34. Such claims appear to reference or encompass Ms.

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

17

Landmeier's allegations about Narconon's improperly allowing its employees to enter into sexual relationships with her. Id. ¶ 16. And Ms. Landmeier's injuries are sufficiently tied to the sexual conduct under the permissive standard associated with use of the phrase "arising from." Indeed, when Narconon tendered the Landmeier action to NIAC, NIAC initially accepted the defense under the Improper Sexual Conduct Coverage Form. Evans Decl. ¶ 68. Therefore, the complaint in the Landmeier action raises the potential for coverage of claims for "'bodily injury' arising from 'improper sexual conduct.'"

Second, NIAC does not supply a sound legal basis for concluding that its Improper Sexual Conduct coverage is in excess to Western World's policy. NIAC's policy provides that Improper Sexual Conduct coverage is "excess" only when there is other applicable insurance written on a claims-made basis, NIAC Policy at 72, a condition which NIAC does not argue is satisfied. To get around this fact, NIAC argues that Western World's coverage has the greater primacy, but NIAC's sole cited authority, Interstate Fire & Casualty Insurance Co. v. Cleveland Wrecking Co., 105 Cal. Rptr. 3d 606, 623 (Ct. App. 2010), is off-point. That case involved an insurer who had already paid for its insured's loss and, standing in the insured's place, sought subrogation to the insured's express contractual indemnification claims against a party who had caused the loss. Here, in contrast, one insurer (Western World) has brought an equitable contribution action against another insurer (NIAC) where no indemnity determination has been made.[2] Such disputes are controlled "by general principles governing the interpretation and enforcement of 'other insurance' clauses between insurers." Travelers Cas. & Sur. Co. v. Am. Equity Ins. Co., 113 Cal. Rptr. 2d 613, 624 (Ct App. 2001). Both NIAC's Policy and California law generally call for contributions on a pro rata basis when two policies provide overlapping coverage. See NIAC

---

[2] It is not even clear that the licensing agreement between Narconon and Narconon of Oklahoma would provide for indemnity in these circumstances, as improper sexual conduct does not "relate to or arise from any of the services . . . associated with [Narconon's trademarks]," Evans Decl., Ex. N at 361, Dkt. No. 32-6, since improperسexual conduct is not even arguably a part of the drug rehabilitation program.

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

18

Policy at 72; Dart Indus., Inc. v. Commercial Union Ins. Co., 52 P.3d 79, 93 (Cal. 2002).

Nor does NIAC offer any legal support for the proposition that it may refuse to defend Narconon and apply the limits in the Improper Sexual Conduct Coverage Form toward a settlement or judgment in the Landmeier action because it is "in [Narconon's] best interest." Cross Mot. at 25. Putting aside that Narconon's interests might be best served by a successful defense that completely shields it from any liability, NIAC's argument again rests on the mistaken premise that Western World's coverage is primary. Specifically, NIAC asserts that its Improper Sexual Conduct coverage is specialized, whereas Western World's coverage arises from its general duty to defend under its Commercial General Liability Coverage Form. Id. However, this Court has already concluded that NIAC also owes a duty to defend under the NIAC Commercial General Liability Coverage Form. NIAC itself admits in its Reply that its argument assumes that the NIAC Commercial General Liability Coverage Form does not apply. Reply at 15. With no other offered legal authority supporting the proposition that NIAC's Improper Sexual Conduct coverage is in excess to Western World's coverage, NIAC's arguments fail.

Accordingly, the Court GRANTS Western World's motion for summary judgment with respect to the Improper Sexual Conduct Coverage Form and DENIES NIAC's motion for summary judgment with respect to the Improper Sexual Conduct Coverage Form.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that NIAC owes a duty to defend the Desmond action and the Landmeier action under the Commercial Liability Coverage Form and that NIAC also owes a duty to defend the Landmeier action under the Improper Sexual Conduct Coverage Form. However, the Court concludes that NIAC does not owe a duty to defend either the Desmond action or the Landmeier action under the Liquor Liability Coverage Form. Therefore, Western World's motion for summary judgment is GRANTED in part and DENIED in part, and NIAC's motion for summary judgment is GRANTED in part and DENIED in part.

In its summary judgment motion, Western World also asks the Court to determine the sum

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

19

that NIAC owes for its failure to defend. Mot. at 22–24. Because of the dearth of briefing, the Court cannot make a determination on this issue at this stage. Within two weeks of the filing of this order, the parties shall file a joint supplemental statement that lays out each party's position on how the Court should proceed.

**IT IS SO ORDERED.**

Dated: January 9, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 14-CV-04466-EJD
ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

20